UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| FAIR HOUSING CENTER OF WASHINGTON, <br><br> Plaintiff, <br><br> v. <br><br> BREIER-SCHEETZ PROPERTIES, LLC, a Washington corporation; and FREDERICK BREIER-SCHEETZ, an individual, <br><br> Defendants. | No. <br><br> COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF <br><br> JURY DEMAND |

Plaintiff FAIR HOUSING CENTER OF WASHINGTON alleges as follows:

### I. NATURE OF ACTION

1.1   This is a civil rights action for damages, and declaratory and injunctive relief, to remedy the Defendant landlord's discriminatory occupancy restriction policy of refusing housing to families with children. Plaintiff Fair Housing Center of Washington, an advocacy and educational organization, brings this action under the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 *et seq.*; Washington's Law Against Discrimination, RCW 49.60 *et seq.*; and the Seattle Municipal Code ("SMC") 14.08, *et seq.*

### II. JURISDICTION AND VENUE

2.1   This Court has subject matter jurisdiction over Plaintiff's claims under the Fair Housing Act under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(4), and 42 U.S.C. § 3613(a). The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's state and local

COMPLAINT - 1

law claims because they are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy.

2.2 The Court has personal jurisdiction over Defendants within the Western District of Washington.

2.3 Venue is proper in the Western District of Washington because a substantial part of the events complained of occurred in this District, and because Defendants reside in this District. *See* 28 U.S.C. § 1391(b).

## III. PARTIES

3.1 Plaintiff Fair Housing Center of Washington is a non-profit fair housing organization incorporated under the laws of the State of Washington, located in Tacoma, Washington. The FHCW's mission is to identify and eliminate discriminatory housing practices and to ensure equal housing is available to all people, without regard to race, religion, sex, national origin, disability, or familial status.

3.2 Defendant Breier-Scheetz Properties is incorporated in Washington and does business in the Western District of Washington. Breier-Scheetz Properties has owned and manages multifamily residential properties, and owned and operated the Granada Apartments at 1736 Belmont Avenue in Seattle at all times relevant.

3.3 Defendant Frederick Breier-Scheetz is an owner of Breier-Scheetz Properties, is a property manager of the Granada Apartments, and is managing manager of Breier-Scheetz Properties.

## IV. FACTUAL ALLEGATIONS

4.1 The Granada Apartments is a 96-unit apartment building in Seattle, Washington. It contains 60 studio apartments that are at least 400 square feet large, plus six larger studios.

4.2 The FHCW is a 501(c) nonprofit organization with a mission to ensure equal access to housing among Washingtonians.

COMPLAINT - 2

10017.04 je180106.002

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

4.3  FHCW provides an array of programs and services designed to eliminate housing discrimination through counseling, education, advocacy, research, and enforcement of fair housing laws.  FHCW services and programs include:

   a) assistance and advocacy on behalf of discrimination victims;

   b) counseling and referral services regarding discrimination;

   c) public education regarding discriminatory practices, remedies available, and federal, state, and local fair housing laws;

   d) leadership, training, and advocacy to new immigrant communities regarding their rights under fair housing laws;

   e) regular participation in group meetings, workshops, conferences, and other events designed to promote and ensure compliance with fair housing laws;

   f) assistance for governmental entities in meeting their fair housing obligations;

   g) service on various community and governmental boards designed to promote and ensure compliance with fair housing laws; and

   h) investigation and testing of potential housing discrimination.

4.4  In pursuit of its mission, the FHCW provides fair housing testing services. Since 1995, the agency's pool of trained testers has conducted approximately 3,000 rental, sales, and mortgage lending tests in Western and Central Washington.  During tests, trained individuals pose as prospective tenants or purchasers to gather information about whether a housing provider is complying with fair housing laws.

4.5  In 2012 and 2013, FHCW performed tests to determine whether the Granada Apartments discriminates against housing applicants based on their familial status.

4.6  On November 6, 2012, a FHCW tester telephoned the Granada Apartments and asked the residential property manager Joanne Huth about whether she could rent a studio apartment for herself and her two-year-old daughter.  Ms. Huth responded that the Defendants will not rent a studio to two people; only one person is allowed to live in those units.

