HON. THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FAIR HOUSING CENTER OF WASHINGTON,<br>        Plaintiff,<br><br>v.<br><br>BREIER-SCHEETZ PROPERTIES, LLC, a Washington corporation; and FREDERICK BREIER-SCHEETZ, an individual,<br><br>        Defendants. | NO: 2:16-cv-00922 TSZ<br><br>**DEFENDANTS' SUPPLEMENTAL RESPONSE TO PLAINTIFF'S COUNTER MOTION FOR SUMMARY JUDGMENT** |

DEFENDANTS' RESPONSE
(2:16-cv-00922 TSZ)     - Page 1 of 10

GEORGE T. HUNTER ATTORNEY AT LAW
5900 48th Ave. South
Seattle, WA 98118
206.851.7700

## INTRODUCTION

In its counter motion for summary judgment Fair Housing Center of Washington (FHCW) argues that it has established a *prima facie* case of disparate impact discrimination arising out of Defendants' facially neutral occupancy policy at the Grenada Apartments in Seattle, WA. Consequently, FHCW contends that Defendants must provide sufficient evidence to support an affirmative defense in order to survive FHCW's counter motion for summary judgment. FHCW argues that Defendants have failed to meet their burden. Defendants concede that FHCW has established, through evidence in the form of the Declaration of Dr. Avery Mason Guest, a *prima facie* case of disparate impact discrimination. They submit, however, that FHCW has incorrectly described the affirmative defense that Defendants must demonstrate. Further, for the reasons set forth below, Defendants' evidence in support of the correct affirmative defense demonstrates, at a minimum, that material issues of fact attend that defense. Consequently, Defendants submit that denial of FHCW's counter motion for summary judgment is appropriate.

## ARGUMENT

**1. A landlord's "reasonable" occupancy policy is sufficient to rebut a plaintiff's prima facie case of disparate impact discrimination.**

FHCW contends that in a disparate impact discrimination case arising out of a landlord's facially neutral occupancy policy, in order to survive a motion for summary judgment the landlord must demonstrate the policy satisfies a compelling a business necessity. FHCW grounds the contention in *Pfaff v. United States HUD*, 88 F.3d 739 (9th Cir. 1996). Footnote eight in FHCW's response and counter motion elaborates:

> After the passage of the 1988 Fair Housing Act used Amendments, HUD a "reasonableness" standard. *See Badgett*, 976 F.2d at 1180. In 1993, however, HUD amended its interpretation so that a defendant's rebuttal in occupancy cases must

DEFENDANTS' RESPONSE
(2:16-cv-00922 TSZ)            - Page 2 of 10

GEORGE T. HUNTER ATTORNEY AT LAW
5900 48th Ave. South
Seattle, WA 98118
206.851.7700

> satisfy a "compelling business necessity" test. *Pfaff*, 88 F.3d at 747 (citing *HUD v. Mountain Side Mobile Estates* ("Mountain Side II"), 2 Fair Hous.-Fair Lending (P-H) ¶25,064 (HUD Sec'y, Oct. 20, 1993), rev'd in part, *Mountain Side Mobile Estates v. Secretary, HUD*, 56 F. 3d 1243 (10th Cir. 1995). HUD is the agency primarily responsible for implementing and administering the Fair Housing Act so its interpretations of the Fair Housing Act are therefore "entitled to great weight" and "considerable deference." *Pfaff*, 88 F.3d at 747 (citing *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91,107 (1979); 42 U.S.C. § 3608(a); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 210 (1972); *Harris*, 183 F.3d at 1051). Therefore, absent extraordinary circumstances, which are not present in this case, the compelling business necessity test was "the new standard" that became applicable in the Ninth Circuit. *Pfaff*, 88 F.3d at 748.

ECF 17 at 15, fn. 8.

This explanation of what transpired in *Pfaff* is, in simple terms, at odds with reality. Instead, in *Pfaff* the Ninth Circuit unequivocally ruled that the appropriate test in an occupancy case is not "compelling business necessity." Further, the Ninth Circuit was quite blunt in its criticism of HUD for applying that test in *Mountainside Mobile Estates*.

