Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| FAIR HOUSING CENTER OF WASHINGTON,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>BREIER-SCHEETZ PROPERTIES, LLC, a Washington corporation; and FREDERICK BREIER-SCHEETZ, an individual,<br><br>　　　　　　The Defendants. | No. 2:16-cv-00922-MAT<br><br>PLAINTIFF'S (SECOND) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT<br><br>NOTE ON MOTION CALENDAR:<br>**Friday, March 31, 2017** |

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

No. 2:16-cv-00922-MAT
10017.04 kc306701

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

### 1. Defendants Abused CR 56(d)

The Court renoted Plaintiff's counter-motion for summary judgment, Dkt. 17, "to allow defendants an opportunity to take the deposition of Dr. Guest and to file a supplemental response to plaintiff's counter-motion for summary judgment." Dkt. 37.  The order apparently granted Defendants' Rule 56(d) request, which stated in its entirety:  "FHCW's failure to disclose Dr. Guest and his expert report prior filing the response and counter motion has **prevented the Defendants from conducting discovery regarding Dr. Guest's opinion, including taking his deposition, and from retaining one or more experts** to aid in the defense of the claims against them." Dkt. 34, ¶7 (emphasis added).  Since then, Defendants have conducted no discovery, and have not consulted or disclosed an expert.  Reply Declaration of Jesse Wing at ¶1; Ex. A thereto (Scheetz Dep.) at 85:23-86:1.  Instead, after the seven-week extension, Defendants offer merely a 2½ page declaration of unsupported attempts to excuse their 40-year-old occupancy restriction.  Defendants should face sanctions for abusing Rule 56(d), causing delay and wasting the Court's time and the Plaintiff's resources in having to prepare two reply briefs.

### 2. The Court Should Rule that Plaintiff Has Met its *Prima Facie* Case

Defendants concede that "FHCW has established, through evidence in the form of the Declaration of Dr. Avery Mason Guest, a *prima facie* case of disparate impact discrimination." Dkt. 38 at 2.  Plaintiff has indeed established its case and the Court should rule that Plaintiff has met its burden of proving disparate impact discrimination.  The sole question on liability then is whether the defendants have met *their burden* to prove business necessity.

Once a plaintiff demonstrates a *prima facie* case, "a presumption of illegality arises." *Fair Hous. Council of Orange Cty., Inc. v. Ayres*, 855 F. Supp. 315, 318 (C.D. Cal. 1994).  Liability is established unless defendants prove an "affirmative defense of business necessity." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 250–51 (9th Cir. 1997).  Such "exemptions from the Fair Housing Act are to be construed narrowly…." *United States v. City of Hayward*, 36 F.3d 832, 837 (9th Cir. 1994).

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT - 1

No. 2:16-cv-00922-MAT
10017.04 kc306701

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

### 3. The Defendants Fail to Prove Material Facts in Dispute in Support of their Affirmative Defense of Business Necessity

Defendants carry a heavier rebuttal burden in cases alleging disparate impact than in cases alleging disparate treatment. *See Pfaff v. HUD*, 88 F.3d 739, 747 (9th Cir. 1996). To establish business necessity, a "defendant must show use of the least restrictive means to achieve a compelling business standard." *Ayres,* 855 F. Supp. at 318. "Once a plaintiff has made a prima facie showing of discriminatory effect, a defendant must present bona fide and legitimate justification for its action with no less discriminatory alternatives available." *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 929, 939 (2d Cir. 1988).

Defendants argue that they need only show that their justifications are reasonable. They claim that in *Pfaff v. U.S. Dep't of Hous. & Urban Dev*., 88 F.3d 739, 747-48 (9th Cir. 1996), the Ninth Circuit rejected the compelling business necessity *Mountain-Side* standard because, they claim, "HUD could not change by way of an adjudication the test for" occupancy restrictions.[1] Dkt. 38 at 5. That is plainly untrue, as Plaintiff has explained. *See* Dkt. 17 at 16-17. The *Pfaff* court explicitly acknowledged that HUD has authority to change its standard through adjudication, *see* 88 F.3d at 748 n. 4, and stated that "compelling business necessity" may well be the standard; but the court declined to apply it "in this case" because of HUD's conduct and failure to provide advance notice: "There can be no question that the *Mountain Side* standard is broad, general, and prospective in application," but "[e]ven if the appropriate standard of rebuttal in disparate impact cases normally requires a compelling business necessity,[3] the record in this case leads us to the conclusion that it would be fundamentally unfair to hold the Pfaffs to this standard given HUD's truly appalling conduct in this matter," *id*. at 747. Moreover, a reasonableness standard is inconsistent with the statute: "Congress chose to give special deference to government-imposed occupancy limits only…. Congress made no comparable

---

[1] In 1993, HUD directed a defendant's rebuttal in occupancy cases must satisfy a "compelling business necessity" test. *Pfaff*, 88 F.3d at 747 (citing *HUD v. Mountain Side Mobile Estates* ("Mountain Side II"), 2 Fair Hous.-Fair Lending (P-H) ¶25,064 (HUD Sec'y, Oct. 20, 1993), rev'd in part, *Mountain Side Mobile Estates v. Secretary, HUD*, 56 F. 3d 1243 (10th Cir. 1995).

