UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FAIR HOUSING CENTER OF
WASHINGTON,

              Plaintiff,

  v.

BREIER-SCHEETZ PROPERTIES,
LLC, et al.,

              Defendants.

C16-922 TSZ

ORDER

THIS MATTER comes before the Court on plaintiff's counter-motion for summary judgment, docket no. 17. Having reviewed the motion and all relevant filings, the Court enters the following Order.[1]

---

[1] Plaintiff's supplemental reply, docket no. 40, requests that the Court sanction defendants for abusing Fed. R. Civ. P. 56(d) in light of defendants' failure to conduct any discovery after the Court renoted plaintiff's motion for that specific purpose. Although ultimately no additional discovery was conducted, there is no indication that defendants' request under Fed. R. Civ. P. 56(d) was made in bad faith or to deliberately cause delay or additional expense to plaintiff. Accordingly, the Court declines to impose sanctions against defendants on this basis.

ORDER - 1

**Background**

    **A. Factual Background**

Plaintiff Fair Housing Center of Washington ("Fair Housing"), alleges that defendants Frederick Breier-Scheetz and Breier-Scheetz Properties, LLC ("Breier-Scheetz Properties") employ a facially neutral occupancy restriction policy that results in a disparate, adverse impact on persons based on their familial status in violation of the Fair Housing Act, the Washington Law Against Discrimination, and the Seattle Municipal Code. Mr. Breier-Scheetz is an owner and manager of defendant Breier-Scheetz Properties, LLC ("Breier-Scheetz Properties"), which owns and operates the Granada Apartments ("Granada") located on Capitol Hill. Decl. of Frederick Breier-Scheetz, docket no. 39, ¶ 2. The Granada is a 96-unit apartment building comprised of fifty-seven 425 square-foot studios, six 560 square-foot studios, and thirty-three one bedroom apartments. *Id.* The policy at issue in this lawsuit is both undisputed and straightforward: Breier-Scheetz Properties will only rent studio apartments at the Granada to single occupants.[2] Answer, docket no. 9, ¶ 4.12.

Plaintiff discovered the occupancy policy after it performed "fair housing testing" in 2012 and 2013. During such testing, individuals trained by plaintiff pose as prospective tenants and typically operate in pairs: one tester poses as a member of the protected class while the other represents the control group. Decl. of Christa Lenssen, docket no. 19, ¶¶ 6-8. In connection with the Granada, two pairs of testers, one set in

---

[2] Mr. Breier-Scheetz indicates in his declaration that the 560 square-foot studios have housed families with children in the past, but does not deny that he has enforced the general policy with respect to occupancy of studio apartments at the Granada. Breier-Scheetz Decl. at ¶¶ 2-3.

ORDER - 2

November of 2012 and another in October of 2013, confirmed that defendants were not renting studio apartments at the Granada to more than one occupant. Complaint, docket no. 1, Ex A, 9-10; Decl. of Tester 152, docket no. 21, ¶ 4; Decl. of Tester 401, docket no. 22, ¶ 8; Decl. of Tester 405, docket no. 23, ¶ 8.

In February of 2014, plaintiff filed a complaint against defendants with the United States Department of Housing and Urban Development ("HUD"). Decl. of Jesse Wing, docket no. 18, Ex. 2, 14-16. Through a work-sharing agreement with HUD, *see id.* at 17-18, the Seattle Office for Civil Rights investigated the complaint, Complaint, Ex. A at 9-15. The Seattle Office for Civil Rights determined that there was "reasonable cause to believe" that defendants' policy violated section 804(a) of the Fair Housing Act and section 14.08.040(A) of the Seattle Municipal Code. Complaint, Ex. A at 15. Plaintiff filed the instant action on June 16, 2016. Complaint, docket no. 1.

