Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| FAIR HOUSING CENTER OF WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>BREIER-SCHEETZ PROPERTIES, LLC, a Washington corporation; and FREDERICK BREIER-SCHEETZ, an individual,<br><br>Defendants. | No. 2:16-cv-00922-TSZ<br><br>PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF INJUNCTIVE RELIEF |

In its Complaint, the Fair Housing Center of Washington requested "an injunction to stop Defendants' illegal conduct and prevent it from occurring again in the future; and including requirements of adopting a new non-discriminatory policy, training, monitoring, testing, reporting, and auditing . . .." Dkt. 1 at 8. Each of these components is important to remedy and prevent Defendants' long-running violations of fair housing laws. Accordingly, whether the Court considers each component now on summary judgment or at trial, Plaintiff addresses their propriety in this supplemental briefing.[1]

In the Court's order granting Plaintiff's counter-motion for summary judgment, the Court stated it "encourages the parties to confer and attempt to reach agreement on the remedies that are appropriate in this case" as to injunctive relief. Dkt. 42 at 10. Accordingly, Plaintiff's counsel wrote to the defense on May 17, 2017: "In the spirit of the Court's order, I invite

[1] Plaintiff withdraws its request for civil penalties under RCW 49.60.225.

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

Defendants to respond to our proposals [for injunctive relief identified previously] and arrange a time to discuss them with me to see if we can reach agreement." Declaration of Jesse Wing, Ex. B. The defense initially wrote that it would respond; but it has never done so, even after additional prompting by Plaintiff's counsel. *Id.*, Ex. C and ¶ 3.

## I. STANDARDS FOR INJUNCTIVE RELIEF

The purpose of the Fair Housing Act is "to provide within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. The Act authorizes injunctive relief "as the court deems appropriate" to: (1) bar unlawful practices and (2) to impose appropriate affirmative actions. 42 U.S.C. § 3613(c)(1); *See Ueno v. Napolitano*, No. 04 CV 1873 (SJ) VVP, 2007 WL 1395517, at *6 (E.D.N.Y. May 11, 2007) ("[T]he two most common forms of injunctive relief requested under the FHA seek either to prohibit the offending party from engaging in future acts of housing discrimination or to impose upon that party certain affirmative duties to atone for past discrimination and prevent recurrence of such acts.") Indeed, when faced with a civil rights violation, a District Court has "not merely the power but the duty" to remedy the effects of past violations and bar similar violations in the future. *Louisiana v. United States*, 380 U.S. 145, 154 (1965).

For nearly forty years, the Ninth Circuit has "held that where a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation." *Smallwood v. Nat'l Can Co.*, 583 F.2d 419, 420 (9th Cir. 1978). The Ninth Circuit has applied that principle to the federal Fair Housing Act, *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001) (reversing failure to enter injunctive relief to prevent violations of Fair Housing Act), and this Court should apply it here.

Typically, a party seeking a permanent injunction must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

disserved by a permanent injunction." *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006).

The Fair Housing Center meets these elements, and the Court should so find. The Plaintiff has proved that the Defendants' occupancy restriction violates the law. Until and unless Defendants' policy is halted, it will irreparably harm the Plaintiff's mission and non-party families with children denied housing, which cannot be remedied by damages. This is especially true for the families with children who will be denied housing absent an injunction. Any hardship Defendants might experience by complying with an injunction that remedies and prevents discrimination is easily outweighed by the hardship that continued violation of the law would impose upon the Plaintiff in meeting its mission and on families with children. Finally, it is hard to imagine how the remedies Plaintiff seeks would disserve the public interest.

Still, the Plaintiff need not meet the *eBay* test to be entitled to an injunction. The Ninth Circuit has directed: "The standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." *Burlington N. R.R. Co. v. Dep't of Revenue*, 934 F.2d 1064, 1074 (9th Cir. 1991) (internal quotation marks and citation omitted). This standard applies to Title VIII (the Fair Housing Act): "Once a court finds that a landlord has discriminated against prospective tenants, it may enjoin the landlord from engaging in such practices." *Mairs v. Gilbreath*, No. CV 01-9981 ABCBQRX, 2002 WL 34272404, at *3 (C.D. Cal. Oct. 10, 2002) (quoting *Marable v. Walker*, 704 F.2d 1219, 1221 (11th Cir.1983)).