COMPLAINT - 3

10017.04 je180106.002

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

4.7     That same day (November 6, 2012), another tester telephoned the Granada Apartments and asked about renting a studio apartment. She made no mention of sharing the unit with another person. Residential property manager Gary Huth told her a seventh-floor studio apartment was available for $870 per month, including utilities. Mr. Huth also told the tester about the deposit terms. But Mr. Huth then said other persons already had submitted applications.

4.8     On October 11, 2013, a tester for FHCW telephoned the Granada Apartments and asked to rent a studio apartment for herself and her child. The representative of Granada explained that Defendants do not allow two people to live in their studio apartments. The tester asked whether Granada would make an exception for her and her son. The property manager responded that the building has rules and that management does not allow exceptions. He said if he made an exception for her he would have to make an exception for others.

4.9     That same day (October 11, 2013), another FHCW tester telephoned the Granada Apartments asking to rent a studio apartment, making no mention of a second occupant. Defendant Scheetz told her that a studio apartment would be available the following week and explained the costs and his basic policies.

4.10    At all times relevant to this Complaint, Breier-Scheetz Properties and its owner, Defendant Frederick Breier-Scheetz, controlled and directed the actions of its property managers and employees, including the Huths, and managed and operated the Granada Apartments.

**Government finds Reasonable Cause to Believe Discrimination Occurred**

4.11    FHCW filed a complaint dated March 4, 2014, against Defendants with the U.S. Department of Housing and Urban Development ("HUD"). The complaint alleged that the Defendants improperly denied or made housing unavailable based on familial status. Through a work-sharing agreement, the Seattle Office for Civil Rights investigated the complaint.

4.12    When interviewed by SOCR (on January 6, 2015), Defendant Breier-Scheetz confirmed that Defendants have a policy of refusing to rent their studio apartments to families with children. He gave three reasons: (1) "it is a simple policy and it keeps things simple"; (2)

COMPLAINT - 4

10017.04 je180106.002

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1  single persons stay longer; and (3) a single tenant results in less wear and tear on the apartments.
2  Defendant Breier-Scheetz acknowledged that the Huths were "instructed to tell prospective
3  tenants that studios are not rented to two people."

4      4.13   Ms. Huth told the SOCR in an interview (on February 4, 2015) that Mr. Breier-
5  Scheetz created the one-person policy for studios and instructed her on it: "There really wasn't
6  enough room for more than one person in a studio. . . . That was the only reason that he gave us."

7      4.14   Granada property manager Gary Huth confirmed that he, too, was given these
8  instructions when interviewed by the SOCR (February 4, 2015): "The studios could only have
9  one person in them.  They were only big enough for one person. . . . Frederick Scheetz set the
10 one-person per studio policy."

11     4.15   The Seattle Municipal Code governs habitability standards within the City.  It
12 allows two occupants to live in a studio apartment if the apartment is at least 150 square feet in
13 size.  For each additional occupant, the minimum square footage needs to increase by 50 square
14 feet.  *See* SMC 22.206.020.  Since the Granada's studio apartments well exceed 150 square feet,
15 the habitability rules allow at least two people to reside in their studio apartments.

16     4.16   Defendants' policy of prohibiting families with children from renting its studio
17 apartments has a disproportionately adverse impact on families.  When facially neutral
18 occupancy restrictions enforced by private landlords have a disproportionate adverse impact on
19 families with children they violate fair housing laws, unless the landlord can prove business
20 necessity.

21     4.17   The SOCR determined that Defendants' policy, although facially neutral, resulted
22 in a disparate, adverse impact on persons based on their familial status, a protected class. *See*
23 **Exhibit A**, which is a copy of SOCR's finding.

24     4.18   Defendants' policy of prohibiting families with children from renting its studio
25 apartments creates artificial, arbitrary, and unnecessary barriers to housing for families with
26 children.  The SOCR found that Defendants' policy was unlawful because it created artificial,
27 arbitrary, and unnecessary barriers. *See Texas Dep't of Housing and Community Affairs v.*

COMPLAINT - 5

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

10017.04 je180106.002

*Inclusive Communities Project, Inc.*, __ U.S. __, 135 S.Ct. 2507, 2522, 192 L.Ed.2d 514 (2015). *See* **Ex. A.**

4.19   Defendants' asserted justifications for its policy prohibiting families with children from renting its studio apartments does not constitute business necessity.