> HUD would have us show deference to the standard announced in *Mountain Side* because it represents the Secretary's considered interpretation of the fair housing laws. The Secretary's interpretation of the FHA "ordinarily commands considerable deference" because "HUD [is] the federal agency primarily assigned to implement and administer Title VIII. *Gladstone Realtors v. Village of Bellewood*, 441 U.S. 91, 107, 60 L. Ed.2d 66, 99 S.Ct. 1601 (1979) (citing "familiar principles" of *Teamsters v. Daniel*, 439 U.S. 551, 566 n. 20, 58 L. Ed.2d 808, 99 S. Ct. 790 (1979); *Udall v. Tallman*, 380 U.S. 1, 16, 13 L. Ed.2d 616, 85 S. Ct. 792 (1965); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 210, 34 L. Ed.2d 415, 93 S. Ct. 364 (1972)).
> . . .
>
> Justice dictates, however, that our general rule of deference to announcements of law by adjudication has its exceptions. As the Supreme Court has cautioned, "there may be situations where the [agency's] reliance on adjudication would amount to an abuse of discretion . . . ." *Bell Aerospace*, 416 U.S. at 294. Such a situation may present itself where the new standard, adopted by adjudication, departs radically from the agency's previous interpretation of the law, where the public has relied substantially and in good faith on the previous interpretation, where fines or damages are involved, and where the new standard is very broad and general in scope and prospective in application.
> . . .

DEFENDANTS' RESPONSE
(2:16-cv-00922 TSZ)      - Page 3 of 10

GEORGE T. HUNTER ATTORNEY AT LAW
5900 48th Ave. South
Seattle, WA 98118
206.851.7700

> There can be no question that the *Mountain Side* standard is broad, general, and prospective in application. Likewise, as the Pfaffs' case shows, parties who violate the new standard face onerous penalties, injunctions, government surveillance, and liability in damages. But most egregiously, HUD has made inconsistent and misleading representations to those regulated by the FHA and, in so doing, has led them down the garden path. HUD's original interpretation of the 1988 amendments stated: There is no support in the statute or its legislative history which indicates any intent on the part of Congress for the development of a national occupancy code. . . . On the other hand, there is no basis to conclude that the owner or manager of dwellings would be unable in any way to restrict the number of occupants who could reside in a dwelling. Thus, the Department believes that *in appropriate circumstances, owners and managers may develop and implement reasonable occupancy requirements based on factors such as the number and size of sleeping areas or bedrooms and the overall size of the dwelling unit*. In this regard, it must be noted that, in connection with a complaint alleging discrimination on the basis of familial status the Department *will examine any such nongovernmental restriction to determine whether it operates unreasonably* to limit or exclude families with children.
>
> Implementation of the Fair Housing Amendments Act of 1988, 54 Fed. Reg. 3232, 3237 (January 23, 1898) (emphasis added). In short, "reasonableness" defined the original standard.
>
> HUD's statement suggests to us that a facially neutral, numerical occupancy restriction may be permissibly based on a house's size and the number of bedrooms it contains. This is a far cry from requiring landlords to produce a compelling business necessity to justify any numerical occupancy limit. We conclude the *Mountain Side'*s "compelling business necessity" rule departs abruptly from HUD's preexisting "reasonableness" standard. Radically inconsistent interpretations of a statute by an agency, relied upon in good faith by the public, do not command the usual measure of deference to agency action. [citations omitted].

*Pfaff v. United States HUD*, 88 F.3d at 747 - 748.

The "reasonableness" standard to which the Ninth Circuit referred is contained in the "Keating Memorandum" reproduced in 63 Fed. Reg. 70983- 70987 (HUD, December 23, 1998) and that FHCW cites at ECF 17 at 20. Conspicuously absent from FHCW's counter motion is language found at 63 Fed. Reg. 70982:

> SUMMARY: This statement of policy advises the public of the factors that HUD will consider when evaluating a housing provider's occupancy policies to determine whether actions under the provider's policies may constitute discriminatory conduct under the Fair Housing Act on the basis of familial status (the presence of children in a

DEFENDANTS' RESPONSE
(2:16-cv-00922 TSZ)        - Page 4 of 10

GEORGE T. HUNTER ATTORNEY AT LAW
5900 48th Ave. South
Seattle, WA 98118
206.851.7700

> family). Publication of this notice meets the requirements of the Quality Housing and Work Responsibility Act of 1998.
> DATES: Effective date: December 18, 1998.

*See* Wing Dec., Ex. 6. ECF 18 at 71.