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 2

No. 2:16-cv-00922-MAT
10017.04 kc306701

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604   Fax 206.343.3961

1  provision for private occupancy policies." *Id*. at 746. The Defendants must meet a heightened
2  burden of compelling business necessity to provide their affirmative defense.

3  And yet, Defendants fail to meet even a reasonableness standard. Laboring under the
4  presumption of illegality, the Defendants have failed to establish that their occupancy restriction
5  is supported by a business necessity. The sole evidence they offer is a 2½-page Declaration of
6  owner-operator Fredericks Scheetz. Dkt. 39. There arguments are conclusory and unsupported,
7  and they fail to identify any material issues of fact in dispute to preclude summary judgment.

8  Defendant Scheetz claimed his occupancy restriction is valid because: (1) it is "simple";
9  (2) he believes single persons stay longer; and (3) the possibilities of higher utilities costs and
10 greater wear and tear. Then, in litigation, he added a new excuse: the apartments have limited
11 parking. Dkt. 17 at 17.

12 Defendants have offered no evidence their restriction is "simple," none that single
13 residents move less often, and zero evidence of their "wear and tear" argument. Accordingly,
14 those excuses must be dismissed. And Mr. Scheetz admits that he does not offer parking spaces
15 to residents of studio units, so their numbers have no impact on parking. *See* Ex. A (92:5-11).

16 In support of his utility bills defense, Defendants rely entirely on Mr. Scheetz's practice
17 of including utility costs as part of the rent. He claims one meter measures utility usage for the
18 entire building so if he allowed more than one person to live in his studios, then he would be
19 unfairly charging other residents. To prevent unfairness, he says he would have to install meters
20 in each apartment, which he imagines would be prohibitively expensive.

21 Mr. Scheetz's premise and conclusion are illogical. He testified that he charges all
22 tenants the same amount for utilities regardless of how much they use, and no one has
23 complained. Invariably, some tenants are paying for more utilities than they use and some are
24 getting a "free ride"—to use Mr. Scheetz's phraseology. *See* Dkt. 39 at 2-3. But, arbitrarily, Mr.
25 Scheetz cannot abide the idea that if more than one person lives in a studio then other tenants
26 will pay some unspecified amount more in utilities—just as they do now for each other. Mr.
27 Scheetz offers no estimate of what the utility increases would be per resident ($1 per month? $5

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 3

No. 2:16-cv-00922-MAT
10017.04 kc306701

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

per month?). He hasn't tried and has no data. Ex. A (71:19-24; 85:13-18). Nor has he explained why tenants would complain; they don't complain of his current imbalanced billing for utilities.[2]

Moreover, Mr. Scheetz testified at his deposition he allows two residents to live in one-bedroom apartments, and includes utility charges in all rents. *Id*. (60:10-20). So, by his logic, every month he overcharges his single tenants for the utility usage of two residents who live in one-bedroom units, allowing them a "free ride." Left to his own devices, Mr. Scheetz already does what he protests to the court. His justification is not a business necessity – it is arbitrary.

Mr. Scheetz would not have to change his utility billing system to allow more than one person to live in his studios, or to allow more than two to live in his one-bedrooms. Even still, to modify his utility billing system, he would not have to install individual meters. He could do a bit of homework (on his own or with the help of a professional) to estimate the increased cost of utilities per additional person, and add a flat amount per apartment to rent, as he does now. That would be a less restrictive means of advancing his claimed reason for an occupancy restriction.

Defendant Scheetz has not bothered to estimate costs or consult a professional for help. He must prove business necessity, but has failed to show his method is anything but arbitrary. *See, e.g., United States v. Hover*, No. C 93-20061 JW, 1995 WL 55379, at *3 (N.D. Cal. Feb. 8, 1995) ("An occupancy standard which forbids family members from sharing a bedroom is presumptively discriminatory on the basis of familial status unless the defendants can prove through objective evidence a business necessity sufficiently compelling to justify the challenged practice.") (citing *Betsy v. Turtle Creek Assn*., 736 F.2d 963, 988 (4th Cir. 1984); *Rhode Island Comm'n for Human Rights v. Graul*, 120 F. Supp.3d 110, 129 (D.R.I. 2015). As the Seattle Office of Civil Rights properly found, "Respondent's reasons are arbitrary, unnecessary barriers that are not supported by evidence. Respondent relies on their subjective judgment which,

---

[2] Since they recover utility costs by including them in their tenants' rent, Defendants' only plausible purported justification is a concern for their tenants' pocketbooks, not their own. They cite no precedent that such a concern constitutes a business necessity.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 4

No. 2:16-cv-00922-MAT
10017.04 kc306701

**MACDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1  notwithstanding their experience in real estate, falls short of the necessary showing." Dkt. 1 at
2  14. Accordingly, the Defendants' restriction also violates the City's ordinance.