**Discussion**

  **A. Legal Standard**

The Court should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). While "all justifiable inferences" are to be drawn in favor of the non-moving party, *id.* at 255, when the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party,

summary judgment is warranted. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

**B. Fair Housing Act—Disparate Impact Discrimination**

Section 804(a) of the Fair Housing Act, 42 U.S.C. § 3604(a), prohibits refusing "to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, *familial status*, or national origin." 42 U.S.C. § 3604(a) (emphasis added). The Washington Law Against Discrimination and the Seattle Municipal Code likewise prohibit any person from refusing to engage in a real estate transaction based on "families with children status," *see* RCW 49.60.222(1)(a), and "parental status," *see* SMC 14.08.020 and 14.08.040(A)(1), respectively. When interpreting the WLAD in connection with claims of discrimination in housing, Washington courts look to federal interpretations of the Fair Housing Act's discrimination provisions. *See Tafoya v. State Human Rights Com'n*, 177 Wn. App. 216, 224 (2013).[3]

To establish a prima facie case of discrimination under a theory of disparate impact, a plaintiff must show (1) the occurrence of outwardly neutral practices; that (2) result in "a significantly adverse or disproportionate impact on persons of a particular

---

[3] Although there is no Washington case addressing whether the Seattle Municipal Code's anti-discrimination provisions can also be analyzed through the prism of federal decisional law, the definitions of "parental status" and "families with children status" are substantially similar, *compare* SMC 14.08.020 *and* RCW 49.60.040(13), and both the Seattle Municipal Code, SMC 14.08.040(A)(1), and the Revised Code of Washington, RCW 49.60.222(1)(a), prohibit any person from refusing to engage in a real estate transaction based on a protected trait. Accordingly, the Court will examine plaintiff's allegations of discrimination under all three statutes using the framework established by federal law for analyzing disparate impact claims under the Fair Housing Act.

ORDER - 4

type produced by the defendant's facially neutral acts or practices." *Pfaff v. U.S. Dept. of Housing and Urban Development*, 88 F.3d 739, 745 (9th Cir. 1996). Once a plaintiff establishes a prima facie case, a presumption of illegality arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory business reason for the challenged policy. *See Fair Housing Council of Orange County, Inc. v. Ayres*, 855 F. Supp. 315, 318 (C.D. Cal. 1994) (citing *United States v. Badgett*, 976 F.2d 1176, 1178 (8th Cir. 1992)). Defendants concede that plaintiff has established a prima facie case of disparate impact discrimination through the statistical evidence presented in in the declaration of plaintiff's expert Dr. Guest, Supplemental Response, docket no. 38, 2:7-9, and instead submit that issues of material fact concerning defendants' alleged legitimate, non-discriminatory reasons for the numerical occupancy restriction precludes summary judgment in favor of plaintiff.

Disparate-impact liability mandates the removal of policies that create artificial, arbitrary, or unnecessary barriers for members of a protected class. *See Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2522 (2015). Accordingly, proof of a legitimate non-discriminatory business reason sufficient to rebut a prima facie case of disparate impact discrimination requires a private defendant to proffer a business necessity sufficiently compelling to justify the challenged practice and show that the policy was the least restrictive means to that end.[4] *See Fair*

---

[4] The Ninth Circuit has not explicitly adopted a standard for evaluating a private defendant's alleged non-discriminatory business reason, and there is little, if any, consensus among the circuits as to the standard to be applied in a disparate impact case against a private defendant. *See United States v. Weiss*, 847 F. Supp. 819, 824, 831 (D. Nev. 1994); and *compare Pfaff*, 88 F.3d at 747 & n.3 *with HUD v. Mountain Side Mobile Estates*, 56 F.3d 1243 (10th Cir. 1995). Since the Ninth Circuit's ruling in *Pfaff*, however, district courts in this circuit have required a

ORDER - 5

*Housing Congress v. Weber*, 993 F. Supp. 1286, 1292 (C.D. Cal. 1997); *see also Ayres*, 993 F. Supp. at 318-19.[5] In evaluating a defendant's proffered business justification, subjective judgments are insufficient to rebut a plaintiff's prima facie case absent objective evidence in support of those judgments. *See Gashi v. Grubb & Ellis Property Management Services, Inc.*, 801 F. Supp.2d 12, 16 (D. Conn. 2011) (noting that courts generally view "subjective rationales" skeptically); *see also Ayres*, 855 F. Supp. at 319 ("[Defendant] simply relies on his own subjective judgment which, notwithstanding his experience in the real estate industry, falls short of the necessary showing.").