The Fair Housing Act specifically authorizes permanent injunctive relief:

> (1) In a civil action under subsection (a) of this section, *if the court finds that a discriminatory housing practice has occurred* or is about to occur, the court may award to the plaintiff actual and punitive damages, and subject to subsection (d) of this section, may grant as relief, as the court deems appropriate, *any permanent or temporary injunction*, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate).

42 U.S.C. § 3613(c) (emphasis added).



MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

The Fair Housing Act clearly provides for the affirmative equitable relief that Plaintiff Fair Housing Center of Washington requests here, as does the Washington Law Against Discrimination, RCW 49.60.030(2). Such relief is warranted to ensure that Defendants will not again discriminate based on familial status. In his deposition, Defendant Breier-Scheetz expressed disinterest in whether his occupancy restriction harmed families with children despite the fact that he conceded that it has a disproportionately harsh impact on them. *See infra* at page 12. He has failed to take responsibility for his conduct, has shown no remorse, and has declined the Court's encouragement to work with Plaintiff to fashion injunctive relief appropriate to the circumstances.

## II. APPROPRIATE TYPES OF INJUNCTIVE RELIEF

It its order granting partial summary judgment to the Fair Housing Center, the Court directed FHCW to address whether the "proposed injunctive relief is appropriately 'tailored to remedy the specific harm alleged,' *see, e.g., McCormack v. Hiedeman*, 694 F.3d 1004, 1019-20 (9th Cir. 2012)." Dkt. 42.

For decades, federal courts have ordered the kinds of affirmative relief in fair housing cases that Plaintiff seeks here: "Notably, with some consistency in the affirmative sections of the injunctive orders examined, other tribunals have required defendants to take definite steps via education and advertising towards sustained lawful conduct. Record keeping, too, has often been mandated, thereby facilitating judicial monitoring of compliance." *Rogers v. 66-36 Yellowstone Blvd. Co-op. Owners, Inc.*, 599 F. Supp. 79, 84–85 (E.D.N.Y. 1984).

"Injunctive relief should be structured to achieve the twin goals of insuring that the [Fair Housing] Act is not violated in the future and removing any lingering effects of past discrimination." *Marable v. Walker*, 704 F.2d 1219, 1221 (11th Cir.1983); *see also LeBlanc-Sternberg v. Fletcher*, 104 F.3d 355 (2d Cir. 1996); *Morgan v. Sec'y of Hous. & Urban Dev.*, 985 F.2d 1451, 1460 (10th Cir. 1993). Injunctions should provide "fair and precisely drawn notice of what the injunction actually prohibits." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1047 (9th Cir. 2013). Beyond such principals, the law provides no formula for

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

determining what form of equitable relief is appropriate. In fair housing cases, courts look to what's needed and what works. *Ueno v. Napolitano*, No. 04 CV 1873 (SJ)VVP, 2007 WL 1395517, at *7 (E.D.N.Y. May 11, 2007) (citing *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

> The Court of Appeals, searching for a term to define the equitable remedial power of the district courts, used the term 'reasonableness.' . . . [T]his Court [has] used the term 'feasible' and by implication, 'workable,' 'effective,' and 'realistic' in the mandate to develop 'a plan that promises realistically to work, and * * * to work now.' . . . However, in seeking to define the scope of remedial power or the limits on remedial power of courts in an area as sensitive as we deal with here, words are poor instruments to convey the sense of basic fairness inherent in equity. Substance, not semantics, must govern[.]

*Swann*, 402 U.S. at 31.