4.20   Accordingly, on December 18, 2015, the SOCR concluded that sufficient evidence showed that Defendants' one-person policy for studio apartments violated the Fair Housing Act's and the SMC's prohibition against discrimination based on familial status. *See* **Ex. A.**

## V. DAMAGES

5.1   Defendants' discriminatory practices frustrated FHCW's mission to ensure equal access to housing through education, referral, counseling, investigation, and other enforcement activities.

5.2   Defendants' discriminatory practices also forced FHCW to divert scarce resources from its other duties and activities in order to investigate Defendants' discriminatory policy and practices. This diversion includes conducting tests to determine whether Defendants complied with fair housing laws, pursuing its complaint in the administrative process, and bringing this action.

## VI. CLAIMS

### A. Violation of the Fair Housing Act

By their acts described above, Defendants violated the Fair Housing Act, 42 U.S.C. § 3604 *et seq.*, as amended and related regulatory provisions, by:

6.1   Making statements with respect to the rental of a dwelling that indicate a preference, limitation, or discrimination based on familial status;

6.2   Refusing to rent, negotiate the rental of, or otherwise make available a dwelling based on prospective applicants' familial status;

6.3   Discriminating in the terms, conditions, or privileges, of rental of dwellings based on familial status;

COMPLAINT - 6

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

10017.04 je180106.002

6.4     Causing damages to Plaintiff; and

6.5     Upon information and belief, there are victims of Defendants' discriminatory conduct or actions that are aggrieved persons within the meaning of 42 U.S.C. § 3612(o).

**B. Violations of Washington's Law Against Discrimination**

By their acts described above, Defendants violated Washington's Law Against Discrimination, RCW 49.60, and related regulatory provisions, by:

6.6     Making statements with respect to the rental of a dwelling that indicate a preference, limitation, or discrimination based on familial status;

6.7     Refusing to rent, negotiate the rental of, or otherwise make available a dwelling based on the prospective applicants' familial status;

6.8     Discriminating in the terms, conditions, or privileges, of rental of dwellings based on familial status; and

6.9     Causing damages to Plaintiff.

**C. Violations of the Seattle Municipal Code**

By their acts described above, Defendants violated Seattle Municipal Code 14.08, *et seq.*, and related regulatory provisions, by:

6.10    Making statements with respect to the rental of a dwelling that indicate a preference, limitation, or discrimination based on familial status;

6.11    Refusing to rent, negotiate the rental of, or otherwise make available a dwelling based on the prospective applicants' familial status;

6.12    Discriminating in the terms, conditions, or privileges, of rental of dwellings based on familial status; and

6.13    Causing damages to Plaintiff.

## VII. INJUNCTION ALLEGATIONS

7.1 Defendants' unlawful policy, practices, and customs are ongoing and continue to violate Plaintiff's rights and the rights of other applicants, and as such there is no adequate

COMPLAINT - 7

10017.04 je180106.002

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

remedy at law. Plaintiff is entitled to injunctive relief prohibiting Defendants from enforcing an illegal occupancy restriction based on applicants' familial status.

## VIII. REQUEST FOR RELIEF

WHEREFORE, plaintiff requests the following relief:

8.1 For trial by jury on all claims;

8.2 For a declaration that Defendants' conduct violated federal, state, and city fair housing laws;

8.3 For an injunction to stop Defendants' illegal conduct and prevent it from occurring again in the future; and including requirements of adopting a new non-discriminatory policy, training, monitoring, testing, reporting, and auditing;

8.4 For general compensatory damages on all claims in an amount to be proven at the time of trial;

8.5 For punitive damages under 42 U.S.C. § 3613(c)(1), and as otherwise allowed by law;

8.6 For plaintiff's costs of suit, disbursements, and attorney's fees pursuant to 42 U.S.C. § 3613, 42 U.S.C. § 1988, RCW 49.60.030(2), Seattle Municipal Code 14.08, and as otherwise allowed by law;

8.7 For leave to conform the pleadings to the proof at trial; and

8.8 For such other and further relief as the Court deems just and proper.

DATED this 16th day of June, 2016.