In *Pfaff* the Ninth Circuit ruled that HUD could not change by way of an adjudication the test for determining whether an occupancy policy might effect discrimination on the basis of familial status. The Keating Memorandum's "reasonableness" standard had defined the test prior to *HUD v. Mountain Side* and, according to the Ninth Circuit, remained so irrespective of the ruling in that case. The Summary in 63 Fed. Reg. 70982, quoted above, makes clear that the reasonableness standard remains HUD's policy as to maximum occupancy policies adopted by private landlords. *Crossroads Residents Organized for Stable & Secure ResiDencieS (CROSSRDS) v. MSP Crossroads Apts., LLC*, No. 16-233 ADM/KMM, 2016 U.S. Dist. LEXIS 86965 at *25-*26 (D. Minn. July 5, 2016), a case cited by FHCW, makes clear that the Keating Memorandum, with its reasonableness standard, continues to be HUD policy.

*Gashi v. Grubb & Ellis Prop. Mgmt. Servs.*, 801 F. Supp.2d 12, 18 (D. Conn. 2011), illustrates how HUD's reasonableness standard applies in an assessment of a defendant's effort to rebut a plaintiff's *prima facie* case of disparate impact discrimination based on family status. After determining that the plaintiffs had established a *prima facie* case of disparate impact discrimination, the court looked to the Keating Memorandum to ascertain whether the defendants had rebutted the *prima facie* case:

> Consequently, defendants have failed to raise a material issue of fact upon which to classify the Prospect Grove occupancy policy as reasonable under the factors specified in the [Keating] memo.

DEFENDANTS' RESPONSE
(2:16-cv-00922 TSZ) - Page 5 of 10

GEORGE T. HUNTER ATTORNEY AT LAW
5900 48th Ave. South
Seattle, WA 98118
206.851.7700

Thus, had the defendants raised a material issue of fact as to whether their occupancy policy was reasonable, under the factors in the Keating Memorandum, granting the plaintiffs' motion for summary judgment would have been inappropriate.

**2. In ascertaining whether an occupancy policy is reasonable HUD applies some combination of a set of factors set forth in a policy document, the Keating Memorandum.**

Among other things, the Keating Memorandum creates a rebuttable presumption: a maximum occupancy policy of two persons per bedroom is "as a general rule" reasonable. 63 Fed. Reg. 70984. At the same time, the Keating Memorandum establishes that "the reasonableness of any occupancy policy is rebuttable[.]" *Id.* "Thus, in reviewing occupancy cases, HUD will consider the size and number of bedrooms and other special circumstances." *Id.* at 70985. The Keating Memorandum then discusses several guiding "principles" under six headings: size of bedrooms and unit; age of children; configuration of unit; other physical limitations of housing; state and local law; and other relevant factors. Configuration of unit, other physical limitations of housing, and other relevant factors are particularly germane to the occupancy policy before the Court.

Under "configuration of unit" the Keating Memorandum contrasts a unit having two bedrooms and a den with a unit having two bedrooms and no den or study. HUD states that "depending on other factors" a specific occupancy policy might be reasonable in the first scenario but not in the second. *Id.* As to "other physical limitations of housing," HUD explains:

> In addition to physical considerations such as the size of each bedroom and the overall size and configuration of the dwelling, the Department will consider limiting factors identified by housing providers, such as the capacity of the septic, sewer, or other building systems.

*Id.* at 70986.

DEFENDANTS' RESPONSE
(2:16-cv-00922 TSZ) - Page 6 of 10

GEORGE T. HUNTER ATTORNEY AT LAW
5900 48th Ave. South
Seattle, WA 98118
206.851.7700

"Other relevant factors" include conduct by the landlord apart from enforcing an occupancy policy:

> Other relevant factors supporting a reasonable cause recommendation based on the conclusion that the occupancy polic[y] [is] pretextual would include evidence that the housing provider has: (1) made discriminatory statements; (2) adopted discriminatory rules governing the use of common facilities; (3) taken other steps to discourage families with children from living in its housing; or (4) enforced its occupancy policies only against families with children. . . ..
>
> An occupancy policy which limits the number of <u>children</u> per unit is less likely to be reasonable than one which limits the number of <u>people</u> per unit.
>
> Special circumstances might also be found where the housing provider limits the total number of dwellings he or she is willing to rent to families with children. For example, assume a landlord owns a building of two-bedroom units, in which a policy of four people per unit is reasonable. If the landlord adopts a four person per unit policy, but refuses to rent to a family of two adults and two children because twenty of the thirty units already are occupied by families with children, a reasonable cause recommendation would be warranted.