3  And just in the last few days, Defendants apparently have dreamed up yet another
4  purported excuse for the restriction, one they did not disclose to the SOCR, did not state in their
5  written discovery responses or earlier briefing, and one that Mr. Scheetz did not disclose in his
6  deposition this past Friday, March 24. They now defend their occupancy restriction, adopted in
7  the 1970s, on the new ground of limited living space.

8  And as with their utility cost theory, Defendants offer no support that a restriction is
9  "needed" because of the size of studios. Merely listing some purported measurements does not
10 establish a business need.[3] Defendant Scheetz testifies that the apartment size is 425 square feet,
11 but now declares without explanation that there is only 165 square feet of living space (*i.e.*, 11
12 feet x 15 feet). As Defendants have acknowledged, the Seattle Municipal Code allows two
13 occupants to share studio apartments of as little as 150 square feet. Dkt. 17 at 3. Mr. Scheetz
14 makes the conclusory assertion that there is "insufficient space for another bed," without listing
15 actual measurements. There is no room for another bed of what size? A full bed? A twin bed?
16 A crib? What about a futon? And he fails to explain why two people cannot share the full bed.
17 Nor does he address whether one person can sleep on a couch, which itself could unfold into a
18 bed. The Defendants fail to meet their burden of proving their *affirmative* defense because they
19 show no objective facts in support of their newly conceived defense (that the space mandates
20 only one person live there as a business necessity). The restriction they impose is far more
21 restrictive than the Seattle Code, which is the product of a legislative determination of the public
22 interest and health and safety considerations. Defendants have offered zero justification for
23 substantially deviating from the Code.

---

[3] If this were true, many studios in Manhattan and other cities would be unlivable. *See, for example,* http://newyork.cbslocal.com/2017/02/13/upper-west-side-penthous-studio/ (family of six living comfortably in 480-square-foot studio); http://nypost.com/2015/09/17/how-two-girls-live-together-in-this-350-square-foot-apartment (two women happily share 350-square foot studio); http://www.refinery29.com/small-apartment-child-advice (couple shares 362-square-foot L.A. cottage with a baby and two dogs).

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT - 5

No. 2:16-cv-00922-MAT
10017.04 kc306701

This undermines the Defendants' affirmative defense since they must have objective evidence supporting their justifications, not conclusory speculation. *See Graul*, 120 F. Supp.3d at 132 ("There is not in this record any supporting evidence whatsoever for the defendants' bald allegations that adhering to the state occupancy Code would tax the Briarwood complex facilities."). And contrary to Defendants' implication that the HUD Keating Memorandum from 1991 governs this case, the Memo was "never intended to 'establish an occupancy policy which [HUD] would consider reasonable in any fair housing case, ...' but simply to set out a rebuttal presumption for purposes of HUD's evaluations and enforcement." *Id*. at 130. Moreover, Defendants have failed to address the various factors in the Memo let alone how they support Defendants. At his deposition, Mr. Scheetz summed up his arbitrary approach to occupancy:

> Q   Does it concern you that no families with children can live in your studios?
>
> A   Why should it?

Ex. A (84:2-4). He concluded: "One person is one person. Two people is too many." *Id.* (84:13-14).

## II.   CONCLUSION

Defendant Scheetz baldly asserts he has never "discouraged families with children from living in the Granada Apartments." Dkt. 39 ¶3. But his occupancy restriction preventing 100% of families with children from living in Defendants' studios proves otherwise. Having conceded that Plaintiff has met its liability burden, the Defendants bore the burden of proving their affirmative defense of business necessity in order to overcome the presumption of illegality of their occupancy restriction. They have failed to show any material facts in dispute preclude summary judgment on their *affirmative* defense. The Court should grant the Plaintiff's Motion.

DATED March 31, 2017.                    MacDONALD HOAGUE & BAYLESS

By: */s/ Jesse Wing*
Jesse Wing, WSBA #27751
Angela C. Galloway, WSBA #45330
Attorneys for Plaintiff

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 6

No. 2:16-cv-00922-MAT
10017.04 kc306701

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

CERTIFICATE OF SERVICE

I certify that on the date noted below I electronically filed this document entitled PLAINTIFF'S (SECOND) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

<u>Counsel for The Defendants</u>

George T. Hunter, WSBA # 14388
5900 48th Ave S
Seattle, WA 98118
Telephone: 206-851-7700
Email: gthunter7700@gmail.com

DATED this 31st day of March, 2017, at Seattle, Washington.

*/s/ Esmeralda Valenzuela*
Esmeralda Valenzuela, Legal Assistant

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 7

No. 2:16-cv-00922-MAT
10017.04 kc306701

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961