Defendants' supplemental response offers two justifications for the occupancy restriction: (1) that because the Granada has "one electric meter, one water meter and one gas meter for the entire building," allowing multiple tenants to occupy the studio apartments would require defendants to install a meter for every apartment to ensure "a fair system of billing for the use of utilities in the building,"; and (2) that the

---

private defendant to offer a sufficiently compelling business necessity for the policy at issue and show that the policy is the least discriminatory means to achieve that end in order to rebut a prima facie case of discrimination under the Fair Housing Act. *See, e.g.*, *Mathews v. Arrow Wood LLC*, 2009 WL 8659593, at *6 (C.D. Cal. April 2, 2009); *United States v. Plaza Mobile Estates*, 273 F. Supp. 2d 1084, 1091 (C.D. Cal. 2003). Although *Mathews* and *Plaza Mobile* are disparate treatment cases involving facially discriminatory policies, the Ninth Circuit has suggested that, if anything, the burden of rebuttal is higher in a case such as this one, where plaintiff has proven a prima facie case of disparate impact discrimination. *See Pfaff*, 88 F.3d at 747 n. 3 ("The burden of rebuttal is said to be heavier in cases of disparate impact than disparate treatment. This is because it is often harder to establish a prima facie case of disparate impact than disparate treatment.").

[5] Defendants cite *Gashi v. Grubb & Ellis Prop. Mgmt. Servs., Inc.*, 801 F. Supp. 2d 12 (D. Conn. 2011) for the proposition that where a defendant raises a material issue of fact as to whether the occupancy policy reasonably advanced a legitimate business interest, denial of summary judgment is appropriate. But defendants mischaracterize the rule applied in *Gashi*. In Judge Hall's words, "[t]o rebut a prima facie case, the defendant must prove 'that its actions furthered . . . a legitimate . . . interest *and* that no alternative would serve that interest with less discriminatory effect." *Gashi*, 801 F. Supp. 2d at 18-19 (emphasis in original) (quoting *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 929, 936 (2d Cir. 1988)).

configuration of the studio apartments is designed to accommodate only one person. Neither of these justifications, however, are sufficient to rebut plaintiff's prima facie case.

With regard to installing a new metering system, because there is only a single meter for the entire building, tenants do not pay for water, electricity, or gas separately—defendants foot the bill and incorporate the costs into the tenants' rent using a formula that "reflects the occupancy characteristics of the building and has generated no complaints from tenants." Breier-Scheetz Decl. at ¶ 4. Although ensuring a fair system of billing for the use of utilities in a particular apartment building is a worthy goal, defendants have offered no evidence that would allow the Court to conclude that defendants' concern about fairness is anything more than an arbitrary, *post-hoc* justification for a discriminatory policy.

To begin, the "free-rider" problem Mr. Breier-Scheetz contends would arise in the absence of the occupancy policy already exists. Any system of billing for utilities that does not monitor the usage of each apartment independently has a certain "unfairness" built in. Not all tenants use utilities at the same rate. And, as plaintiff points out, because defendants incorporate utility costs as a fixed amount in a tenant's rent, even with the occupancy restriction in place, some tenants will invariably pay for more than their fair share of utility costs.

Moreover, even assuming that the removal of the occupancy restriction would exacerbate the "free-rider" problem, and there is no evidence in the record that would support such a conclusion, defendants have not shown that installing new meters is necessary. *See Weiss*, 847 F. Supp. at 831 (holding that defendants had shown a

ORDER - 7

compelling business necessity where the defendants would have needed to perform a 1.63 million dollar upgrade to hot water capacity to allow the complex to accommodate families with children). Defendants have offered no evidence that abolishing the occupancy restriction without installing new meters would result in any financial hardship, either through the loss of current or prospective tenants, or due to increased cost of operation. Nor have they provided any explanation for why apparently less expensive alternatives to installing new meters, such as implementing a small rent increase at the Granada to offset any increase in utility costs that might arise, would be infeasible.[6] Defendants' proffer of Mr. Breier-Scheetz's subjective judgment that installing new meters for each apartment would be necessary if the occupancy policy were removed, without any objective evidence in support of that judgment, is not sufficient to rebut plaintiff's prima facie case of discrimination under the Fair Housing Act. *See Ayres*, 855 F. Supp. at 319.

With regard to the configuration of the studio apartments, defendants have similarly failed to provide any evidence that the apartments cannot adequately accommodate more than one person, other than to simply conclude that the apartments are too small. Contrary to defendants' contentions, however, the Seattle Municipal Code allows two people to occupy a studio apartment as small as 150 square feet. *See* SMC 22.206.020(C). Defendants have offered no evidence that would distinguish the studios at the Granada from any of the other apartments to which the occupancy limits in

---

[6] Not only is a rent increase likely to be less expensive than installing new meters, it also represents a less discriminatory alternative to implementing a strict single-person occupancy restriction.