Here, FHCW seeks reasonable, warranted, and tailored injunctive relief to ensure Defendants cease enforcing and remedy their long-running occupancy restriction that has excluded families with children from Defendants' studio apartments for decades.[2] Towards that end, FHCW seeks an injunction ordering Defendants:

> (1) to cease enforcing the occupancy restriction that this court has already held violates the law, and not to impose any restriction that is more restrictive than SMC 22.206.020;
>
> (2) to maintain and provide to FHCW quarterly logs for its residential properties for three years, identifying all prospective tenant inquiries and Defendants' responses, including the bases for any denials;
>
> (3) to adopt a written anti-discrimination policy that prohibits discrimination in violation of fair housing laws and to make each of its employees aware of the policy, both within 60 days;
>
> (4) to include the HUD fair housing logo on any advertisement or posting for rental housing and post the logo in its administrative offices;
>
> (5) to pay FHCW to conduct two paired tests of the Granada Apartments annually for three years at a rate of $700 per test, at dates and times unknown to Defendants; and

[2] Defendant Frederick Breier-Scheetz testified that he has enforced the occupancy restriction since the 1970s, and he has maintained it long after the 1988 Amendments to the Fair Housing Act prohibiting discrimination against families with children. *See* Declaration of Jesse Wing, Ex. A (Breier-Scheetz Dep. at 102:1-14).

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

> (6) to pay FHCW to conduct annual trainings at a rate of $700 per training for the next three years, and to require attendance by each of Defendants' employees whose duties include responding to inquiries from potential applicants or tenants or handling any part of the application for tenancy process.

The district court has broad and flexible discretion to shape an effective remedy for fair housing violations. *See James v. Lucas Metro Housing Authority*, 833 F.2d 1203, 1207-08 (6th Cir. 1987); *United States v. Yonkers Board of Education*, 837 F.2d 1181 (2d Cir. 1987). It should exercise its "broad equitable powers" so as "to make possible the fashioning of the most complete relief possible." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 364 (1977).

The types of relief requested here are well recognized as remedies for fair housing violations and in familial status and occupancy restriction cases. For instance, the Central District of California ordered a defendant landlord to comply with an extensive list of affirmative measures for three years, including remedial advertising, trainings of the landlord by a specificied private housing rights organization, and detailed reporting by the organization, including: (1) all rental availability records (unit number, date of notification of availability, date vacated, date available for rental, date of all applications, date of all leases, date of new occupancy); (2) applications (accepted and rejected) and lease or rental agreements; and (3) a log of all persons who inquire about renting with person's name, address, and telephone number. *Mairs v. Gilbreath*, No. CV 01-9981 ABCBQRX, 2002 WL 34272404, at *4 (C.D. Cal. Oct. 10, 2002).

Similarly, the Eastern District of New York ordered a landlord to submit such reports for three years to an anti-discrimination non-profit organization. *Ueno v. Napolitano*, No. 04 CV 1873 (SJ)VVP, 2007 WL 1395517, at *7 (E.D.N.Y. May 11, 2007). The court directed the landlord to inform the Anti-Discrimination Center of any newly-available vacancies so the Center could refer applicants– and the court required the landlord to consider those applicants. For each rejected referral, the court required the landlord to provide the Center written notice specifying the reasons. The *Ueno* court rejected the landlord's resistance to reporting to the Center: "[A]s a comprehensive non-profit organization specializing in areas such as housing

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

discrimination those at the Anti-Discrimination Center ultimately tasked with implementing the court's order of injunctive relief will have the requisite experience and professionalism to carry out its end of the bargain with the public's interest in mind." *Id.*

Likewise, the Western District of Tennessee approved a consent decree that required a landlord to provide extensive annual reports to plaintiffs' counsel for six years, including detailed information related to its Section 8 waiting list, the racial composition of families in the landlord's housing projects, all applications for funding from HUD, and detailed information regarding the landlord's operations. *Hale v. U.S. Dep't of Hous. & Urban Dev.*, No. CIV.A. C-73-410, 1985 WL 11179, at *8–9 (W.D. Tenn. Aug. 23, 1985).