MacDONALD HOAGUE & BAYLESS

By: _____
Jesse Wing, WSBA # 27751
JesseW@MHB.com

_____
Angela Galloway, WSBA # 45330
AngelaG@MHB.com
Attorneys for Plaintiff

COMPLAINT - 8

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

10017.04 je180106.002

BEFORE THE SEATTLE OFFICE FOR CIVIL RIGHTS

| | |
|---|---|
| Fair Housing Center of Washington,<br><br>Complainant<br><br>vs.<br><br>Gary Huth; Joann Huth; Frederick Scheetz; Breier-Scheetz Properties, LLC,<br><br>Respondents. | CASE NO. 14HO023<br>FED NO.  10-14-0129-8<br><br><br><br>FINDINGS OF FACT AND<br>DETERMINATION AND<br>OFFER TO CONCILIATE |

SUMMARY OF CHARGE
A complaint was filed with HUD on March 4, 2014 alleging that Complainant was injured by a discriminatory act.  It is alleged that Respondent was responsible for: discriminatory refusal to rent; false denial or representation of availability; discriminatory terms, conditions, privileges, or services and facilities; and otherwise deny or make housing unavailable.  It is alleged that Respondents' acts were based on familial status.  The most recent act is alleged to have occurred on October 11, 2013.  The property is located at:  The Granada Apartments, 1736 Belmont Avenue, Seattle, WA  98122.  The property in question is not exempt under the applicable statutes.  If proven, the allegations would constitute a violation of Sections 804a or f, 804d, 804b or f and 804a of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988.

Respondents receive no federal funding.

JURISDICTION AND PROCEDURAL REQUIREMENTS
Date of Alleged Violation:       10/11/2013
Date of Charge Filing:            02/24/2014
Date of Service of Charge:      03/23/2014

Respondents own and operate housing in the City of Seattle.  The charge alleges unlawful housing discrimination and was filed within one year of the date of the alleged violation.  All jurisdictional and procedural requirements have been met.

COMPLAINANT'S ASSERTIONS
From November 6, 2012 to October 11, 2013, the Fair Housing Center (FHCWA) conducted three familial status-based tests at the Granada Apartments.

The first familial status-based test, conducted on November 6, 2012, indicated differences in treatment towards families with children. The single tester with children was instructed to disclose that she was looking for a studio apartment for herself and

FINDINGS OF FACT AND DETERMINATION AND OFFER TO CONCILIATE -1
SOCR 14HO023; HUD 10-14-0129-8



her two-year old child. The single tester without children was instructed to inquire about a studio apartment. When the single tester with children asked Respondent Joann Huth about a studio unit for herself and her two-year old daughter, Respondent Huth stated they cannot put two people in a studio and the studios are one person per unit. Both testers inquired with Respondent Joann Huth and Respondent Gary Huth about available units and were provided information about available units, rental prices, deposits, utilities, and application fees. Respondent Joann Huth wished the single tester with children luck and apologized that she did not have anything for her. Additional testing was recommended.

Another familial status-based test, conducted on October 11, 2013, indicated differences in treatment towards families with children. The single tester with children was instructed to disclose that she is looking for a studio apartment for herself and her child. The single tester without children was instructed to inquire about a studio apartment. When the single tester with children asked the unknown agent about a studio unit for herself and her son, the unknown agent stated they do not allow two people in their studios and nearly hung up on the tester. The single tester with children asked the unknown agent about rent, lease terms, and other details, and the unknown agent stated she could not live there with two people. The single tester with children asked again if there were any studios coming available soon. The unknown agent asked how long the single tester with children planned to live there and stated she could call back in a week after tenants submitted their move-out notices. The single tester with children asked the unknown agent if he would consider allowing her and her son to move in and the unknown agent stated that would be an exception, they have rules, and they do not make exceptions. The unknown agent stated management would not allow that and if they made an exception for the single tester with children, they would have to make exceptions for others. The single tester with children was not provided any information about available units, rental prices, deposits, utilities, lease terms, or application fees. The single tester without children was told by Respondent Frederick Scheetz about a studio unit available the following week for $890, and Respondent Scheetz provided information about deposits, utilities, lease terms, and application fees.