*Id.*

**3. The accompanying declaration of Frederick Scheetz (Mr. Scheetz) provides the necessary evidence to support a determination that the facially neutral occupancy policy at issue is reasonable.**

The occupancy policy at issue in the above-captioned lawsuit pertains solely to Defendants' facially neutral policy of renting studio apartments to single individuals. Mr. Scheetz explains that the Granada Apartments comprise 96 units in one building. 57 are studios of 425 square feet. Six are studios of 560 square feet. 33 are one-bedroom apartments. The one-bedroom apartments and the 560 square feet studios have housed families with children. Scheetz Dec. ¶2. Defendants have never had an occupancy policy that bars families with children from renting the one-bedroom units. Mr. Scheetz has never made discriminatory statements about children or families with children; adopted rules governing the use of common facilities that discriminate against children or families with

DEFENDANTS' RESPONSE
(2:16-cv-00922 TSZ)      - Page 7 of 10

GEORGE T. HUNTER ATTORNEY AT LAW
5900 48th Ave. South
Seattle, WA 98118
206.851.7700

children; taken other steps to discourage families with children from living in the Granada Apartments; or enforced the occupancy policy only against families with children. Scheetz Dec. ¶3.

The building that houses the 96 units that make up the Granada Apartments has one electric meter, one water meter, and one gas meter for the entire building. Tenants do not pay for water, electricity or gas separately as those items are included in the rent which does not vary month to month. The current billing system reflects the occupancy characteristics of the building and has generated no complaints from tenants. Elimination of the occupancy rule for the studio apartments would necessarily change the composition of the population of persons who rent studio apartments irrespective of the resulting percentages of single individuals, families with children, or other multi-person households who might occupy those units. Defendants are aware that Seattle housing codes would allow as many as six persons to occupy some of the studio apartments at the Granada Apartments. In order to ensure a fair system of billing for the use of utilities in the building, it would be necessary for Defendants to install a new metering system for each unit. Such changes would be prohibitively costly. Defendants do not have an estimate of the cost for doing so or how it would be achieved, but the building was built in 1922 and a change of such magnitude could well necessitate a vacation of the building to achieve intended results. The possibility that the Granada Apartments would have to accommodate up to six persons in some portion of its studio apartments would necessitate having to modify the current single meter system. Otherwise, the current system would allow studio units with, for example, two, up to as many as six, persons to free ride on the payments of units occupied by, for example, one person. In order to prevent that circumstance from occurring it would be necessary to retrofit the building with 96 meters to measure individual unit consumption of utilities. Scheetz Dec. ¶4.

DEFENDANTS' RESPONSE
(2:16-cv-00922 TSZ) - Page 8 of 10

GEORGE T. HUNTER ATTORNEY AT LAW
5900 48th Ave. South
Seattle, WA 98118
206.851.7700

The configuration of the studio apartments is designed to accommodate one person. The studio apartments have no separate closets for clothing and other personal items. There is some space for such items in the area where a full size Murphy bed is stored. The livable space in the studio apartment is approximately 11' x 15' when the bed is stored. When deployed the bed occupies space equal to a full size bed with the practical effect being that there is insufficient space for another bed. Scheetz Dec. ¶6.

## CONCLUSION

For the reasons set forth above, Defendants submit that evidence in the form of the Declaration of Frederick Scheetz demonstrates that the facially neutral occupancy policy for studio apartments at the Granada Apartments is reasonable in accordance with HUD policy. Consequently, denial of FHCW's counter motion for summary judgment is appropriate.

Dated this 27th day of 2017.

        GEORGE T. HUNTER ATTORNEY AT LAW

        By: s/*George T. Hunter*
           George T. Hunter
           WSBA No. 14388
           5900 48th Ave. South
           Seattle, WA 98118
           Phone: 206.851.7700
           Email: gthunter7700@gmail.com

DEFENDANTS' RESPONSE
(2:16-cv-00922 TSZ) - Page 9 of 10

GEORGE T. HUNTER ATTORNEY AT LAW
5900 48th Ave. South
Seattle, WA 98118
206.851.7700

# CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jesse Wing
WSBA No. 27751
701 Second Avenue, Suite 1500
Seattle, WA 98104
Phone: 206.622.1604
FAX: 206.343.3961
Email: JesseW@MHB.com

Angela Galloway
WSBA No. 45330
701 Second Avenue, Suite 1500
Seattle, WA 98104
Phone: 206.622.1604
FAX: 206.343.3961
Email: AngelaG@MHB.com

DEFENDANTS' RESPONSE
(2:16-cv-00922 TSZ) - Page 10 of 10

GEORGE T. HUNTER ATTORNEY AT LAW
5900 48th Ave. South
Seattle, WA 98118
206.851.7700