ORDER - 8

SMC 22.206.020 would apply and have entirely failed to provide any explanation for why the Granada requires a more restrictive occupancy policy than set forth by the Seattle Municipal Code. Again, without a shred of objective evidence in support of their contentions, defendants' subjective judgment that the apartments are configured in such a way that they can only accommodate one person provides an insufficient basis to rebut plaintiff's prima facie case.

Plaintiff has met its burden of showing that defendants' one-person-per studio policy has a disparate impact on families with children and defendants have failed to prove a "business necessity sufficiently compelling to justify the challenged practice." *See Weiss*, 847 F. Supp. at 831. Accordingly, as to liability, plaintiff's counter-motion for summary judgment is GRANTED.

**C. Remedies**

In its counter-motion, plaintiff requests that the Court enter the following injunctive relief: (a) enjoining defendants from applying the one-person-per studio occupancy restriction and deviating from the Seattle Municipal Code; and (b) requiring defendants to provide quarterly logs of each residential property to plaintiff for three years, identifying all prospective tenant inquiries and defendants' responses. Plaintiff also requests that the Court assess a civil penalty pursuant to RCW 49.60.225. The parties, however, have dedicated little argument to the appropriateness of these remedies under the facts of this case and have not addressed whether issues of fact preclude some or all of these remedies at this time. Accordingly, the Court finds that additional briefing on these topics is warranted. In addition to addressing the court's authority to grant plaintiff's requested relief and any relevant standards to be applied in determining

whether such relief is appropriate, the parties' supplemental briefing should address: (1) whether plaintiff's proposed injunctive relief is appropriately "tailored to remedy the specific harm alleged," *see, e.g.*, *McCormack v. Hiedeman*, 694 F.3d 1004, 1019-20 (9th Cir. 2012); (2) whether an order requiring defendants to provide quarterly logs to plaintiff is appropriate given that plaintiff is a non-governmental entity; (3) the appropriate scope and duration of any order requiring the provision of quarterly logs; and (4) the factors the Court should consider in assessing any civil penalty. To the extent possible, the Court encourages the parties to confer and attempt to reach agreement on the remedies that are appropriate in this case.

### D. Issues Remaining for Trial

To the extent that the remedies requested in plaintiff's counter-motion for summary judgment can be granted or denied as a matter of law, the only issues that remain for trial concern the damages, both actual and punitive, that should be awarded. "If the court finds that a discriminatory housing practice has occurred . . . the court may award to the plaintiff actual and punitive damages . . . ." 42 U.S.C. § 3613(c)(1). A fair housing organization is entitled to receive actual damages for a violation of the Fair Housing Act when such violation has caused damage in the form of diverted resources to combat the violation. *See Fair Hous. Center of Greater Palm Beaches, Inc. v. Sonoma Bay Community Homeowners Association, Inc.*, 164 F. Supp. 3d 1375, 1382 (S.D. Fl. 2016); *see also Fair Hous. of Marin v. Combs*, 285 F.3d 899, 904-05 (9th Cir. 2002). Plaintiff concedes that issues of fact concerning its actual damages must be resolved at trial, *see* Pl.'s Mot. for Summ. J., docket no. 17 at 25, and did not move for summary judgment on the issue of punitive damages.

**Conclusion**

For the foregoing reasons, plaintiff's counter-motion for summary judgment, docket no. 17, is GRANTED. Defendants' one-person-per studio occupancy restriction at the Granada has a disparate impact on families with children in violation of the Fair Housing Act, Washington Law Against Discrimination, and Seattle Municipal Code. On or before Friday June, 2, 2017, plaintiff is DIRECTED to file a supplemental brief, not to exceed fourteen (14) pages, in support of the equitable relief and civil penalty it requests on summary judgment and which addresses the topics discussed in Section C above. Any response from defendants shall not exceed fourteen (14) pages and shall be filed on or before Friday, June 16, 2017. Plaintiff's reply, if any, shall be filed on or before Friday, June 23, 2017, and shall not exceed seven (7) pages.

IT IS SO ORDERED.

Dated this 11th day of May, 2017.

Thomas S. Zilly
United States District Judge