Similar to the Anti-Discrimination Center in *Ueno*, the Fair Housing Center's "mission is to end housing discrimination in Western Washington." Dkt. 19, ¶ 3. Formerly known as the Fair Housing Center of South Puget Sound, it "is a private non-profit organization which seeks to 'identify and eliminate discriminatory housing practices and to ensure the equal availability of housing and related services to all people, without regard to race, religion, gender, national origin, familial status, or disability.'" *Nevels v. W. World Ins. Co.*, 359 F. Supp.2d 1110, 1120 (W.D. Wash. 2004). To achieve this mission, "FHCW provides an array of programs and services designed to eliminate housing discrimination through counseling, education, advocacy, research, and enforcement of fair housing laws." Declaration of Lauren Walker Lee, Executive Director of the FHCW, ¶ 3. This work includes testing landlords and prosecuting violations of the fair housing laws, as it did in *Nevels, supra*, and in this case, *id.*, ¶¶ 3, 6; Dkts. 19, 21, 22, 23. The Center provides training to landlords on compliance with fair housing laws and monitors compliance with the law and judicial orders through testing and reviewing landlord records and practices. *See* Walker Lee Decl., ¶¶ 2, 4, 7; *see, e.g.*, *Hubley v. CIC Corp.*, CV 02-5566 (W.D. Wash. 2005) (Consent Decree under Fair Housing Act instructing landlord to receive training and testing from, and provide records for monitoring to, the Fair Housing Center of Washington f/k/a Fair Housing Center of South Puget Sound), Wing Decl., Ex. D.

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

As in *Ueno*, it is appropriate and effective for the Court to rely on FHCW's expertise in fair housing testing and monitoring to ensure compliance with the Court's declaration that Defendants' occupancy restriction is illegal and its injunction prohibiting and remedying the policy, and preventing future violations.

## III. SCOPE AND DURATION

The Court directed FHCW to address whether the Center's request seeks an appropriate scope of data, and for a reasonable duration. The requests comport with this Court's discretion and with similar orders by this and other courts.

As shown above, a three-year duration, as FHCW requests, is widely used as a reasonable period for remedial provisions. And it's been used here: the U.S. District Court for the Western District of Washington directed a defendant mobile home park to provide detailed records for three years. *United States v. Keck*, No. CIV. A. C89-1664-C, 1990 WL 357064 at *8 (W.D. Wa. Nov. 15, 1990). The order included detailed contact information for all persons who inquired about a dwelling, including the number of children younger than 18 years of age; copies of all applications for residence at the park and all related correspondence, notes, correspondence and other records; waiting lists and advertisements for the park. *Id.* Similarly, in *Hubley v. CIC Corp.*, CV 02-5566, at * 3-7 (W.D. Wash. 2005), this Court approved a five-year consent decree under Fair Housing Act for family status and race discrimination, ordering the landlord to adopt an anti-discrimination policy, receive fair housing training, maintain logs of applicant inquiries and tenant evictions, supply records for review to a fair housing center, pay the fair housing center for testing, and use the HUD fair housing logo in any advertising and post it onsite. Wing Decl., Ex. D.

In 2011, the U.S. District Court for the Western District of Washington approved a consent order granting injunctive relief in a case alleging that an apartment complex and its resident manager had engaged in discrimination, including on the basis of familial status. *United States v. Summerhill Place*, LLC, NO. 2:10-cv-OllS0-JLR (W.D. Wash. Mar. 8, 2011), Wing Decl., Ex. F. The order required that the defendants maintain for the plaintiff's inspection

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

detailed records about visitors, rental applications, leases, building rules and regulations; maintain a waitlist; require training pre-approved by the plaintiff for all employees who might have a role in showing the apartments or choosing who is selected to live there, and to refrain from employing the individual defendant in any position that involves interacting or managing potential or actual tenants.