Testing at The Granada Apartments demonstrates a pattern of discrimination because of familial status. The Fair Housing Center's mission has been frustrated by the Respondents' discriminatory practices in its efforts to assure equal access to housing through education, referral, counseling, investigation, and other enforcement activities. Further, the Fair Housing Center has diverted scarce resources from other duties and activities carried out in support of our mission to the identification and investigation of the Respondents' discriminatory actions.

RESPONDENT'S CONTENTIONS

Respondent Frederick Scheetz is responsible for the operation and management of Respondent Breier-Scheetz Properties, LLC, which owns the Subject Property. Respondent Breier-Scheetz Properties, LLC, employed Gary Huth and Jo Ann Huth as property managers during the time of the complaint. The Subject Property is located at 1736 Belmont Avenue is a multi-unit apartment complex with housing units ranging from

FINDINGS OF FACT AND DETERMINATION AND OFFER TO CONCILIATE -2
SOCR 14HO023; HUD 10-14-0129-8

studio to one-bedrooms. The studio apartments consist of just over 400 square feet. Respondent Breier-Scheetz Properties, LLC's policy allows only one person to occupy/rent a studio apartment.

FINDINGS OF FACT

The Seattle Office for Civil Rights (SOCR) has conducted a full investigation of this matter. The findings below are based upon interviews with Complainant, Respondents, and with witnesses. The findings are also based upon documents received from Complainant and Respondents.

1. Complainant is a non-profit organization whose mission is to ensure equal access to housing to the residents of Washington. Complainant engages in a variety of housing discrimination testing to measure the occurrence of illegal housing discrimination.

2. Respondent Breier-Scheetz Properties, LLC owns and operates the Subject Property, a multi-unit apartment complex located at 1736 Belmont Avenue in Seattle, Washington.

3. Frederick Scheetz is an owner of Respondent Breier-Scheetz Properties, LLC.

4. Respondent Gary Huth and Respondent Jo Ann Huth were employed by Respondent Breier-Scheetz Properties, LLC as property managers at the Subject Property.

5. Complainant conducted fair housing testing on the Subject Property on November 6, 2012, and October 11, 2013. The tests were telephone tests in which a control tester, a single individual, and a "protected "tester," a tester who indicated they had a child, phoned the property seeking information about availability, rent cost, utilities, and application costs.

6. On November 6, 2012, at 9:18am, Tester 152 phoned the Subject Property and inquired about available units. Tester 152 identified herself to Respondent Jo Ann Huth and indicated that she was looking for a studio apartment for herself and her two-year old daughter. Respondent Jo Ann Huth indicated that she could not place two people into a studio. Respondent Jo Ann Huth told Tester 152 that rent varied depending on the floor and ranged from $790 to $900 and that rent included utilities. Respondent Jo Ann Huth indicated that there was no application fee and that the unit that was advertised would be rented that afternoon because she had already received two applications for it.

7. On November 6, 2012, at 11:15am, Tester 385 phoned the Subject Property and inquired about available units. Tester 385 identified herself to Respondent Gary Huth and indicated that she was looking for a studio apartment. Respondent Gary Huth indicated that a studio was available on the seventh floor and was $870 per month, which included utilities. Respondent Gary Huth indicated that

the deposit was $700 of which only $90 was nonrefundable. Respondent Gary Huth indicated that the apartment was not really available because two other people had already filled out applications.

8. On October 11, 2013, at 11:07am, Tester 401 phoned the Subject Property and indicated that she was looking for a studio apartment for herself and her son. The unidentified respondent indicated that they did not allow two people in their studios.