Numerous courts have entered injunctions and consent decrees that contain affirmative remedies such as those requested here in fair housing cases brought not only by the federal government but by private fair housing centers as well. *See, e.g., Southern California Housing Rights Center v. Krug*, 564 F. Supp.2d 1138, 1155-56 (C.D. Cal. 2007) (requiring, for three years, a landlord to maintain records of all applications and details of the outcome of the application, unit availability list, inquiry log, and a chronological waiting list; annual training of the landlord and its employees, to be performed by the plaintiff at Defendants' expense; revisions to practices and advertisements; and compliance with the law); *Housing Rights Center v. Snow*, No. CV05-4644SGL (JTLX), 2007 WL 91148, at *5 (E.D. Cal. Jan. 3, 2007) (requiring three years of "yearly fair housing training to be provided by the Housing Rights Center" at its customary charge and detailed record keeping that included dwelling availability, a prospective tenant inquiry log including contact information and the outcome of the inquiry and application information including bases for any denials, and a chronological waiting list for prospective tenants.); *United States v. Townhomes of Kings Lake HOA*, No. 8:12-cv-2298-T-33TGW (D. Fla. Aug. 15, 2013) (consent decree ordering a home owners' association to refrain from discriminating on the basis of familial status; amend its governing documents and rules to comply with the law; provide public notice of the changes; maintain a log of all rejected potential tenants and adverse actions threatened or taken against a resident; send all relevant employees to a training program approved by the plaintiff; and maintain records of rental applications, sales agreements, and complaints by actual or prospective residents). Wing Decl., Ex. G; *Baumgardner v. Sec'y, U.S. Dep't of Hous. & Urban Dev. on Behalf of Holley*, 960 F.2d 572, 583–84 (6th Cir. 1992) (requiring defendant to maintain and submit quarterly reports for two

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

years including copies of written rental advertisements and applications, sample leases, notes on the gender of all persons making oral inquiries and applications, the bases for application rejections, and a list of occupants and vacancies with the gender and other details recorded); *S. Suburban Hous. Ctr. v. Lincoln-Way Builders, Inc.*, No. 90 C 6077, 1990 WL 186193, at *5–6 (N.D. Ill. Nov. 13, 1990) (five-year consent decree in familial status discrimination case, requiring condominiums owner and staff to attend fair housing trainings sponsored by the plaintiff fair housing center, submit to testing by the plaintiff, use the HUD fair housing logo in advertising); *United States v. Lepore*, 816 F. Supp. 1011, 1025 (M.D. Pa. 1991) (enjoining mobile home park from enforcing its occupancy restrictions, which discriminated based on familial status; requiring certain recordkeeping and reporting procedures including reporting to the court information about the park tenants and applicants and their familial status).

The need for ample time to establish new practices as the new normal is especially apparent on the facts of this case. The Defendants have been enforcing their discriminatory policy on a daily basis for more than forty years, with an expressed attitude by owner/operator Frederick Breier-Scheetz that he does as he pleases. It will take time to remedy the long-standing violation through implementation of a new policy, trainings, and oversight via checking logs and testing. Monitoring that Defendants have in fact changed their policy and practices permanently can only be effectively measured over time; otherwise, there is an unreasonable risk that any apparent corrections will be short-lived. The scope and duration of FHCW's requests are tailored to the needs of this case, are reasonable and relatively modest, and are consistent with numerous other injunctions and consent decrees ordered for decades by this and other courts to remedy and prevent fair housing violations, including in familial status cases.

Finally, in determining the propriety of injunctive relief, courts consider whether the defendant appreciates the wrongfulness of its conduct. *Williamsburg Fair Housing v. N.Y.C. Housing Authority*, 493 F. Supp. 1225, 1251 (S.D.N.Y. 1980). For example, in *Inland Mediation Bd. v. City of Pomona*, 158 F. Supp.2d 1120, 1162 (C.D. Cal. 2001), the court entered injunctive relief relying in part on the fact that:

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

> Defendants have a similar lack of understanding of the potential wrongfulness of their conduct. Indeed, Plaintiffs have provided evidence that [the defendant] personally believes, and has attempted to convince others, that federal fair housing statutes are not enforceable, and that the government cannot in any way influence a building owner's decision regarding the acceptance of tenants.

Here, Defendants have similarly acted with disregard for fair housing law even when their violations and the law itself have been repeatedly brought to their attention.