9. On October 11, 2013, at 12:00pm, Tester 405 phoned the Subject Property and inquired about available units. Tester 405 identified herself to Respondent Frederick Scheetz and indicated that she was looking for a studio apartment. Respondent Scheetz shared that a studio would become available the following week. Respondent Scheetz indicated that the rent would be $890 per month and included utilities, that the security deposit was $900, and that there was no application fee.

10. Respondent Breier-Scheetz, LLC's policy is to only allow one person per studio apartment.

11. In an interview, Respondent Scheetz articulated three reasons for maintaining this policy: (1) its simplicity, (2) single persons stay longer, and (3) tenancy of single persons results in less wear and tear on the apartments.

## CONCLUSIONS

**Discriminatory refusal to rent.** To prevail on a charge of discriminatory refusal to rent, the following must be shown:

(1) Complainant is a member of a protected class;
(2) Complainant applied for and was qualified to rent housing; and
(3) Complainant was rejected although housing remained available.

This theory of discrimination requires the evidence to show that Respondent Breier-Scheetz Properties, LLC treated a particular group of individuals differently because of their protected class. In this case, Respondent utilizes a facially-neutral policy that is applied evenly to all individuals regardless of protected class. As a result, the appropriate analysis under the Fair Housing Act and Seattle Municipal Code is a theory of "disparate impact." This is addressed in subsequent paragraphs of the Finding.

**Misrepresentation as to availability of housing.** Section 804(d) of the Fair Housing Act states that it is unlawful for an individual or firm covered by the Act "[t]o represent to any person because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available." 42 U.S.C. § 3604(d).

FINDINGS OF FACT AND DETERMINATION AND OFFER TO CONCILIATE -4
SOCR 14HO023; HUD 10-14-0129-8

The evidence does not show that Respondents misrepresented the availability of housing to Complainant. During the test conducted on November 6, 2012, both callers were informed that the apartment may not be available because they had received two applications at the time of the call. During the test conducted on October 11, 2013, one call did not mention availability of apartments and the second was told that an apartment would be available in one week. During the first call, Respondents did not misrepresent availability of housing. Rather, Respondents did not mention this information during the phone call.

A preponderance of evidence does not show that a misrepresentation of availability of housing under the Fair Housing Act, as amended, or under Seattle Municipal Code 14.08, as amended.

**Different terms and conditions.** To prevail on a charge of different terms and conditions, the following must be shown:

   A. Charging Party belongs to a protected class;
   B. Charging Party met the minimum qualifications to live in Respondents' housing
   C. Respondents, knowing that Charging Party was a member of the protected class, subjected her to different, terms, conditions and privileges and in services and facilities ; and
   D. Similarly-situated prospective applicants, who are not members of Charging Party's protected class, were not subjected to different terms, conditions and privileges and in services and facilities.

This theory of discrimination requires the evidence to show that Respondent Breier-Scheetz Properties, LLC treated a particular group of individuals differently because of their protected class. In this case, Respondent utilizes a facially-neutral policy that is applied evenly to all individuals regardless of protected class. As a result, the appropriate analysis under the Fair Housing Act and Seattle Municipal Code is a theory of "disparate impact." This is addressed in subsequent paragraphs of the Finding.

**Disparate impact/Otherwise make housing unavailable.** The Fair Housing Act and Seattle Municipal Code 14.08 prohibit housing providers from utilizing neutral policies that have a disparate, adverse impact on individuals of a protected class. To prevail on a charge of disparate impact, a preponderance of evidence must show the following:

   1. Respondent applies a neutral rule, policy, or practice to all tenants;
   2. That actually or predictably results in disparate impact against a protected group. Respondent Breier-Scheetz Properties, LLC enforces a facially-neutral policy that limits the number of "people" or "individuals" that are permitted to occupy a studio apartment. The policy does not distinguish between families with children and groups of unrelated adults. The applicability of the policy is determined by the number of prospective residents in the studio. However, the adverse impact of this policy lands on families with children, such as the testers with children referenced in the complaint. According to 2010 U.S. Census data, there are a total of 283,510 "households" in the City of

FINDINGS OF FACT AND DETERMINATION AND OFFER TO CONCILIATE -5
SOCR 14HO023; HUD 10-14-0129-8

Seattle. Households with individuals under 18 years of age consist of 19.5% of total households. Of those households, 5% of are single families with children under the age of 18. In the City of Seattle, 57.1% of households consist of single individuals. These statistics show that that the policy disparately impacts families with children under the age of 18.