Defendants have ignored repeated warnings that their irrational and arbitrary occupancy restriction is illegal. In 2014, FHCW filed a complaint against Defendants with the U.S. Department of Housing and Urban Development. Dkt. 17 at 3. Defendants made no changes to their policy. In late 2015, the Seattle Office for Civil Rights concluded its investigation finding "reasonable cause" that Defendants' policy results in a disparate, adverse impact on persons based on their familial status and therefore violates the Fair Housing Act and the Seattle Municipal Code. Dkt. 17 at 4. Again, Defendants did nothing to cure their violations or abandon their discriminatory policy. Then, Plaintiff filed this action on June 16, 2016, challenging Defendants' occupancy restriction. Dkt. 1. Plaintiffs' counsel wrote a letter to the defense two months later, on August 3, 2016, citing numerous court opinions that held such occupancy restrictions violated the law and urging the Defendants to cease enforcement of the restriction. Wing Decl., Ex. E. Defendants ignored the letter and maintained their policy.

Four months later, Defendants aggressively moved to dismiss Plaintiff's case arguing that the lawsuit did not even plausibly state a violation of the law. In response, Plaintiff filed a counter-motion for summary judgment, which detailed the substantial precedent holding that such occupancy restrictions violate fair housing law and provided the expert opinion of Dr. Avery Mason Guest that Defendants' policy has a damaging disparate impact on families with children. Dkt. 20. Defendants conceded the disparate impact but still refused to rescind their illegal policy. Instead, nearly three months later, on March 27, 2017, Defendant Frederick Breier-Scheetz testified at his deposition that he has no misgivings about his discriminatory policy and showed no appreciation of the harm it causes families with children:

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

Q Okay. And you've known that no children can live in your small studio apartments since you adopted the policy; right?

A Yeah, it's ipso facto. . . .

Q Does it concern you that no families with children can live in your studios?

A Why should it? . . .

Wing Decl., Ex. A (Breier-Scheetz Dep. at 83:16-84:4. And he testified that despite knowing that the Fair Housing Act prohibits discrimination against families with children he feels free to restrict occupancy because "that's what I wish to do":

Q What is your understanding of what the law prohibits in terms of family status discrimination in housing?

A That you don't not rent to people because they are families, however that might be defined.

. . .

Q Do you have an understanding about whether adopting and implementing occupancy restrictions is legal or not legal under the fair housing law?

A Oh, I believe it's legal or I guess I wouldn't be here. I don't believe the standards, you know, your principal is asserting are acceptable or that are required.

. . .

Q So do you believe that a landlord may limit the number of people who rent an apartment however they wish without running afoul of the Fair Housing Act?

A Well, I think there are good reasons for doing what I do and, therefore, that's what I wish to do, however you want to slice it; that's what I do.

*Id.* at 93:4-24, 94:11-16.

The Court should approve the injunctive relief sought here because it is reasonable, widely granted in similar fair housing cases, tailored to address the violations committed by Defendants, which they have maintained for arbitrary reasons for decades with no concern for

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

families with children after repeated warnings that the occupancy restriction disproportionately harms families and is unlawful.

## IV. CONCLUSION

For the reasons explained above, the Court should grant the injunctive relief requested.

DATED this 2nd day of June, 2017.

MacDONALD HOAGUE & BAYLESS

By: ______________________
Jesse Wing, WSBA #27751
JesseW@MHB.com
Angela C. Galloway, WSBA #45330
AngelaG@mhb.com
Attorneys for Plaintiff

PLAINTIFF'S SUPPLEMENTAL BRIEF
IN SUPPORT OF INJUNCTIVE RELIEF - 13
No. 2:16-cv-00922-MAT

10017.04 ke128504.003

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

CERTIFICATE OF SERVICE

I certify that on the date noted below I electronically filed this document entitled **Plaintiff's Supplemental Brief in Support of Injunctive Relief** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

Counsel for Defendants

George T. Hunter, WSBA # 14388
5900 48th Ave S
Seattle, WA 98118
Telephone: 206-851-7700
Email: gthunter7700@gmail.com

DATED this 2nd day of June, 2017, at Seattle, Washington.

Esmeralda Valenzuela, Legal Assistant

PLAINTIFF'S SUPPLEMENTAL BRIEF
IN SUPPORT OF INJUNCTIVE RELIEF - 14
No. 2:16-cv-00922-MAT

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

10017.04 ke128504.003