Policies are not contrary to the disparate-impact requirement unless they are "artificial, arbitrary, and unnecessary barriers."[1] Respondent must prove a business necessity that is sufficiently compelling to justify the challenged practice. In this case, Respondent's rationale for employing this policy was three-fold: (1) the rule's simplicity, (2) single persons stay longer, and (3) tenancy of single persons results in less wear and tear on the apartments.

Respondent's reasons are arbitrary, unnecessary barriers that are not supported by evidence. Respondent relies on their subjective judgment which, notwithstanding their experience in real estate, falls short of the necessary showing. The evidence does not show that this policy is simpler to apply than one that that allows more than one person to rent a studio apartment. Second, there is no evidence to support that single individuals remain tenants longer than those with children or that individuals with minor children commit more wear and tear on apartments than single individuals. This stance is premised on assumptions about both single individuals and individuals with children. Third, there are less restrictive means other than this policy that results in keeping tenants in housing for lengthy periods of time and result in less wear and tear on apartments. Arguably, any wear and tear that is above normal would be a cost incurred by a tenant regardless of the number of occupants in the apartment. Therefore, Respondent's reasons are arbitrary and create unnecessary barriers for individuals based on their familial status.

A preponderance of evidence shows that Respondent's single-occupancy studio policy has a disparate impact on families with children under the age of 18 in violation of the Fair Housing Act and Seattle Municipal Code 14.08.

ADDITIONAL INFORMATION
Notwithstanding this determination by HUD, the Fair Housing Act provides that Complainant may file a civil action in an appropriate federal district court or state court within two years after the occurrence or termination of the alleged discriminatory housing practice. The computation of this two-year period does not include the time during which this administrative proceeding was pending. In addition, upon the application of either party to such civil action, the court may appoint an attorney, or may authorize the commencement of or continuation of the civil action without the payment of fees, costs, or security, if the court determines that such party is financially unable to bear the costs of the lawsuit.

---

[1] *Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 135 S.Ct. 2507(2015).

FINDINGS OF FACT AND DETERMINATION AND OFFER TO CONCILIATE -6
SOCR 14HO023; HUD 10-14-0129-8

The Department's regulations implementing the Act require that a dismissal, if any, be publicly disclosed, unless Respondents requests that no such release be made. Such request must be made by Respondents within thirty (30) days of receipt of the determination to the Field Office of Fair Housing and Equal Opportunity at the address contained in the enclosed summary. Notwithstanding such request by Respondents, the fact of a dismissal, including the names of all parties, is public information and is available upon request.

A copy of the final investigative report can be obtained from:

Seattle Office for Civil Rights
810 Third Avenue, Suite 750
Seattle, Washington 98104-1627

DETERMINATION
The Director has determined that there is NO REASONABLE CAUSE to believe that an unfair housing practice has been committed with respect to Complainant's allegations of refusal to rent, different terms and conditions, and misrepresentation of availability of housing due to familial status. A NO REASONABLE CAUSE determination by SOCR means that there is not sufficient evidence to show that an unfair practice has occurred as defined by section 804b or f of the Fair Housing Act, as amended, or SMC 14.08, as amended. This does not preclude the Charging Party from filing a civil action in a court of competent jurisdiction. It should be noted that private civil actions must be filed in court within limited time periods from the date of the alleged unfair practice.

The Director has determined that there is REASONABLE CAUSE to believe that violations of section 804(a) of the Fair Housing Act and Seattle Municipal Code 14.08.040(A) for disparate impact due to familial status. A REASONABLE CAUSE determination by SOCR means that there is sufficient evidence to show that an unfair practice has occurred as defined by the SMC 14.08.

December 18, 2015
Date

Patricia Lally
Director

FINDINGS OF FACT AND DETERMINATION AND OFFER TO CONCILIATE -7
SOCR 14HO023; HUD 10-14-0129-8