Honorable Thomas S. Zilly

1

2

3

4

5

6

7       UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

FAIR HOUSING CENTER OF                    No. 2:16-cv-00922-MAT
9   WASHINGTON,
                                          DECLARATION OF JESSE WING
10          Plaintiff,                     IN SUPPORT OF INJUNCTIVE RELIEF

11      v.

12   BREIER-SCHEETZ PROPERTIES, LLC, a
Washington corporation; and FREDERICK
13   BREIER-SCHEETZ, an individual,

14          Defendants.

15

16      I, Jesse Wing, declare as follows:

17      I am one of the attorneys for Plaintiff Fair Housing Center of Washington.  I am over the

18   age of 18, and am competent to testify.

19      1.      **Exhibit A** is true excerpts of the deposition of Frederick Scheetz conducted on

20   March .

21      2.      **Exhibit B** is a true copy of a letter dated May 17, 2017 that I wrote and emailed

22   to defense counsel that same day.

23      3.      **Exhibit C** is true copy of an email dated May 26, 2017 that I sent to defense

24   counsel that same day, and a true copy of an email dated May 24, 2017 that he sent to my legal

25   assistant.  The defense never responded to my letter dated May 17, 2017 or my email dated May

26   26, 2017.

27

DECLARATION OF JESSE WING
IN SUPPORT OF INJUNCTIVE RELIEF - 1
No. 2:16-cv-00922-MAT
10017.04 kf018504

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1   4.  **Exhibit D** is a true copy of *Hubley v. CIC Corp.*, CV 02-5566 (W.D. Wash. 2005)

2 (Consent Decree).

3   5.  **Exhibit E** is a true copy of a letter dated August 3, 2017 that I wrote and emailed

4 to defense counsel that same day.

5   6.  **Exhibit F** is a true copy of *United States v. Summerhill Place*, LLC, NO. 2:10-cv-

6 01150-JLR (W.D. Wash. Mar. 8, 2011) (Consent Decree).

7   7.  **Exhibit G** is a true copy of *United States v. Townhomes of Kings Lake HOA*, No.

8 8:12-cv-2298-T-33TGW (D. Fla. Aug. 15, 2013) (Consent Decree).

9

10   I declare under penalty of perjury of the laws of the United States of America and the

11 State of Washington that the foregoing is true and correct.

12   DATED this 2nd day of June, 2017, at Seattle, Washington.

13

14

15                _____

16               Jesse Wing

17

18

19

20

21

22

23

24

25

26

27

DECLARATION OF JESSE WING
IN SUPPORT OF INJUNCTIVE RELIEF - 2
No. 2:16-cv-00922-MAT

10017.04 kf018504

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1

<u>CERTIFICATE OF SERVICE</u>

2

I certify that on the date noted below I electronically filed this document entitled

3

**Declaration of Jesse Wing in Support of Injunctive Relief** with the Clerk of the Court using

4

the CM/ECF system which will send notification of such filing to the following persons:

5

<u>Counsel for Defendants</u>

6

George T. Hunter, WSBA # 14388
5900 48th Ave S

7

Seattle, WA 98118
Telephone: 206-851-7700

8

Email: gthunter7700@gmail.com

9

10

DATED this 2nd day of June, 2017, at Seattle, Washington.

11

12

Esmeralda Valenzuela, Legal Assistant

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DECLARATION OF JESSE WING
IN SUPPORT OF INJUNCTIVE RELIEF - 3
No. 2:16-cv-00922-MAT

10017.04 kf018504

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

# EXHIBIT A

## TO

## DECLARATION OF JESSE WING

FHCW v Breier-Scheetz  3-24-17  FREDERICK BREIER SCHEETZ

Page 83

```
 1      kind of -- I think many landlords, large property firms
 2      probably have very homogenized standards that they push
 3      throughout, you know, thousands of unit, and I guess they
 4      have to.  The landlords I know tend to have many less
 5      units and, you know, what their restrictions are I guess
 6      varies with them.  And I don't make a point of emulating
 7      their standards or vice versa, I guess; yeah.
 8   Q  Do you understand that no children can live in your
 9      smaller studio apartments?
10   A  Well, how would you define a child?
11   Q  Typically somebody under the age of 18.
12   A  Okay.  Which is, effectively they don't have the ability
13      to sign their own rental agreements.  They are not
14      emancipated.  I guess that's -- yeah.  We don't take
15      co-signers, so if that, for anyone, you know.
16   Q  Okay.  And you've known that no children can live in your
17      small studio apartments since you adopted the policy;
18      right?
19   A  Yeah, it's ipso facto.
20   Q  And because no children can live in those studio
21      apartments, it means no families with children can live in
22      those smaller studios; right?
23   A  Well, I guess that gets into a definition of what you mean
24      by family and such like that.  It's two people can't live
25      in that; I don't define whether they are a family or not.
```

FHCW v Breier-Scheetz  3-24-17  FREDERICK BREIER SCHEETZ

Page 84

1      I define whether it's two people.

2    Q  Does it concern you that no families with children can

3       live in your studios?

4    A  Why should it?

5    Q  Okay.  And you also understand that no married couples can

6       live in your studios; right?

7    A  That would be two people.

8    Q  Right.

9    A  Yeah.

10   Q  So they can't live in your studios either; right?

11   A  No.

12   Q  Is that correct?

13   A  And unmarried couples and uncoupled roommates.  One person

14      is one person.  Two people is too many.

15   Q  Okay.  Are your small studios less expensive than your

16      other units?

17   A  On average; yes.  Certainly at the Granada; yeah.  By and

18      large, the industry basis, along with other things, but a

19      very standard rule of thumb for what you rent is what are

20      you charging per square foot, so --

21   Q  Okay.  Have you consulted with any professional of any

22      field to try to determine whether your perception that one

23      person is less likely to move as compared with two people

24      in a studio unit is accurate?  Did you follow my question?

25   A  Have I consulted with a professional to verify whether

FHCW v Breier-Scheetz   3-24-17   FREDERICK BREIER SCHEETZ

Page 93

1      number of tenants that we have.  So cars is not a big

2      issue, but it is not an easy area to do business on

3      Capitol Hill.

4   Q   What is your understanding of what the law prohibits in

5      terms of family status discrimination in housing?

6   A   That you don't not rent to people because they are

7      families, however that might be defined.

8   Q   Okay.

9   A   You take them straight down the line.  As I said earlier,

10     you don't rent to people who are not unemancipated

11     children or unemancipated younger people.  You don't rent

12     to two people that you don't have -- obviously when you

13     are dealing with two people in a larger unit and one is an

14     emancipated minor, you are really renting to the adult as

15     far as who's responsible for the agreement.  That's simple

16     law.  But other than that, it's the -- it's not an issue.

17  Q   Do you have --

18  A   What is an issue is counting the heads; who do you have.

19  Q   Do you have an understanding about whether adopting and

20     implementing occupancy restrictions is legal or not legal

21     under the fair housing law?

22  A   Oh, I believe it's legal or I guess I wouldn't be here.  I

23     don't believe the standards, you know, your principal is

24     asserting are acceptable or that are required.

25  Q   Do you have any understanding of whether occupancy

FHCW v Breier-Scheetz  3-24-17   FREDERICK BREIER SCHEETZ

Page 94

1      restrictions are ever illegal under the fair housing law?

2  A  I don't have any thoughts about that.  I wouldn't push it

3      to its parameters.  I don't research that; yeah.

4  Q  Okay.  When you say you wouldn't push it to its

5      parameters, can you explain what you mean?

6  A  When you say forever, if it's ever illegal, what do you

7      mean by, give me examples of what you might think are

8      illegal.  I'm sure out there somewhere there's something

9      that's going to be illegal.  I don't think it's within the

10     purview of what we do renting apartments.

11 Q  So do you believe that a landlord may limit the number of

12     people who rent an apartment however they wish without

13     running afoul of the Fair Housing Act?

14 A  Well, I think there are good reasons for doing what I do

15     and, therefore, that's what I wish to do, however you want

16     to slice it; that's what I do.

17         It has been my experience in my many years I've been

18     in this business, specifically dealing with studios, that

19     for a variety of reasons, as the Huths point out, these

20     units are not at all large, that putting two people into a

21     unit like that is too close to what might qualify as a

22     hotel room.  And in my professional experience over many

23     years is that that leads to, like hotel rooms, people

24     turnover, but oftentimes people renting hotel rooms are

25     not, it's up-front how long they plan on saying there.

FHCW v Breier-Scheetz  3-24-17  FREDERICK BREIER SCHEETZ

Page 102

1     Complaint that originally notified you that the Fair

2     Housing Center was pursuing a claim against you?

3          MR. HUNTER:  Counsel, is this going to be an

4     exhibit?

5          MR. WING:  Oh, I'm sorry.  It's Exhibit 9.  Yes.

6   A  Yes, that was the original Complaint.

7   Q  So you've read that before?

8   A  Yes.

9   Q  Thank you.

10         I think if I understood you, you said that sometime in

11    the 1970's, you decided that it was not economically

12    practical or preferable to limit your larger studios to

13    one person; is that right?

14  A  That's right.

15  Q  Okay.  And did you do any kind of analysis with numbers

16    then or was that just kind of your perception?

17  A  That was based upon opening up to a wider market in order

18    to attract more tenants to keep the building more close to

19    full.

20  Q  So it was a bit of an experiment?

21  A  Yeah.

22  Q  And it worked?

23  A  Yeah.

24  Q  Is that right?

25  A  That's correct.

## **EXHIBIT B**

TO

DECLARATION OF JESSE WING

MHB MacDonald Hoague & Bayless
ATTORNEYS AND COUNSELORS AT LAW

705 Second Avenue
Suite 1500
Seattle, Washington
98104-1745

**English** 206.622.1604
**Español** 206.694.1685
**Fax** 206.343.3961

May 17, 2017

**VIA EMAIL**

George T. Hunter
Attorney at Law
5900 48th Avenue South
Seattle, WA 98118

Dear George:

    In his granting summary judgment, Judge Zilly ordered the Plaintiff to submit supplemental briefing on injunctive relief. In the meantime, however, he wrote that he "encourages the parties to confer and attempt to reach agreement on the remedies that are appropriate in this case" as to injunctive relief. Dkt. 42 at 10. In my Complaint and Counter-Motion for Summary Judgment, and in a ▮FRE 408▮ letter to you dated August 3, 2016, I identified a variety of injunctive measures that the Plaintiff seeks and which we believe are appropriate and have been ordered in other cases. In the spirit of the Court's order, I invite Defendants to respond to our proposals and arrange a time to discuss them with me to see if we can reach agreement. We would need to reach agreement by March 24 (the middle of next week), to afford me adequate time to prepare briefing for the Court if there is no agreement. ▮FRE 408▮

Very truly yours,

MacDonald Hoague & Bayless

Jesse Wing
Attorney

JW:ev

Alec Bayless (1921-1991)
Francis Hoague (1909-1993)
Kenneth A. MacDonald (1917-2012)

Miguel A. Bocanegra
Tiffany M. Cartwright
Katherine C. Chamberlain
Andrew T. Chan
Kirsten Eklund
Timothy K. Ford
Katrin E. Frank
Angela C. Galloway
Ester Greenfield
Leslie J. Hagin
Ralph Hua
Sam Kramer
Joe Shaeffer
Jeffrey L. Taren
Eryne Walvekar
David J. Whedbee
Jesse Wing
Lola S. Zakharova

**EXHIBIT C**

TO

DECLARATION OF JESSE WING

**Jesse Wing**

| | |
|---|---|
| **From:** | Jesse Wing |
| **Sent:** | Friday, May 26, 2017 3:22 PM |
| **To:** | George Hunter (gthunter7700@gmail.com) |
| **Cc:** | Angela C. Galloway |
| **Subject:** | Granada |

Hi George,

In a previous message, you wrote that you would responding to my letter about injunctive relief.  We have not received any communication from you yet.  Are you sending us a response?

Thanks,

Jesse

**Jesse Wing**
**MacDonald Hoague & Bayless**
**705 Second Avenue, Suite 1500**
**Seattle, WA 98104**
☎  **206.622.1604 | Fax 206.343.3961**
✉  **jessew@mhb.com   www.mhb.com**

*This email is intended only for the individual(s) to whom it is addressed and it may be a confidential communication protected by law.  Any unauthorized use, dissemination, distribution, disclosure, or copying is prohibited.  If you have received this communication in error, please notify me immediately by return email and delete this message from your system.*

## Esmeralda Valenzuela

**From:** George Hunter <gthunter7700@gmail.com>
**Sent:** Wednesday, May 24, 2017 6:06 AM
**To:** Esmeralda Valenzuela
**Subject:** Re: Fair Housing Center v. Granada / Correspondence

I am meeting with my client today and will have his response to you no later than tomorrow. I apologize for the delay.

George Hunter

Sent from my iPhone

On May 17, 2017, at 10:57 AM, Esmeralda Valenzuela <EsmeraldaV@mhb.com> wrote:

Hello Mr. Hunter,

Attached please find correspondence from Jesse Wing.

Thank you,

**Esmeralda Valenzuela** | Legal Assistant to:
Jesse Wing, Joe Shaeffer and Sam Kramer
**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, WA 98104
206.622.1604 | Fax 206.343.3961
EsmeraldaV@mhb.com | www.mhb.com

*This e-mail and any attachments to it are intended for the named addressee only. It contains private, confidential, or privileged information which is protected by law. Any unauthorized use, duplication, or disclosure to anyone else is prohibited. If you received this mail in error, please delete it and notify me immediately, and please do not copy or send this message to anyone else.*

<2017-05-17 LTR to George Hunter.pdf>

1

**EXHIBIT D**

TO

DECLARATION OF JESSE WING

02-CV-05566-MISC

FILED _____ LODGED
_____ RECEIVED

FEB 02 2005

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

4
5
6
7       IN THE UNITED STATES DISTRICT COURT
8          WESTERN DISTRICT OF WASHINGTON
                    AT TACOMA

9    LISA HUBLEY; JOLENE KODEN,
     LAURANCE GLOVER; TONI M. FICK;
10   JAMES ALLEN FICK; BEATRIZ, THOMAS;        NO. CV02 5566
     KAREN BRIGHTMAN; KATHY KELLEY;
11   ALTON BRADBY, IV; ANNE BRADBY;
     ALTON BRADBY, V, a minor; JABRIL          CONSENT DECREE
12   COLLINS, a minor; AVERY BRADBY, a
     minor; ERIN BENI; RIQUEL SILLS-
13   ROBERTS, a minor; JENNIFER              )
     SCHUMACHER, a minor; JASON TOOTOO,
14   a minor; and DARLENE TAITI, a minor

15                           Plaintiffs,

16        vs.

17   CIC CORPORATION, a Washington
     corporation, dba Northgate Village
18   Apartments; and GRACE LI, and her marital
     community with LARRY LI,
19
                              Defendants.
20

21
22       Plaintiffs filed this action against defendants CIC Corporation and Grace Li (and other

23   defendants), on October 31, 2002, pursuant to Title VIII of the Civil Rights Act of 1968, 42

24   U.S.C. § 3601 et seq., 42 U.S.C. §§1981-82, RCW 49.60 (collectively "fair housing laws"), and

25   filed an Amended Complaint on February 17, 2004 alleging Washington common law

26   negligence claims and adding several plaintiffs.

CONSENT DECREE-    PAGE 1        ORIGINAL        EISENHOWER & CARLSON, PLLC
                                                  ATTORNEYS-AT-LAW
                                                  1200 TWO UNION SQUARE
                                                    601 UNION STREET
08514081.DOC                                     SEATTLE, WASHINGTON 98101

1       Plaintiffs allege that defendants, as owners and managers of a 120-unit apartment

2  complex located at 3615 - 112th Street SW, Lakewood, Washington  98499 ("the subject

3  property"), violated the fair housing laws:  (1) making discriminatory comments to applicants

4  and tenants based on race and familial status; (2) discouraging and refusing rental of apartments

5  based on race and familial status; (3) expressing and implying a limitation, preference, and

6  restriction for renting based on race and familial status; (4) harassing tenants based on race and

7  family status; (5) unequally applying rules, policies, and discipline based on race and familial

8  status; (6) enforcing facially discriminatory rules based on familial status; (7) impermissibly

9  collecting and using information about race and familial status to make rental and eviction

10  decisions; (8) steering applicants and tenants to certain units in the complex based on race and

11  familial status; (9) limiting access of children tenants to common areas; (10) subjecting children

12  tenants to unsafe and unsanitary playing conditions; (11) applying policies in a manner that

13  prevents non-custodial parents of children tenants from accessing common areas with their

14  children; (12) physically assaulting children tenants; (13) evicting tenants based on race and

15  familial status; (14) retaliating against tenants and employees for complaining of illegal

16  discrimination and refusing to engage in discriminatory conduct; and (15) ignoring complaints

17  that defendants' employees are engaged in discriminatory conduct.  Defendants have denied

18  these allegations.

19       In order to avoid protracted and costly litigation, the parties have agreed that this action

20  should be resolved without further litigation, subject to the entry of this consent decree.

21

22       Accordingly, without a trial or adjudication on the merits, it is hereby ORDERED,

23  ADJUDGED, and DECREED:

24

25  A. INJUNCTION

26

CONSENT DECREE-    PAGE 2

EISENHOWER & CARLSON, PLLC
ATTORNEYS-AT-LAW
1201 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101

00554081.DOC

1    Defendants, their employees, agents, successors, and assigns, and all those acting in

2    concert or participation with defendants are permanently enjoined from violating the fair housing

3    laws and any regulation barring discrimination on a prohibited basis in the sale or rental of

4    property.

5

6    B. NO ADMISSION OF LIABILITY

7    Nothing contained in this Consent Decree nor the facts of its negotiation or execution

8    shall be deemed to be, nor shall it be construed or said to be, an admission of CIC or the Grace

9    Li of discrimination against the plaintiffs or any other person because of such person's race,

10   color, ethnic origin, family status or any other characteristic in respect of which discrimination is

11   prohibited.

12

13   C. MONETARY RELIEF

14   Within ten days after the entry of this consent decree, defendants shall deliver to the

15   office of Plaintiff's counsel one or more checks totaling $925,000, each made payable to the

16   Trust Account of MacDonald Hoague & Bayless In Trust for Plaintiffs . Upon request by

17   defendants' counsel, MacDonald Hoague & Bayless will execute and deliver W-9's .

18

19   D. TRAINING AND CERTIFICATION

20   Within ten days from the entry of this consent decree, defendants shall provide a copy of

21   this consent decree to all persons currently involved in the sale or rental of property at the subject

22   property, and shall instruct each such person of his or her obligations under this consent decree.

23   In addition, within ten days after their involvement begins defendants shall provide a copy of this

24   consent decree and give the same instruction to all persons who subsequently become involved

25   in the sale or rental of property at the subject property during the duration of this consent decree.

26   Nothing in this paragraph requires defendants to provide a copy of this consent decree to persons

CONSENT DECREE-     PAGE 3

08554081.DOC

1   who are solely tenants, with the exception of Marge Cole who shall agree in writing to abide by

2   the terms of this consent decree as a condition of living at any property owned by defendants.

3       Del and Janice Brown are currently managing all rental properties at the subject property.

4   Within sixty days from the entry of this consent decree, Del and Janice Brown and all other

5   persons currently involved in the sale or rental of property at the subject property, shall attend a

6   training session taught by the Fair Housing Center of South Puget Sound regarding the

7   requirements of the fair housing laws and regulations, and this consent decree.  In addition, each

8   person who subsequently becomes involved in the sale or rental of property at the subject

9   property during the duration of this consent decree, shall attend the same training, within sixty

10  days after their involvement begins. The cost of this training, $300 for a 2-hour training of 10

11  people, $5 per additional person, plus mileage shall be paid by defendants.

12      Marge Cole shall have no involvement whatsoever in the sale or rental of property

13  owned, operated, or managed by defendants for the duration of this consent decree.

14  Additionally, within 30 days after the ;entry of the consent decree, defendants will post a notice

15  to all tenants in the facility that management policy prohibits discrimination on the basis of race,

16  sex, ethnic origin or family status and warns tenants that violation of that policy can be grounds

17  for eviction.  Defendants will send a copy of such notice to Marge Cole, certified mail, return

18  receipt requested.

19

20  E. ADVERTISING AND OUTREACH

21      Defendants shall apprise the public that vacant or available units at the subject property

22  are available without discrimination on any prohibited basis. This shall be accomplished by:

23      (a) Conducting all advertising for the sale or rental of such units in accordance with the

24  provisions of the regulations promulgated by the Department of Housing and Urban

25  Development at 24 C.F.R. Part 109. The fair housing logo and slogan shall appear in all

26  advertising for the subject property, and on all brochures, handouts, stationery, forms, and other

CONSENT DECREE-      PAGE 4

EISENHOWER & CARLSON, PLLC
ATTORNEYS-AT-LAW
1201 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101

00534081.DOC

1   writings that are routinely used to communicate with tenants, prospective tenants, or applicants

2   concerning any aspect of the sale or rental of units, or are routinely provided by defendants to the

3   public. Such logo and slogan shall be prominently placed and legible;

4       (b) Including in any broadcast advertising a statement that defendants adhere to the

5   principle of equal housing opportunity and do not discriminate in the sale or rental of units; and.

6       (c) Posting in a conspicuous location on the grounds of the subject property a sign no

7   smaller than 11 inches by 14 inches, which indicates that all units are available for rental or

8   purchase on a nondiscriminatory basis (a poster which comports with HUD regulations set forth

9   in 24 C.F.R. Part 110 will satisfy this requirement). A sample reduced-size poster is attached

10  hereto as Exhibit A.

11

12  F. RECORD KEEPING

13      Beginning ten days after entry of this consent decree, and continuing throughout the

14  duration of this consent decree, defendants shall create and maintain the following records:

15      A Prospect Log containing a completed Prospect Equal Service Report for each and

16  every person who inquires about purchasing or renting property at the subject property. Attached

17  hereto as Exhibit B is a blank Prospect Equal Service Report.

18      An Eviction Log containing the name of each tenant that defendants have issued a

19  twenty-day "no cause" eviction notice to and the name of each tenant that defendants have filed

20  an eviction action against and the reasons for each notice and eviction action.  Attached hereto as

21  Exhibit C is a blank eviction log.

22      Representative samples (i.e., copy of newspaper ad, photograph of sign) of all advertising

23  used to promote the sale or rental of units in the subject property, including the date and medium

24  of the communication in which such advertising was published or broadcast.

25

26

CONSENT DECREE-      PAGE 5

EISENHOWER & CARLSON, PLLC

ATTORNEYS-AT-LAW
2230 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101

0R534081.DOC

1    Defendants are not required under this consent decree to utilize a waiting-list procedure

2  for applicants seeking units. However, if a waiting list is utilized at any time, full and complete

3  records of all such lists and any use made of them shall be maintained.

4    All other records or documents pertaining to the sale or rental of units including, but not

5  limited to, all submitted application forms (whether accepted or rejected), waiting lists,

6  correspondence, results of credit or other reference checks, or notes.

7

8  G. INSPECTION OF RECORDS

9    Upon reasonable notice to defendants, Plaintiffs' counsel and the Fair Housing Center of

10 South Puget Sound shall have the right to inspect and have defendants copy, at defendants'

11 expense, any of the records described in Section E of this consent decree, or any other documents

12 relevant to defendants' compliance with this consent decree. The plaintiffs' counsel and the Fair

13 Housing Center of South Puget Sound shall attempt to minimize any inconvenience to

14 defendants during the inspection and copying of such records.

15

16 H.  REPORTING REQUIREMENTS

17

18    Every six months (commencing with the period beginning on the first day of the first full

19 month after the date of entry of this consent decree), defendants shall, no later than ten days after

20 the close of each period, provide to the Fair Housing Center of South Puget Sound a copy of the

21 Prospect Log and Eviction Log that has been maintained during that period, representative

22 samples of all advertising during that period, and any waiting lists used during that period.

23 Defendants shall pay the cost of the Fair Housing Center's review of those records, not to exceed

24 $220 (no more than four hours at an hourly rate of $55.00) per six-month reporting period.

25

26 I.  TESTING

CONSENT DECREE-    PAGE 6

EISENHOWER & CARLSON, PLLC
ATTORNEYS-AT-LAW
1220 TWO UNION SQUARE
401 UNION STREET
SEATTLE, WASHINGTON 98101

00534081.DOC;

1      To ensure compliance with the fair housing laws and regulations, the Fair Housing Center

2 of South Puget Sound is authorized to conduct, at defendants' expense (not to exceed $500 plus

3 mileage per test), four fair housing tests per year during the period of this consent decree.

4

5 **J. NEW POLICIES**

6      Defendants shall adopt and enforce written policies that: (1) explicitly prohibits tenants

7 and employees from illegal discrimination and harassment based on race and family status; (2)

8 establishes a formal procedure for reporting and promptly investigating allegations of such

9 conduct; (3) promises prompt and effective corrective action to remedy and prevent any such

10 conduct including disciplinary action against any offending tenant or employee; (4) prohibits

11 retaliation against any person complaining of discrimination or retaliation or supporting the

12 complaint of any tenant or employee; (5) prohibits employees and tenants from walking their

13 pets in any area that is designated a "children's play area"; (6) take reasonable measures to

14 maintain the playground equipment and sand box in a safe and sanitary condition; (7) states

15 specific criteria for renting, issuing no cause evictions, and filing eviction actions in Court and

16 requires that Grace Li personally decide the issuance of no cause evictions and filing eviction

17 actions.  Within sixty days, defendants shall issue a copy of these written policies to all tenants

18 and employees and post a copy in the office of the subject property.

19      Defendants shall modify their existing policies and practices so they: (1) do not collect

20 the race and ages of applicants and current tenants except as part of any reporting requirement of

21 this consent decree; (2) remove any restrictions of activities or presence of a tenant based on age

22 other than those restrictions permitted by law; (3) do not charge families any fee for having a

23 child move into their unit, whether through birth, adoption, or other means, so long as the

24 addition of such child or children does not violate any law, regulation or ordinance limiting the

25 number of persons who may occupy a particular unit.

26

CONSENT DECREE-    PAGE 7

EISENHOWER & CARLSON, PLLC
ATTORNEYS-AT-LAW
2220 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101

BR534081.DOC

K. RELEASES

In consideration for the mutual promises, covenants, and agreements contained in this consent decree, the Plaintiffs shall execute releases substantially equivalent to the releases attached hereto as Exhibit D and tender these releases to defendants upon receipt of the payments set forth in Section C of this consent decree.

In consideration for the mutual promises, covenants, and agreements contained in this consent decree, defendants shall execute releases substantially equivalent to those set forth in Exhibit E to this consent decree and tender these releases to counsel for Plaintiffs at the same time as, and together with, the payments set forth in Section C of this consent decree.

L. DURATION

Sections C, D, E, F, G, H, and I of this consent decree shall remain in effect for 60 months from the date of entry of this consent decree. These same sections shall terminate, and be dismissed with prejudice, after the expiration of this period.

M. DISMISSAL, RETENTION OF JURISDICTION, RESOLUTION OF DISPUTES

This action shall be dismissed without prejudice to the rights of any party to bring this matter before the court for enforcement of this consent decree. The court shall retain jurisdiction over the parties and this case for purposes of enforcing this consent decree, and for entering such orders as may be necessary and appropriate, including awards of future attorneys' fees and costs.

The parties to this consent decree shall endeavor to resolve informally any differences that arise regarding interpretation of and compliance with this consent decree prior to bringing such matters to the court for resolution. Accordingly, prior to seeking enforcement through the Court, plaintiffs will submit to the Fair Housing Center any issue concerning the interpretation or compliance with this consent decree. If the Fair Housing Center believes that the facts alleged by plaintiffs may indicate noncompliance with this consent decree, the Fair Housing Center will

CONSENT DECREE-   PAGE 8

EISENHOWER & CARLSON, PLLC
ATTORNEYS-AT-LAW
1200 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101

08534081 DOC

1  contact defendants regarding plaintiffs concerns in an effort to determine whether the facts as

2  alleged are true and if so, whether such facts constitute a failure to comply with the terms of this

3  Consent Decree.  Upon receipt of such contact, defendants will investigate the allegation and

4  respond promptly to the Fair Housing Center.  If defendants decide to take remedial action to

5  address the plaintiffs' concerns, defendants will inform the Fair Housing Center of such actions

6  (along with a list of the remedies and a specific timetable for implementing them).  Alternatively,

7  defendants may dispute the alleged deficiencies by providing substantial evidence that they are

8  inaccurate.  Defendants and officials from the Fair Housing Center will meet to discuss the

9  allegations as well as possible resolutions of the issues raised by plaintiffs.  Fair Housing Center

10  has agreed to perform the services described in this paragraph for an annual fee of $2,000 per

11  year.  Defendants shall pay this sum on or before January 15 of each year in advance for that

12  calendar year.

13       Plaintiffs may not seek enforcement in court unless and until the Fair Housing Center

14  declares that the parties have met, failed to arrive at a satisfactory solution by negotiation and are

15  at an impasse.  In any such enforcement action, the court, in its discretion, may allow the

16  prevailing party, as that term is interpreted under 42 USC § 1988, a reasonable attorney's fee as

17  part of its costs.

18  AGREED TO BY:

19

20                                                      Date: Dec. 17        , 2004
    Counsel for Plaintiffs

21  Jesse Wing, WSBA # 27751
    MacDONALD HOAGUE & BAYLESS

22  705 - 2nd Avenue, Suite 1500
    Seattle, WA 98104

23

24

25                                                      Date: Dec. 7        , 2004
    Counsel for Defendants

26  Ronald Trompeter, WSBA # 3593
    EISENHOWER & CARLSON PLLC

    CONSENT DECREE-      PAGE 9

    08534081.DOC

601 Union Street, Suite 2830
Seattle, WA   98101

_____                    Date: _12-6_____, 2004
Grace Li

CIC Corporation

By _____                 Date: _12-6_____, 2004
   Its _PRESIDENT_

Fair Housing Center of South Puget Sound

By: _____                Date: _12|20_____, 2004
   Its 'Executive Director'

IT IS SO ORDERED.
   Dated: ~~December~~ _FEBRUARY_ _2_, ~~2004~~ _2005_


                        FRANKLIN D. BURGESS
                        United States District Judge

EISENHOWER & CARLSON, PLLC
ATTORNEYS-AT-LAW
2840 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101

EXHIBIT A

11/12/2004   16:14   LEADERSHIP COUNCIL → 12063433961     NO.545   P05
            LEADERSHIP COUNCIL → 3532867              NO.966   P02

U.S. Department of Housing and Urban Development





**EQUAL HOUSING
OPPORTUNITY**

## We Do Business In Accordance With the Federal Fair Housing Law

(The Fair Housing Amendments Act of 1988)

**It is Illegal to Discriminate Against Any Person Because of Race, Color, Religion, Sex, Handicap, Familial Status, or National Origin**

- ▣ In the sale or rental of housing or residential lots
- ▣ In the provision of real estate brokerage services
- ▣ In advertising the sale or rental of housing
- ▣ In the appraisal of housing
- ▣ In the financing of housing
- ▣ Blockbusting is also illegal

Anyone who feels he or she has been discriminated against may file a complaint of housing discrimination:
1-800-669-9777 (Toll free)
1-800-927-9275 (TDD)

U.S. Department of Housing and Urban Development
Assistant Secretary for Fair Housing and Equal Opportunity
Washington, D.C. 20410

EXHIBIT B

NOV. 19. 2004  6:13PM    NAT ASSN REALTORS━ ━ ━ ━ ━ ━ ━ ━ ━ ━ OF REALTORS®    NO. 643    P. 1

## Equal Service Report
### Rentals

| Date: | Agent: | | Office: |
|---|---|---|---|

### PROSPECT INFORMATION

| Name: | | Name: | |
|---|---|---|---|
| Address: | | Address: | |
| Home phone: | work phone: | Home phone: | work phone: |
| Race: * | Number of children: * | Race: * | Number of children: * |

* For Affirmative Marketing purposes. Information on prospect race is sought to assist in the monitoring of the firm's commitment to equal professional service. Article 10 of the NATIONAL ASSOCIATION OF REALTORS® Code of Ethics states: REALTORS® shall not deny equal professional services to any person for reasons of race, color, religion, sex, familial status, handicap, or national origin... REALTORS® shall not be parties to any plan or agreement to discriminate against a person or persons on the basis of race, color, religion, sex, familial status, handicap, or national origin.

| Prospect came to us as a result of | Prospect is ___ current tenant ___ previous tenant | ___ Ad (source) | ___ For rent sign | ___ Referral (source) | ___ Other |
|---|---|---|---|---|---|
| Prospect preferences | possession date | rent range | size and type of unit: # bedrooms other features: | | |

| Does prospect desire information regarding Housing for Older Persons? If so, is any member of prospect's household over 55? |
|---|
| Prospect requested location: |

### SERVICE PROVIDED - PROPERTY SHOWN

| Did the prospect initially request information on or ask to view any specific property(ies)? | | | | | |
|---|---|---|---|---|---|
| If yes, list address for each request, include street address, unit #, and community. | Rent | Deposit | Was unit shown? | If shown, prospect's comments and preferences. If not, why not. | Application offered? |
| | | | | | |
| | | | | | |

| Did you offer to put the prospect on a waiting list for any property requested? |
|---|
| If so, indicate which properties |

| Were other properties offered to the prospect? | | | | | |
|---|---|---|---|---|---|
| List properties offered or shown. Include community, address, & unit #. | Rent | Deposit | Was unit shown? | If shown, Prospect's comments and preferences. If not, why not. | Application offered? |
| | | | | | |
| | | | | | |

| Were qualifying questions asked prior to application? If yes, indicate information obtained | ___ Income | ___ Employment | ___ Current Rent | ___ Other |
|---|---|---|---|---|
| Was an application offered to the prospect? | Did the prospect complete and return the application? Keep application on file for reference | | | |

| Application and credit check fees quoted to prospect |
|---|
| Disposition, contact dates and comments: |

Use the back of this page to list additional information, including other properties shown.

Instructions for using the

## NATIONAL ASSOCIATION OF REALTORS®
### Prospect Equal Service Report
#### Rentals

The NATIONAL ASSOCIATION OF REALTORS® is committed to the provision of equal housing opportunities. The Prospect Equal Service Report is designed to incorporate basic prospect information, needs and wants, properties shown, and a record of service provided. This report will help you keep uniform records for all prospects. The form is not a checklist of service you provide will be determined by your firm and should be consistent. The report will document your consistence, and will provide two fair housing tools.

First, it provides you with evidence of your firm's compliance with the law, which may become an invaluable defense in the event you become involved in a housing discrimination complaint.

Second, it allows you and your agents to monitor and review compliance with your fair housing policy and make corrections before you get involved in a discrimination complaint.

How to use the Prospect Equal Service Report — Complete or update the report during or following each contact with the prospect. Please note the following.

PROSPECT INFORMATION — Space is provided for two adults in a household.

Recording Race — Recording the race or national origin of a prospect is invaluable in your use of these records to document equal professional service, and to monitor your firm's compliance with the law and your equal opportunity policy.

Housing for Older Persons — If there is a request for housing for older persons, record whether a member of the household is over age 55.

SERVICE PROVIDED — PROPERTY SHOWN — Use space provided to indicate prospect's comments, clarifying needs and wants.

Application — Record if and when you gave the prospect an application and indicate for which unit. Record if and when the prospect returned the application. Keep the application on file with this report.

Application requirements — Record what requirements for application were told to the prospect. Indicate any dollar amounts for application fee, credit check fee, and deposit. Indicate whether the fees were refundable or not.

DISPOSITION — Indicate whether the prospect rented a unit or that no further service was provided. List additional materials such as community profiles or brochures you provided the prospect.

Attach a copy of the application and any additional notes or pages to this report.

EXHIBIT C

## Eviction Log (20-day Notices and Eviction filings)

| Tenant Name | Race | Action | # of Children | Reason | Date of Action | Staff Name |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

# EXHIBIT D

## GENERAL RELEASE OF ALL CLAIMS

### RECITALS

The undersigned plaintiff _____ (hereafter referred to as "Plaintiff") is one of eighteen plaintiffs in that certain case captioned *Hubley, et al. v. CIC Corporation, et al.*, United States District Court for the Western District of Washington at Tacoma, Cause No. CV 02 5566 (hereafter referred to as the "Action"). The parties to the case have now negotiated a settlement of their differences and wish to consummate that settlement by entering into this general release, on the terms and conditions set forth below. Because plaintiff is a minor, the Honorable Franklin D. Burgess appointed _____ to serve as Independent Guardian Ad Litem to represent the interests of Plaintiff. The Independent Guardian Ad Litem has submitted to the Court a report concerning the proposed settlement of plaintiff's claim and the Court has approved the settlement and has authorized the Independent Guardian Ad Litem to execute a release on behalf of Plaintiff.

### RELEASE

1.   No Admission of Liability.

It is understood and agreed that this settlement is the compromise of disputed claims and that the payment provided for in paragraph 3 is not intended to be nor is it to be construed as an admission of liability on the part of CIC Corporation, Grace Li or of their employees, shareholders, attorneys, agents, insurers and assigns, by whom liability is expressly denied. CIC Corporation and Grace Li have agreed to settle this matter solely to avoid the cost and uncertainty of litigation.

2.   Release, Discharge and Hold Harmless.

In consideration of the payment called for herein and by executing this Release, the Plaintiff intends to and hereby does completely release, discharge and forever acquit CIC Corporation, Westport Insurance Corporation, Mutual of Enumclaw Insurance Company and all employees, attorneys, agents, and representatives of each of them (collectively referred to as the "Released Parties"), of and from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, loss of service claims, expenses or compensation of any nature whatsoever, whether based in tort or contract or other theory of recovery, and whether for compensatory or punitive damages, which Plaintiff now has or claims to have as of the date of this Release. This Release includes, but is not limited to, all claims relating to or in any way arising from Plaintiff's application for an apartment at Northgate Village Apartments, treatment while a resident at Northgate Village Apartments, eviction from Northgate Village Apartments, or employment by CIC Corporation. This release specifically includes, but is not limited to, all claims the undersigned plaintiff may have or claim to have against Released Parties arising under the Fair Housing Act of 1968, 42 USC §§ 3610 *et seq.* and the Civil Rights Act of 1866, 42 USC §§ 1981 and 1982, as well as all state law claims under the Washington Law Against Discrimination, RCW 49.60 and a common law claim for negligent supervision. This release on the part of the Plaintiff shall be a full, binding and complete settlement between the Plaintiff and Released Parties, and their executors, administrators, personal representatives, heirs, assigns and successors.

3.   Payment.

- 1 -

08533741.doc

Initials: _____

This Release is executed by the Plaintiff for and in consideration of the payment of the sum of Nine Hundred Twenty-Five Thousand ($925,000) to The Trust Account of MacDonald Hoague & Bayless, counsel to Plaintiff and seventeen other plaintiffs in the Action. The delivery of those funds is expressly conditioned upon the execution of this release by Plaintiff and all seventeen other plaintiffs in the Action.

4.      Attorneys' Fees and Costs.

The payment referenced in paragraph 3 above expressly includes any and all claims that Plaintiff may have for an award of attorneys' fees and costs in the Action. All claims for attorneys' fees and costs incurred by Plaintiff and Plaintiff's counsel through the date of this release are expressly included in the claims being released under paragraph 2 above. Except for a claim for fees for alleged breach of the Consent Decree in the future, Plaintiff will make no future claim against Released Parties for such an award.

5.      Acknowledgment of General Release and Warranty of Capacity to Execute Release.

Plaintiff hereby acknowledges and agrees that the release set forth in Paragraph 2 hereof is a general release by which he or she releases all claims he or she may have against the Released Parties, whether known or unknown, fixed or contingent, liquidated or unliquidated. Plaintiff further expressly waives and assumes the risk of any and all claims for damages which exist as of this date, but of which Plaintiff is unaware, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known would materially affect Plaintiff's decision to enter into this Release. Plaintiff further agrees that he or she has accepted payment of a portion of the settlement amount as a complete compromise of matters involving disputed issues of law and fact and he or she assumes the risk that the facts or law may be otherwise than he or she believes.

6.      Warranty of Ownership Of Claims.

Plaintiff represents and warrants that no other person or entity has or has had any interest in any claims, demands, obligations, or causes of action referred to in this Release and that Plaintiff has the sole right and exclusive authority to execute this Release and receive the sum specified in it and that he or she has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations, or causes of action referred to in this Release.

7.      Agreement Not to File Further Complaints.

The undersigned plaintiff expressly agrees that this is a full and final settlement of all disputes between the parties and thus agrees that he or she will not file any additional or further complaint with any federal, state or local agency alleging that any Released Party has engaged or is engaging in any discriminatory conduct at Northgate Village Apartments. This paragraph does not prohibit Plaintiff from making a claim in the future that any of the Released Parties may have breached the terms of the Consent Decree being entered in this matter.

8.      Successors in Interest.

This Release shall be binding upon the executors, administrators, personal representatives, heirs, successors and assigns of Claimant.

9.      Captions and Headings.

The captions and headings throughout this Release are for convenience and reference only. The words contained in the captions and headings shall in no way be held or deemed to define, limit, describe,

- 2 -

Initials: _____

explain, modify, amplify or add to the interpretation, construction or meaning of any paragraph or the scope or the intent of this Release.

    10.    Governing Law and Choice of Forum.

This Release shall be construed and interpreted in accordance with the laws of the State of Washington. Any litigation arising out of or in connection with this Release shall be conducted in the Federal District Court for the Western District of Washington at Tacoma or in Pierce County Superior Court.

    11.    Warranty of Competency.

The undersigned warrants that he or she is over the age of eighteen years and is fully competent to execute and be bound by this Release.

I certify that I have read the this Release, consisting of three pages (including this one), and certify that I understand its terms. I further certify that I have consulted with attorneys from MacDonald Hoague & Bayless regarding the import and effect of signing this document.

_____
Signature of Independent Guardian Ad Litem

STATE OF WASHINGTON    )
                        ) ss.
County of _____    )

I certify that I know or have satisfactory evidence that _____ is the person who appeared before me and that he or she acknowledged that he or she signed this instrument and acknowledged it to be his or her free and voluntary act for the uses and purposes mentioned in the instrument.

    DATED this _____ day of November 2004.

_____
Signature of Notary Public

_____
Printed Name: _____
My Appointment Expires: _____

          (Seal)

- 3 -

Initials: _____

### GENERAL RELEASE OF ALL CLAIMS

#### RECITALS

The undersigned plaintiff _____ (hereafter referred to as "Plaintiff") is one of eighteen plaintiffs in that certain case captioned *Hubley, et al. v. CIC Corporation, et al.*, United States District Court for the Western District of Washington at Tacoma, Cause No. CV 02 5566 (hereafter referred to as the "Action"). The parties to the case have now negotiated a settlement of their differences and wish to consummate that settlement by entering into this general release, on the terms and conditions set forth below.

#### RELEASE

1.   No Admission of Liability.

It is understood and agreed that this settlement is the compromise of disputed claims and that the payment provided for in paragraph 3 is not intended to be nor is it to be construed as an admission of liability on the part of CIC Corporation, Grace Li or of their employees, shareholders, attorneys, agents, insurers and assigns, by whom liability is expressly denied. CIC Corporation and Grace Li have agreed to settle this matter solely to avoid the cost and uncertainty of litigation.

2.   Release, Discharge and Hold Harmless.

In consideration of the payment called for herein and by executing this Release, the Plaintiff intends to and hereby does completely release, discharge and forever acquit CIC Corporation, Westport Insurance Corporation, Mutual of Enumclaw Insurance Company and all employees, attorneys, agents, and representatives of each of them (collectively referred to as the "Released Parties"), of and from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, loss of service claims, expenses or compensation of any nature whatsoever, whether based in tort or contract or other theory of recovery, and whether for compensatory or punitive damages, which Plaintiff now has or claims to have as of the date of this Release. This Release includes, but is not limited to, all claims relating to or in any way arising from Plaintiff's application for an apartment at Northgate Village Apartments, treatment while a resident at Northgate Village Apartments, eviction from Northgate Village Apartments, or employment by CIC Corporation. This release specifically includes, but is not limited to, all claims the undersigned plaintiff may have or claim to have against Released Parties arising under the Fair Housing Act of 1968, 42 USC §§ 3610 *et seq.* and the Civil Rights Act of 1866, 42 USC §§ 1981 and 1982, as well as all state law claims under the Washington Law Against Discrimination, RCW 49.60 and a common law claim for negligent supervision. This release on the part of the Plaintiff shall be a full, binding and complete settlement between the Plaintiff and Released Parties, and their executors, administrators, personal representatives, heirs, assigns and successors.

3.   Payment.

This Release is executed by the Plaintiff for and in consideration of the payment of the sum of Nine Hundred Twenty-Five Thousand ($925,000) to The Trust Account of MacDonald Hoague & Bayless, counsel to Plaintiff and seventeen other plaintiffs in the Action. The delivery of those funds is expressly conditioned upon the execution of this release by Plaintiff and all seventeen other plaintiffs in the Action.

- 1 -

Initials: _____

4.    Attorneys' Fees and Costs.

The payment referenced in paragraph 3 above expressly includes any and all claims that Plaintiff may have for an award of attorneys' fees and costs in the Action. All claims for attorneys' fees and costs incurred by Plaintiff and Plaintiff's counsel through the date of this release are expressly included in the claims being released under paragraph 2 above. Except for a claim for fees for alleged breach of the Consent Decree in the future, Plaintiff will make no future claim against Released Parties for such an award.

5.    Acknowledgment of General Release and Warranty of Capacity to Execute Release.

Plaintiff hereby acknowledges and agrees that the release set forth in Paragraph 2 hereof is a general release by which he or she releases all claims he or she may have against the Released Parties, whether known or unknown, fixed or contingent, liquidated or unliquidated. Plaintiff further expressly waives and assumes the risk of any and all claims for damages which exist as of this date, but of which Plaintiff is unaware, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known would materially affect Plaintiff's decision to enter into this Release. Plaintiff further agrees that he or she has accepted payment of a portion of the settlement amount as a complete compromise of matters involving disputed issues of law and fact and he or she assumes the risk that the facts or law may be otherwise than he or she believes.

6.    Warranty of Ownership Of Claims

Plaintiff represents and warrants that no other person or entity has or has had any interest in any claims, demands, obligations, or causes of action referred to in this Release and that Plaintiff has the sole right and exclusive authority to execute this Release and receive the sum specified in it and that he or she has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations, or causes of action referred to in this Release.

7.    Agreement Not to File Further Complaints.

The undersigned plaintiff expressly agrees that this is a full and final settlement of all disputes between the parties and thus agrees that he or she will not file any additional or further complaint with any federal, state or local agency alleging that any Released Party has engaged or is engaging in any discriminatory conduct at Northgate Village Apartments. This paragraph does not prohibit Plaintiff from making a claim in the future that any of the Released Parties may have breached the terms of the Consent Decree being entered in this matter.

8.    Successors in Interest.

This Release shall be binding upon the executors, administrators, personal representatives, heirs, successors and assigns of Claimant.

9.    Captions and Headings.

The captions and headings throughout this Release are for convenience and reference only. The words contained in the captions and headings shall in no way be held or deemed to define, limit, describe, explain, modify, amplify or add to the interpretation, construction or meaning of any paragraph or the scope or the intent of this Release.

-2-

08533712.doc                                                Initials: _____

10.    Governing Law and Choice of Forum.

This Release shall be construed and interpreted in accordance with the laws of the State of Washington. Any litigation arising out of or in connection with this Release shall be conducted in the Federal District Court for the Western District of Washington at Tacoma or in Pierce County Superior Court.

11.    Warranty of Competency.

The undersigned warrants that he or she is over the age of eighteen years and is fully competent to execute and be bound by this Release.

I certify that I have read the this Release, consisting of three pages (including this one), and certify that I understand its terms. I further certify that I have consulted with attorneys from MacDonald Hoague & Bayless regarding the import and effect of signing this document.

_____
Signature

STATE OF WASHINGTON    )
                       ) ss.
County of _____     )

I certify that I know or have satisfactory evidence that _____ is the person who appeared before me and that he or she acknowledged that he or she signed this instrument and acknowledged it to be his or her free and voluntary act for the uses and purposes mentioned in the instrument.

DATED this _____ day of November 2004.

_____
Signature of Notary Public

Printed Name: _____
My Appointment Expires: _____

(Seal)

- 3 -

08533712.doc

Initials: _____

EXHIBIT E

## *GENERAL RELEASE OF ALL CLAIMS*

### RECITALS

The undersigned defendants CIC Corporation and Grace Li (hereafter referred to as "Defendants") are the defendants in that certain case captioned *Hubley, et al. v. CIC Corporation, et al.*, United States District Court for the Western District of Washington at Tacoma, Cause No. CV 02 5566 (hereafter referred to as the "Action"). The parties to the case have now negotiated a settlement of their differences and wish to consummate that settlement by entering into mutual releases of all claims they have against one another.

### RELEASE

1.   Release, Discharge and Hold Harmless.

In consideration of the settlement of plaintiffs' claims in the Action and the entry of a negotiated Consent Decree, Defendants intend to and hereby do completely release, discharge and forever acquit plaintiffs in the Action as well as the agents, attorneys and representatives of each of them (collectively referred to as the "Released Parties"), of and from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, loss of service claims, expenses or compensation of any nature whatsoever, whether based in tort or contract or other theory of recovery, and whether for compensatory or punitive damages, which Defendants now have or claim to have as of the date of this Release.

2.   Acknowledgment of General Release and Warranty of Capacity to Execute Release.

Defendants hereby acknowledge and agree that the release set forth in Paragraph 1 hereof is a general release by which it or she releases all claims they may have against the Released Parties, whether known or unknown, fixed or contingent, liquidated or unliquidated. Defendants further expressly waive and assume the risk of any and all claims for damages which exist as of this date, but of which Defendants are unaware, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known would materially affect Defendants' decision to enter into this Release.

3.   Successors in Interest.

This Release shall be binding upon the executors, administrators, personal representatives, heirs, successors and assigns of Defendants.

4.   Captions and Headings.

The captions and headings throughout this Release are for convenience and reference only. The words contained in the captions and headings shall in no way be held or deemed to define, limit, describe, explain, modify, amplify or add to the interpretation, construction or meaning of any paragraph or the scope or the intent of this Release.

- 1 -

08534084.doc                                                                                      Initials: _____

5.    Governing Law and Choice of Forum.

This Release shall be construed and interpreted in accordance with the laws of the State of Washington. Any litigation arising out of or in connection with this Release shall be conducted in the Federal District Court for the Western District of Washington at Tacoma or in Pierce County Superior Court.

I certify that I have read the this Release, consisting of three pages and certify that I understand its terms.

_____
Grace Li

STATE OF WASHINGTON          )
                             ) ss.
County of King               )

I certify that I know or have satisfactory evidence that Grace Li is the person who appeared before me and that he or she acknowledged that he or she signed this instrument and acknowledged it to be his or her free and voluntary act for the uses and purposes mentioned in the instrument.

DATED this _____ day of December 2004.

Signature of Notary Public

_____

Printed Name: _____
My Appointment Expires: _____

(Seal)

CIC CORPORATION

By: _____

08534084.doc                                                          Initials: _____

STATE OF WASHINGTON    )
                                  ) ss.
County of King                  )

       I certify that I know or have satisfactory evidence that _____ is the person who appeared before me, that she is the _____ of CIC Corporation and that he or she acknowledged that he or she signed this instrument and acknowledged it on behalf of CIC Corporation as the corporation's free and voluntary act for the uses and purposes mentioned in the instrument.

       DATED this _____ day of December 2004.

                                   Signature of Notary Public

                                   Printed Name: _____
                                   My Appointment Expires: _____

          (Seal)

08534084.doc                                                Initials: _____

**<u>EXHIBIT E</u>**

TO

DECLARATION OF JESSE WING



**MHB** MacDonald Hoague & Bayless
ATTORNEYS AND COUNSELORS AT LAW

705 Second Avenue
Suite 1500
Seattle, Washington
98104-1745

**English** 206.622.1604
**Español** 206.694.1685
**Fax** 206.343.3961

Alec Bayless (1921-1991)
Francis Hoague (1909-1993)
Kenneth A. MacDonald (1917-2012)

Miguel A. Bocanegra
Tiffany M. Cartwright
Katherine C. Chamberlain
Andrew T. Chan
Kirsten Eklund
Timothy K. Ford
Katrin E. Frank
Angela C. Galloway
Ester Greenfield
Leslie J. Hagin
Ralph Hua
Joe Shaeffer
David J. Whedbee
Jesse Wing
Lola S. Zakharova

August 3, 2016

George T. Hunter
Attorney at Law
5900 48th Avenue South
Seattle, WA 98118

Re:   FHCW v. Scheier (Granada)

Dear George:

FRE 408

[redacted]

At the outset, I encourage your client to reconsider his intention to keep his policy. Consistent with SOCR's findings that your client's occupancy restriction constitutes illegal discrimination through disparate impact, there is ample precedent establishing that even *less* restrictive occupancy restrictions than one person per bedroom violate the Fair Housing Act, and rejecting business justifications far more tenable than what he has asserted. Here are just a few of the opinions from district courts in this circuit and elsewhere from the past 25 years right up to last month:

- *Rhode Island Comm'n for Human Rights v. Graul*, 120 F. Supp. 3d 110 (D.R.I. 2015) (holding on summary judgment, policy requiring minimum of 170 square feet for a family of three had disparate impact on families with children in violation of FHA and Rhode Island law)

- *Gashi v. Grubb & Ellis Prop. Mgmt. Servs., Inc.*, 801 F. Supp. 2d 12, 16 (D. Conn. 2011) (holding on summary judgment, policy limiting occupancy to no more than two persons per bedroom had a disparate impact on families with children, in violation of the FHA)

George T. Hunter
August 3, 2016
Page 2

- *United States v. Tropic Seas, Inc.*, 887 F. Supp. 1347 (D. Haw. 1995) (holding on summary judgment, landlord's rule against occupancy of studio or one-bedroom apartment by more than two persons violated FHA)

- *Fair Hous. Council of Orange Cty., Inc. v. Ayres*, 855 F. Supp. 315, 318 (C.D. Cal. 1994) (granting summary judgment for Plaintiffs against landlord's enforcement of two-person per bedroom occupancy restriction, rejecting as insufficient Defendant's offered business justification "to prevent damage and destruction to the apartments from excessive wear and tear" "to keep the property in good repair and to reduce ongoing maintenance and eventual resale costs.")

- *United States v. Hover*, No. C 93-20061 JW, 1995 WL 55379, at *3 (N.D. Cal. Feb. 8, 1995) (after trial, verdict for plaintiff because: "The defendant's occupancy standard of 'one person per bedroom plus one' has a discriminatory effect on families with minor children. There are 153 two bedroom units at Casa Alondra and 30 three-bedroom units. Although on its face, defendant's policy appears to treat adults and children similarly, and children do reside at Casa Alondra, the restriction has a disparate impact on intact couples with two children and couples with more than two children. By refusing to allow occupancy by couples with one child in a one bedroom unit, prohibiting two children in two bedroom units, and absolutely refusing to rent to couples with more than two children, defendants exclude a large percentage of families with children from renting mobile homes at Casa Alondra.")

- *United States v. Badgett*, 976 F.2d 1176, 1178 (8th Cir. 1992) (reversing trial court and finding that landlord's limit on occupancy of one-bedroom apartments to one person violated the Fair Housing Act)

- *United States v. Lepore*, 816 F. Supp. 1011, 1023 (M.D. Pa. 1991) (entering verdict for plaintiffs after trial, holding that "the two person limitation violates the amended Fair Housing Act and that the Lepores' actions in enforcing that limitation violated the Meilers' rights, the court cannot say that the two person requirement is reasonable when defendants have never attempted any alternative," and rejecting inadequate septic system as defense)

- *Crossroads Residents Organized for Stable & Secure ResiDencieS v. MSP Crossroads Apartments LLC, & Soderberg Apartment Specialists*, No. CV 16-233 ADM/KMM, 2016 WL 3661146, at *9 (D. Minn. July 5, 2016) (denying motion to dismiss, holding "Because nearly all units at the complex have only one bedroom, Defendants' occupancy standard effectively prohibits more than two persons from living together in one unit. *Id.* A significant proportion of families

George T. Hunter
August 3, 2016
Page 3

with children, however, consist of three or more persons. Unsurprisingly, many cases finding that an occupancy standard had a disparate impact based on familial status involved a limit of 2 persons per unit.")

During our conversation, unless I misunderstood what you said, you were suggesting that the relevant statistical analysis would be of applicants to your client's property, rather than the local housing market. If that is indeed what you have in mind, that is inconsistent with all of the precedent cited above and well-established Ninth Circuit precedent. *See, e.g.*, *Budnick v. Town of Carefree*, 518 F.3d 1109, 1119 (9th Cir. 2008) (citing *Mountain Side Mobile Estates P'ship v. Sec. of Housing and Urban Dev.*, 56 F.3d 1243, 1253 (10th Cir. 1995) ("In this case, the appropriate comparables must focus on the local housing market and local family statistics."). *See also Betsy v. Turtle Creek Assn.*, 736 F.2d 963, 988 (4th Cir. 1984) (same).

The Fair Housing Center's mission is to advance fair housing rights, which includes ensuring that housing is made available to families with children, and not refused on an arbitrary basis. We believe that your client's current occupancy restriction is merely a preference without a sound, legitimate basis. FRE 408

We look forward to hearing from you.

Very truly yours,

MACDONALD HOAGUE & BAYLESS

Jesse Wing
Attorney

JW:ljf

## EXHIBIT F

TO

DECLARATION OF JESSE WING

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 49 of 103

Case 2:10-cv-01150-JLR   Document 20   Filed 03/08/11   Page 1 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 1 of 21

FILED —— ENTERED
LODGED —— RECEIVED

MAR - 8 2011

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON       DEPUTY

THE HONORABLE JAMES L. ROBART

**10-CV-01150-ORD**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | NO. 2:10-cv-01150-JLR |
| Plaintiff ) | |
| v. ) | CONSENT ORDER |
| SUMMERHILL PLACE, LLC, ) GRAN, INC., and RITA LOVEJOY, ) | |
| Defendants. ) | |

I.      **INTRODUCTION**

1.  Plaintiff, United States of America, initiated this action on July 16, 2010 pursuant to 42 U.S.C.

§§ 3612(o) and 3614(a) to enforce the Fair Housing Act, as amended 42 U.S.C. §§ 3601-3631.

The Complaint alleges that the Defendants Summerhill Place, LLC, GRAN, Inc. and Rita

Lovejoy engaged in discrimination on the basis of race, color, national origin and familial

status in the rental of dwellings at Summerhill Place Apartments located at 10415 SE 174th

PROPOSED CONSENT ORDER-1

United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W.- G Street
Washington, D.C., 20530
202-514-4713

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 50 of 103

Case 2:10-cv-01150-JLR   Document 20      Filed 03/08/11   Page 2 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 2 of 21

1    Street, Renton, Washington 98055 ("Summerhill"), in violation of the Fair Housing Act, as

2    amended, 42 U.S.C. §§ 3601 *et seq.*

3    2. Defendant Summerhill Place, LLC owns Summerhill.

4    3. Defendant GRAN, Inc. has overseen the management of Summerhill from 2002.

5    4. Rita Lovejoy was the resident manager of Summerhill from October 1997 until approximately

6    November 2008 when GRAN, Inc. terminated Ms. Lovejoy's management responsibilities.

7    5. Defendants deny the United States' allegations and specifically deny that they discriminated on

8    the basis of race, color, national origin, and familial status.  The Parties agree that this Consent

9    Order is a compromise of a disputed claim and should not be construed in any way as an

10    admission by Defendants of any liability whatsoever or as admission by Defendants of any

11    wrongdoing.

12    6. The parties agree that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1345 and 42

13    U.S.C. § 3614(a).

14    7. The Parties have agreed to the entry of this Consent Order to resolve all claims of the United

15    States against Defendants and to avoid costly and protracted litigation.

16    8. This Consent Order is effective upon its entry by the Court.  For purposes of this Consent

17    Order, the phrase "date of this Order" shall refer to the date on which the Court enters the

18    Order.

19    ACCORDINGLY, it is hereby ADJUDGED, ORDERED and DECREED:

20    **II.**    **GENERAL INJUNCTION**

21    9. Defendants, their agents, employees, and successors are hereby enjoined, with respect to the

22    rental of dwellings, from:

PROPOSED CONSENT ORDER-2

United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W.- G Street
Washington, D.C., 20530
202-514-4713

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 51 of 103

Case 2:10-cv-01150-JLR   Document 20   Filed 03/08/11   Page 3 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 3 of 21

a.  Refusing to rent a dwelling unit, refusing or failing to provide or offer information about a dwelling unit, or otherwise making unavailable or denying a dwelling unit to any person because of race, color, familial status, or national origin;

b.  Discriminating against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, familial status, or national origin;

c.  Making, printing, or publishing, or causing to be made, printed, or published any notice, statement or advertisement, with respect to the rental of a dwelling that states any preference, limitation, or discrimination based on race, color, familial status, or national origin; or

d.  Misrepresenting the availability of dwelling units based on race, color, familial status, or national origin.

## III.   INJUNCTIVE RELIEF WITH RESPECT TO RITA LOVEJOY

10. Defendants Summerhill Place, LLC and GRAN, Inc. are hereby enjoined from employing or otherwise retaining Defendant Rita Lovejoy in any position that involves managing, operating, renting, interacting with tenants or prospective tenants about, performing or supervising maintenance in connection with, or otherwise providing services relating to the rental of dwellings.

11. Defendant Lovejoy represents that she is not currently working in any way in connection with the rental of dwellings.  If, during the term of the Order, Ms. Lovejoy begins to work in any capacity in connection with the rental of dwelling, she shall: (a) provide the person(s) employing or retaining her in such activities with a copy of this Order; and (b) immediately

PROPOSED CONSENT ORDER-3

United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W.- G Street
Washington, D.C., 20530
202-514-4713

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 52 of 103

Case 2:10-cv-01150-JLR   Document 20   Filed 03/08/11   Page 4 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 4 of 21

1    notify the United States of the nature and location of her activities, including the name, and

2    address, and contact information for the place of business and the persons(s) retaining and

3    supervising her.

4  **IV.**    **ADOPTION AND IMPLEMENTATION OF UNIFORM NONDISCRIMINATORY**

5       **PROCEDURES**

6    12. Uniform and Nondiscriminatory Procedures:  Within thirty (30) days of the entry of this

7    Consent Order, Summerhill Place, LLC and GRAN, Inc. shall create and submit for approval to

8    the United States written Uniform and Nondiscriminatory Procedures for:

9      a.  Receiving, handling, processing, rejecting and approving rental inquiries and applications,

10        including those made in-person, by telephone, and by mail;

11      b.  Identifying what information will be provided to prospective tenants under Paragraph 14 of

12        this Order;

13      c.  Determination of which unit new tenants will occupy;

14      d.  Transferring existing tenants to different units;

15      e.  Receiving, processing, and performing maintenance requests made by tenants;

16      f.  Replacing appliances in dwelling units; and

17      g.  The use of the grassy area (hereinafter "green space") adjacent to buildings 4 and 5 by all

18        residents and their guests, including children.  The green space area is identified in the map

19        attached as Appendix A.

20    Within seven (7) business days of receipt of notice of the United States' approval of the

21    Uniform and Nondiscriminatory Procedures, Summerhill Place, LLC and GRAN, Inc. shall

22    implement such written Uniform and Nondiscriminatory Procedures at Summerhill.  During the

PROPOSED CONSENT ORDER-4

23

24

25

26

United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W.- G Street
Washington, D.C., 20530
202-514-4713

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 53 of 103

Case 2:10-cv-01150-JLR   Document 20     Filed 03/08/11   Page 5 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 5 of 21

1    term of this Order, if Summerhill Place, LLC and GRAN, Inc. wish to modify or alter the

2    Uniform and Nondiscriminatory Procedures, they shall submit the proposed changes to counsel

3    for the United States for review and approval, such approval shall not be unreasonably

4    withheld.

5    13. Guest Cards:  Within fifteen (15) days of the entry of this Order, Summerhill Place, LLC and

6    GRAN, Inc. shall maintain Guest Cards and request that all persons who visit Summerhill in-

7    person to inquire about renting an apartment at Summerhill fill out a Guest Card providing the

8    date of their visit, their name, their address, their daytime telephone numbers and other contact

9    information and the date by when they wish to move.  Summerhill Place, LLC and GRAN,

10   Inc., at their choosing, may also comply with this provision by asking the prospective tenant for

11   the information identified above and filling out the Guest Card on their behalf.  If a prospective

12   tenant refuses to fill out a Guest Card, does not fully fill out the Guest Card, or does not

13   provide sufficient information to fully fill out a Guest Card, Summerhill Place, LLC and

14   GRAN, Inc. will not be considered to be in violation of this section.  If a prospective tenant

15   refuses to fill out the Guest Card, Summerhill Place, LLC or GRAN, Inc. shall fill out as much

16   information as possible.  Summerhill Place, LLC and GRAN, Inc. shall note on the Guest Card,

17   the dwelling units the person was shown, whether the person was given an application and the

18   name of the employee who attended to the visitor.

19   14. Information Provided to Prospective Applicants:  Within fifteen (15) days of the entry of this

20   Order, Summerhill Place, LLC, and GRAN, Inc. shall maintain a computerized database of

21   ready, available, and showable dwelling units. From that database, Summerhill Place, LLC and

22   GRAN, Inc. shall maintain a list comprised of those available units which Summerhill Place,

PROPOSED CONSENT ORDER-5

United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W.- G Street
Washington, D.C., 20530
202-514-4713

23

24

25

26

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 54 of 103
Case 2:10-cv-01150-JLR   Document 20   Filed 03/08/11   Page 6 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 6 of 21

1    LLC and GRAN, Inc. are seeking to rent (the "Target list"), updated periodically.  The Target

2    list will be used to inform all persons who inquire about renting apartments at Summerhill of all

3    available apartments which Summerhill Place, LLC and GRAN, Inc. seek to rent of the type

4    they inquire about.  Summerhill Place, LLC and GRAN, Inc. may first show prospective

5    tenants the mini-model (if in use).  If no apartment on the Target list meets their specifications,

6    the database will be used to determine if another apartment is ready, available or showable that

7    meets their specifications.  Summerhill Place, LLC and GRAN, Inc. shall inform all such

8    person that they may fill out an application or, if no apartment of the particular size that they

9    are seeking is ready, available or showable, that they may be placed on a waiting list.

10   15. Wait Lists: Within fifteen (15) days of the entry of this Order, to the extent a particular size

11    apartment is not available, Summerhill Place, LLC and GRAN, Inc. shall maintain waiting lists

12    for each size unit at Summerhill Place Apartments that contains (to the extent the information is

13    provided by the prospective tenant) each prospective tenant's current address, daytime

14    telephone number and other contact information, email address, and the number of intended

15    occupants.  Summerhill Place, LLC and GRAN, Inc. shall also indicate, for each prospective

16    tenant, the time and date he or she was placed on the list and the name of the employee who

17    received the applicant's application.  Names on the waiting list will be removed after six

18    months, unless the prospective tenant advises that they want to continue to be maintained on

19    the waiting list.  When a unit of the type sought by a prospective tenant becomes available,

20    Summerhill Place, LLC and GRAN, Inc. shall attempt to notify persons on the waiting list by

21    phone and/or email of the availability of the unit prior to offering it to a person not on the list.

22    To the extent such attempts are not made simultaneously, the contacts shall be made in the

PROPOSED CONSENT ORDER-6

United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W.- G Street
Washington, D.C., 20530
202-514-4713

23

24

25

26

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 55 of 103

Case 2:10-cv-01150-JLR   Document 20   Filed 03/08/11   Page 7 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 7 of 21

1    order in which persons are listed on the wait list.  Any prospective tenants will have 24 hours

2    from the time of the attempted contact to fill out an application and provide a holding deposit

3    for the available unit or their name will be removed from the waiting list and the apartment will

4    be released to the next prospective tenant.

5    16. Rental Applications: Summerhill Place, LLC and GRAN, Inc. shall permit all persons who

6    inquire about renting a dwelling unit at Summerhill the opportunity to complete a written rental

7    application.  Summerhill Place, LLC and GRAN, Inc. shall note on each rental application

8    filled out by a prospective tenant for Summerhill, the month, day, year, and time that

9    Summerhill Place, LLC and GRAN, Inc. received the application.  To the extent Summerhill

10    Place, LLC and GRAN, Inc. rejects any application for housing, Summerhill Place, LLC and

11    GRAN, Inc. shall provide, either on the application or on an attachment to the application, a

12    written explanation why the applicant was determined ineligible for tenancy, including all

13    reasons therefore and any supporting documentation, and the name of the employee or entity

14    who made the decision.  Within three (3) days of the decision to reject an applicant,

15    Summerhill Place, LLC and GRAN, Inc. shall notify such applicant of the rejection and the

16    reason therefore in writing by mailing a copy of the written reason for the rejection to the

17    address provided by the prospective tenant.  Summerhill Place, LLC and GRAN, Inc. shall

18    offer an available dwelling unit to prospective tenants who are approved in the order the

19    completed application plus a holding deposit was received by Summerhill.

20    17. Use of Green Space: Within fifteen (15) days of the entry of this Order, Summerhill Place, LLC

21    and GRAN, Inc. shall make the green space located between Buildings 4 and 5 available for the

22    use of residents, including children, and their guests, and shall place one or more signs noting

PROPOSED CONSENT ORDER-7

United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W.- G Street
Washington, D.C., 20530
202-514-4713

23

24

25

26

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 56 of 103

Case 2:10-cv-01150-JLR   Document 20    Filed 03/08/11   Page 8 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 8 of 21

1    that this is a "recreational space." The green space area is identified in the map attached as

2    Appendix A.  To the extent that Summerhill Place, LLC and GRAN, Inc. discuss areas for play

3    by children with prospective tenants, whether in response to an inquiry from the prospective

4    tenant or at Summerhill Place, LLC and GRAN, Inc.'s initiative, Summerhill Place, LLC and

5    GRAN, Inc. shall inform such prospective tenants that the green space is available for all

6    residents, including children, to use in accordance with Summerhill policy.  Nothing in this

7    provision shall prohibit Summerhill Place, LLC and GRAN, Inc. from adopting reasonable

8    rules on the use of the green space by residents and their guests.  Any such rules shall be

9    included in the rules and procedures adopted pursuant to Paragraph 12.

10   **V.    TRAINING**

11   18. Within sixty (60) days of the entry of this Order, Rita Lovejoy and all agents or employees of

12       the Defendants who have any responsibility for showing, renting, or managing dwellings at

13       Summerhill, and each agent or employee who supervises such activities, shall attend and

14       complete a fair housing training program, approved by the United States, at Summerhill Place,

15       LLC's and GRAN, Inc.'s expense.  Persons required to be trained include any employees who

16       show apartments to prospective tenants even if that task is not part of their job description.  The

17       training shall be conducted by a qualified third party, unconnected to Defendants or their

18       employees or officers, agents, or counsel, approved by the United States, and Defendants shall

19       submit the name and contact information of the trainer to the United States for approval at least

20       at least thirty (30) days in advance of such training.  The training shall include the following:

21       a.  Informing each individual of his or her duties and obligations under this Order as well as

22           under the Fair Housing Act;

PROPOSED CONSENT ORDER-8                              United States Department of Justice
                                                          Civil Rights Division
23                                                 Housing and Civil Enforcement Section
                                                 950 Pennsylvania Ave., N.W.- G Street
24                                                      Washington, D.C., 20530
                                                          202-514-4713
25

26

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 57 of 103

Case 2:10-cv-01150-JLR   Document 20     Filed 03/08/11   Page 9 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 9 of 21

b.  Furnishing to each individual a copy of this Order and the Defendants' Uniform and

Nondiscriminatory Procedures identified in Paragraph 12;

c.  Explaining how the Defendants' policies and procedures are designed to ensure that racial

discrimination, national origin discrimination and familial status discrimination does not

influence the process of providing rental information to persons who make inquiries, the

process of making decisions on rental applications, the process of determining which unit

an applicant or transfer rents, and the process of performing maintenance requests or

apartment renovations;

d.  Conducting a question and answer session for purposes of reviewing items a through c

above and allowing all trainees to clarify their understanding of items a through c above;

and

e.  Securing a signed certification in the form of the statement attached hereto as <u>Appendix B</u>,

from each such individual indicating that he or she attended the training and has received,

read, and understood this Order and the Defendants' Uniform and Nondiscriminatory

Procedures identified in Paragraph 12.

19. During the period in which this Order is in effect, within sixty (60) days of commencing an

employment or agency relationship, all new agents or employees of the Defendants who have

responsibility for showing, renting, or managing dwellings at Summerhill Place Apartments,

including any employees who show apartment units even if that task is not part of their job

description  and all new agents or employees who supervise such activities, shall be given a

copy of the written Uniform and Nondiscriminatory Procedures and this Consent Order and

PROPOSED CONSENT ORDER-9

United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W.- G Street
Washington, D.C., 20530
202-514-4713

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 58 of 103

Case 2:10-cv-01150-JLR   Document 20   Filed 03/08/11   Page 10 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 10 of 21

1     shall be given training as described in Paragraph 18, and shall be required to sign the statement

2     appearing at <u>Appendix B</u>.

3   **VI.**     **NOTIFICATION TO TENANTS AND PUBLIC**

4     20. Summerhill Place, LLC and GRAN, Inc. shall:

5        a. Within seven business days of the receipt of the approval of the Notice of Uniform and

6          Nondiscriminatory Procedures identified in paragraph 12 provide each current tenant of

7          Summerhill, each new tenant of Summerhill (within five (5) business days of the

8          commencement of his or her tenancy), and each prospective applicant of Summerhill (at the

9          time of the completion of a Guest Card), with a written notice summarizing the Uniform

10          and Nondiscriminatory Procedures. This notice shall be submitted at the same time as the

11          proposed Uniform and Nondiscriminatory Procedures to the Justice Department for

12          approval before distribution;

13        b. Post and prominently display a full size HUD fair housing poster, HUD Form 928.1, in a

14          conspicuous location in or near the rental office or apartment or other location used as a

15          rental office at Summerhill and any other residential rental property owned or managed by

16          Defendants within thirty (30) days of the date of this Order;

17        c. Include the following written statement on all Defendants' Rental Applications, Leases, and

18          Uniform and Nondiscriminatory Procedures, for Summerhill:

19          We are an equal opportunity housing provider. We do not discriminate on the

20          basis of race, color, religion, sex, national origin, familial status, or disability.

21   **VII.**     **RECORD KEEPING, MONITORING, AND REPORTING**

22

    PROPOSED CONSENT ORDER-10

23                                               United States Department of Justice
                                                               Civil Rights Division
Housing and Civil Enforcement Section

24                                          950 Pennsylvania Ave., N.W.- G Street
Washington, D.C., 20530

25                                          202-514-4713

26

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 59 of 103

Case 2:10-cv-01150-JLR   Document 20    Filed 03/08/11   Page 11 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 11 of 21

21. The United States may take steps to monitor Defendants' compliance with the Fair Housing
Act and this Consent Order including, but not limited to, conducting fair housing tests at any
dwelling in which any Defendant, now or in the future, has a direct or indirect ownership,
management, or financial interest.

22. Throughout the duration of this Order, Summerhill Place, LLC and GRAN, Inc. shall preserve
and maintain all records for Summerhill which are the source of, contain, or relate to, any
information pertinent to their obligations under this Order, (which may be maintained jointly)
including, but not limited to, the following:

    a.  Guest Cards;

    b.  Wait Lists;

    c.  Rental Applications;

    d.  Leases;

    e.  a copy of the Uniform and Nondiscriminatory Procedures form;

    f.  Tenant rules and regulations;

    g.  Rental ledgers; and

    h.  Any traffic or screening log.

23. Within one hundred and twenty (120) days of the entry of this Order, Summerhill Place, LLC
and GRAN, Inc. shall submit the following records to counsel for the United States (which may
be a joint submission):

    a.  Copies of all written verifications of the training (*see* <u>Appendix B</u>) conducted pursuant to
        the requirements set forth above;

PROPOSED CONSENT ORDER-11

United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W.- G Street
Washington, D.C., 20530
202-514-4713

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 60 of 103

Case 2:10-cv-01150-JLR   Document 20   Filed 03/08/11   Page 12 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 12 of 21

1      b.  A photograph of the rental office or apartment used as rental office at Summerhill and any

2          other residential rental property owned or managed by Defendants, which verify that the

3          Fair Housing Poster is being displayed as required by the terms enumerated above;

4      c.  Representative copies of all of the documents required to be generated or modified by

5          Paragraph 20(a) and (c) ;

6      d.  Copies of any existing tenant rules and regulations for Summerhill; and

7      d.  Written verification that the Uniform and Nondiscriminatory Procedures has been

8          distributed as required by the terms enumerated above.

9  24. Within one hundred and twenty (120) days after the entry of this Order, on or before the first

10    and second anniversary of the entry of this Order, and within sixty (60) days of the three-year

11    anniversary of the entry of the Order, Summerhill Place, LLC and GRAN, Inc. shall deliver to

12    counsel for the United States a report (which may be a joint submission) containing the

13    following information (the first report shall cover the initial ninety (90) days and the

14    subsequent reports shall cover the period since the last report):

15      a.  To the extent that these documents have not been provided previously, copies of all written

16          verifications of the training (*see* Appendix B) conducted pursuant to the requirements

17          enumerated above;

18      b.  A report identifying by apartment number each new household moving into dwellings at

19          Summerhill during the reporting period and for each such household, the name, race,

20          national origin, familial status (including approximate ages of any minors) of the tenants,

21          based on good faith observation by the Summerhill Place, LLC and GRAN, Inc. and the

22

PROPOSED CONSENT ORDER-12

23

24

25

26

United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W.- G Street
Washington, D.C., 20530
202-514-4713

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 61 of 103

Case 2:10-cv-01150-JLR   Document 20   Filed 03/08/11   Page 13 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 13 of 21

1    date on which each dwelling was vacated by the previous tenant, and the date on which

2    each dwelling was occupied by a new tenant.

3    25. Summerhill Place, LLC and GRAN, Inc. shall also advise counsel for the United States, in

4    writing, within thirty (30) days of receipt of any complaint, whether written or oral, against the

5    Defendants or against any of Defendants' employees, agents or residential rental properties or

6    dwellings, regarding alleged discrimination based on race, color, national origin, or familial

7    status.  This notification shall include a copy of the complaint, the full details of the complaint,

8    any action taken by Summerhill Place, LLC or GRAN, Inc. in response to the complaint, the

9    complainant's name, the complainant's address, and the complainant's telephone number.

10    Upon request, all of the pertinent documents shall also be sent to the United States.

11    Summerhill Place, LLC and GRAN, Inc. shall also advise counsel for the United States, in

12    writing, within fifteen (15) days of the resolution of any complaint identified above (if a

13    resolution is reached).

14    26. During the term of this Order, representatives of the United States shall be permitted, upon ten

15    days written notice to Summerhill Place, LLC and GRAN, Inc., to inspect and copy at

16    reasonable times any and all records related to the rental of dwellings at Summerhill or related

17    to Summerhill Place, LLC's and GRAN, Inc.'s obligations under this Order.

18  **VIII.   MONETARY DAMAGES FOR AGGRIEVED PERSONS**

19    27. Within ten (10) business days of the entry of this Consent Order, Summerhill Place, LLC and

20    GRAN, Inc. shall deposit $85,000 in an interest bearing escrow account for the purpose of

21    compensating persons who are deemed by the United States to be aggrieved persons as set forth

22    below ("final aggrieved person").  This money shall be referred to as "the Settlement Fund."

PROPOSED CONSENT ORDER-13

United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W.- G Street
Washington, D.C., 20530
202-514-4713

23

24

25

26

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 62 of 103
Case 2:10-cv-01150-JLR   Document 20   Filed 03/08/11   Page 14 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 14 of 21

1    Any interest accruing to the fund shall become a part of the fund and be utilized as set forth

2    herein. All expenses related to the establishment of the account shall be borne by the

3    Summerhill Place, LLC and GRAN, Inc. In no event will Defendants be required to contribute

4    additional sums or funds to the Settlement Fund.

5    28. Within thirty (30) days of the entry of this Order, Summerhill Place, LLC and GRAN, Inc. shall

6    publish the Notice set forth at Appendix C as follows: (1) In the Seattle Times on three

7    occasions separated from one another by at least twenty-one (21) days, and at least two

8    publication dates on a Sunday and (2) In the RentonReporter.com on three occasions

9    separated from one another by at least twenty-one (21) days. The Notice shall be no smaller

10   than three columns by six inches. All of the costs associated with this notice, its publication,

11   and distribution shall be borne by Summerhill Place, LLC and GRAN, Inc. Summerhill Place,

12   LLC and GRAN, Inc. shall provide proof of publication to counsel for the United States within

13   ten (10) business days of publication in the form of an affidavit of publication from the

14   publisher.

15   29. Within fifteen (15) days of the entry of this Order, Summerhill Place, LLC and GRAN, Inc.

16   shall send a copy of the Notice to the organizations listed in Appendix D.

17   30. Within thirty (30) days of the entry of this Order, Summerhill Place, LLC and GRAN, Inc. shall

18   mail a copy of the Notice set forth in Appendix C to all of its current tenants residing in

19   Summerhill. Within thirty (30) days of the entry of this Order, Summerhill Place, LLC and

20   GRAN, Inc. shall mail a copy of the Notice set forth in Appendix C to the last known addresses

21   for tenants of Summerhill from 2002 to the date of the entry of this Order. Within forty-five

22

PROPOSED CONSENT ORDER-14

23                                                      United States Department of Justice
                                                        Civil Rights Division
                                                        Housing and Civil Enforcement Section
24                                                      950 Pennsylvania Ave., N.W.- G Street
                                                        Washington, D.C., 20530
25                                                      202-514-4713

26

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 63 of 103

Case 2:10-cv-01150-JLR   Document 20     Filed 03/08/11   Page 15 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 15 of 21

1     (45) days of entry of this Order, Defendants shall provide to counsel for the United States proof

2     that the Notice has been sent in the form of an Affidavit of Mailing.

3     31. Within twenty (20) days of the date of entry of this Consent Order, Summerhill Place, LLC and

4     GRAN, Inc. shall make available to the United States for inspection and copying all rental

5     records for Summerhill from 2002 to the date of entry of this Order for the United States' use in

6     identifying potential aggrieved persons.  Such records shall include but not be limited to: rental

7     applications, guest cards, current and former tenant lists, current and former tenant files, tenant

8     complaints, and maintenance records and logs.

9     32. Nothing in this Order shall preclude the United States from making its own efforts to locate and

10     provide notice to potential aggrieved persons (such as conducting door-to-door interviews of

11     current tenants).

12     33. Within one hundred and eighty (180) days from the entry of this Order, the United States shall

13     make a preliminary determination of which persons are aggrieved and an appropriate amount of

14     damages that should be paid to each such person.  The United States will inform the

15     Defendants in writing of its preliminary determinations, together with a copy of a sworn

16     declaration from each allegedly aggrieved person setting forth the factual basis of the claim.

17     The Defendants shall have fourteen (14) days to review the declaration and provide to the

18     United States any documents or information that they believe may refute the claim.

19     34. After receiving the Defendants' comments, the United States shall submit its final

20     recommendations, together with a copy of the declarations and any additional information

21     submitted by Defendants, to the Court.  However, if the Defendants agree with the United

22     States' recommendations, the recommendation shall be submitted to the Court in the form of a

PROPOSED CONSENT ORDER-15

United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W.- G Street
Washington, D.C., 20530
202-514-4713

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 64 of 103

Case 2:10-cv-01150-JLR   Document 20   Filed 03/08/11   Page 16 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 16 of 21

1    Stipulated Order.  When the Court issues an order approving or changing the United States'

2    proposed distribution of funds for allegedly aggrieved persons, the Defendants shall, within ten

3    (10) days of the Court's order, deliver to the United States checks payable to the aggrieved

4    persons in the amounts approved by the Court.  In no event shall the aggregate of all such

5    checks exceed the amount of the Settlement Fund, including any accrued interest.

6    35. When counsel for the United States has received a check from Defendants payable to an

7        aggrieved person and a signed release in the form of Appendix E from the aggrieved person,

8        counsel for the United States shall deliver the check to the aggrieved person and the original,

9        signed release to Defendant.  No aggrieved person shall be paid until he/she has signed and

10       delivered to counsel for the United States the release at Appendix E.

11   36. In the event that less than the total amount in the Settlement Fund including accrued interest is

12       distributed to persons deemed to be aggrieved by the United States, the Court shall order the

13       remainder of the Settlement Fund be distributed to a qualified organization(s) mutually agreed

14       upon by the United States and Summerhill Place, LLC and GRAN, Inc., subject to the approval

15       of the Court, for the purpose of conducting fair housing enforcement or educational activities in

         the metropolitan Seattle area.

16   37. Summerhill Place, LLC and GRAN, Inc. shall permit the United States, upon seven (7)

17       business days written notice, to review any relevant records that may facilitate its

18       determinations regarding the claims of alleged aggrieved persons.

19   IX.    CIVIL PENALTY

20   38. Summerhill Place, LLC and GRAN, Inc. shall pay a total sum of $25,000 to the United States

21       as a civil penalty pursuant to 42 U.S.C. § 3614(d)(1)(C).  Said sum shall be paid within ten (10)

22
     PROPOSED CONSENT ORDER-16
23
24
25
26

United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W.- G Street
Washington, D.C., 20530
202-514-4713

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 65 of 103

Case 2:10-cv-01150-JLR   Document 20   Filed 03/08/11   Page 17 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 17 of 21

1    days of the date of entry of this Order by submitting a check to counsel for the United States

2    made payable to the United States of America.

3  **X.    TRANSFER OF INTEREST**

4    39. If, during the term of this Order, the Defendant Summerhill Place, LLC maintains that its

5    reporting obligations under this Order relating to Summerhill have terminated or changed

6    because they have sold or transferred any portion of Summerhill to a bona-fide third party

7    purchaser in an arms length transaction, Defendant Summerhill Place, LLC shall inform the

8    United States and provide the date of the sale or transfer, copies of the sale or transfer

9    documents, and the name(s) and contact information for the subsequent purchaser.  Any such

10   sale or transfer shall not affect Defendant GRAN, Inc.'s obligation so long as it is still

11   providing management services for Summerhill.

12   40. If during the term of this order, GRAN, Inc. asserts that its reporting obligations under this

13   order have ceased or changed because they no longer provide management services to

14   Summerhill Place, LLC or for Summerhill, GRAN, Inc. shall inform the United States and

15   provide a copy of any documents ending such management services.

16  **XI.    NOTICES**

17   41. Any Notices, documents or written materials that are required to be provided to the United

18   States of counsel for the United States shall be sent by commercial (non-USPS) overnight

19   delivery service address as follows:  United States Department of Justice, Civil Rights

20   Division, Housing and Civil Enforcement Section, 1800 G Street, N.W. Suite 7002,

21   Washington, D.C. 20006, Attn: D.J. # 175-82-145 and by email as follows:

22   julie.allen@usdoj.gov; beth.frank@usdoj.gov.  Any Notices, documents, or written materials

PROPOSED CONSENT ORDER-17

23

24

25

26

United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W.- G Street
Washington, D.C., 20530
202-514-4713

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 66 of 103

Case 2:10-cv-01150-JLR   Document 20   Filed 03/08/11   Page 18 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 18 of 21

1    that are required to be provided to counsel for Defendants shall be sent by email to the

2    following email addresses: pam.salgado@bullivant.com; Genevieve.schmidt@bullivant.com;

3    nelson@graninc.com

4    **XII.   DURATION, MODIFICATIONS AND REMEDIES FOR NON-COMPLIANCE**

5    42. This Consent Order shall remain in effect for three (3) years from the date of the entry of this

6        Order.  However, in the event that there is a material and substantial failure by any Defendant

7        to satisfy the terms or provisions of the Consent Order, the United States may file a motion

8        requesting that the term of the Consent Order be extended.

9    43. Any time limits for performance imposed by this Consent Order may be extended by the

10       mutual written agreement of the Parties.

11   44. The Court shall retain jurisdiction for the duration of this Consent Order to enforce the terms of

12       the Order.  The United States may move the Court to extend the duration of the Order in the

13       interests of justice.

14   45. The Parties shall employ their best efforts to resolve any differences that arise in the

15       implementation or interpretation of this Consent Order.  In the event that such efforts fail,

16       either party, after meeting-and-conferring with the other party, may bring the matter to the

17       Court's attention for resolution.  In the event of a failure by Defendants to perform in a timely

18       manner any act required by this Order or otherwise to act in conformance with any provision

19       thereof, the United States may move this Court to impose any remedy authorized by law or

20       equity, including, but not limited to, an order requiring performance or deeming such act to

21       have been performed, and an award of any damages, costs, and reasonable attorney's fees

22       which may have been occasioned by the Defendant's violation or failure to perform.

PROPOSED CONSENT ORDER-18

United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W.- G Street
Washington, D.C., 20530
202-514-4713

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 67 of 103

Case 2:10-cv-01150-JLR   Document 20   Filed 03/08/11   Page 19 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 19 of 21

46. By consenting to entry of this Consent Order, the United States and Defendants agree that in the event the Defendants engage in any future violation(s) of the Fair Housing Act in any rental ownership or management beginning after entry of the Consent Order, such violation(s) shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

## XIII.   COSTS OF LITIGATION

47. Each party to this Order shall bear its own costs and attorney's fees associated with this litigation.

## IX.   SIGNATURE OF THE PARTIES

48. The Parties consent to the entry of this Consent Order as indicated by the signatures of counsel below:

PROPOSED CONSENT ORDER-19

United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W.- G Street
Washington, D.C., 20530
202-514-4713

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 68 of 103

Case 2:10-cv-01150-JLR   Document 20   Filed 03/08/11   Page 20 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 20 of 21

1    DATED this 7th day of March, 2011

2    Presented By,

3    Counsel for the United States:

4    JENNY A. DURKAN                      THOMAS H. PEREZ
     United States Attorney               Assistant Attorney General
5    Western District of Washington       Civil Rights Division

6

7    s/ Patricia D. Gugin                 s/Beth Frank
     PATRICIA D. GUGIN                    STEVEN H. ROSENBAUM
     WSBA #43458                          TIMOTHY J. MORAN
8    Assistant United States Attorney     Deputy Chief
     1201 Pacific Avenue, Suite 700       JULIE ALLEN, VABA #41578
9    Tacoma, Washington 98402             BETH FRANK, NYBA #4067831
     Phone: 253-428-3832                  Trial Attorneys
10   Fax: 253-428-3826                    Housing and Civil Enforcement Section
     E-mail: pat.gugin@usdoj.gov          Civil Rights Division
11                                        U.S. Department of Justice
                                          950 Pennsylvania Ave., N.W. – G Street
12                                        Washington, D.C. 20530
                                          E-mail: julie.allen@usdoj.gov
13                                        E-mail: beth.frank@usdoj.gov
                                          Phone: 202-514-4713
14                                        Fax: 202-514-1116

15   Counsel for the Defendants:

16   Counsel for Defendant Summerhill Place, LLC, GRAN, Inc. and Rita Lovejoy:
     Bullivant Houser Bailey PC
17

18   s/ Pamela Salgado
19   Pamela Salgado, WSBA #22741
     E-Mail: pam.salgado@bullivant.com
     Brian K. Keeley, WSBA #32121
20   E-Mail: brian.keeley@bullivant.com
     Bullivant Houser Bailey PC
21   1601 Fifth Avenue, Suite 2300
     Seattle, Washington 98101-1618
22   206.292.8930

     PROPOSED CONSENT ORDER-20                    United States Department of Justice
23                                                         Civil Rights Division
                                                 Housing and Civil Enforcement Section
24                                                950 Pennsylvania Ave., N.W.- G Street
                                                      Washington, D.C., 20530
                                                          202-514-4713
25

26

Case 2:16-cv-00922-TSZ   Document 44   Filed 06/02/17   Page 69 of 103

Case 2:10-cv-01150-JLR   Document 20     Filed 03/08/11   Page 21 of 27
Case 2:10-cv-01150-JLR   Document 19-1   Filed 03/07/11   Page 21 of 21

1

2     DATED this 8 day of March 2011.

3

4

5                              JAMES L. ROBART
                               UNITED STATES DISTRICT COURT JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22     PROPOSED CONSENT ORDER-21                    United States Department of Justice
                                                          Civil Rights Division
23                                               Housing and Civil Enforcement Section
                                                 950 Pennsylvania Ave., N.W.- G Street
24                                                      Washington, D.C., 20530
                                                             202-514-4713
25

26



**APPENDIX B**

**ACKNOWLEDGMENT OF RECEIVING AND REVIEWING ORDER AND
NONDISCRIMINATION POLICIES AND PROCEDURES**

I have received a copy of the Consent Order entered in *United States v. Summerhill*

*Place, LLC, et al.*, Civil Action No. 2:10-cv-01150-JLR (W.D. Wash.). I have also received a

copy of the Nondiscrimination Policies and Procedures. The Consent Order and the

Nondiscrimination Policies and Procedures were explained to me, and all questions concerning

these documents were answered. I have read and believe that I understand the Consent Order

and the Nondiscrimination Policies and Procedures.


_____

DATE


_____

EMPLOYEE/AGENT NAME (PRINT)


_____

EMPLOYEE/AGENT SIGNATURE

**APPENDIX C**

## NOTICE TO POTENTIAL VICTIMS OF HOUSING DISCRIMINATION

On _____, 2010, the United States District Court for the Western District of
Washington entered a consent order resolving litigation brought by the United States Department
of Justice involving Summerhill Place, LLC, GRAN, Inc. and Rita Lovejoy (the "Defendants").
The litigation alleged that the Defendants discriminated against tenants and prospective tenants
at Summerhill Place Apartments located at 10415 SE 174th Street, Renton, Washington.
Summerhill Place, LLC, GRAN, Inc., and Rita Lovejoy deny the allegations of the litigation and
specifically deny that they discriminated on the basis of race, color, national origin, and familial
status. The Parties have agreed to this Consent Order to avoid costly and protracted litigation
and is not an admission of liability.

Under this consent order, you may be entitled to receive monetary relief if you:

- Were *discouraged from living at Summerhill Place Apartments because of your race,
  color, national origin or familial status*;

- Were treated differently or provided inferior service at Summerhill Place Apartments
  because of your race, color, national origin or familial status;

- Were told that children were not permitted to play outside at Summerhill Place
  Apartments,

If you believe that you have been discriminated against in any way described above,
please contact the United States Department of Justice at: 1-800-896-7743, mailbox number
9997, or write or send an e-mail to:

United States Department of Justice
Attn: DJ# 175-82-145
Civil Rights Division
Housing and Civil Enforcement Section

950 Pennsylvania Ave., NW – G Street
Washington, DC 20530
E-mail address: fairhousing@usdoj.gov

**You must call or write by _____, 2011, and your message or letter must include your**

**name, address and at least one telephone number where you may be reached.**

## APPENDIX D

## FAIR HOUSING ORGANIZATIONS

**Fair Housing Center of Washington**
1517 S. Fawcett, Suite 250
Tacoma, WA 98402

**Washington State Human Rights Commission**
711 South Capitol Way, #402
P.O. Box 42490
Olympia, WA 98504

**King County Office of Civil rights**
400 Yesler Way, Room 260
Seattle, WA 98104

**Seattle Office for Civil Rights**
810 3rd Avenue, Suite 750
Seattle, WA 98104

**APPENDIX E**

**RELEASE**

In consideration for the parties' agreement to the terms of the Consent Order entered in

*United States v. Summerhill Place, LLC, et al.*, Civil Action No. 2:10-cv-01150-JLR (W.D.

Wash.), and the payment to me of $_____, pursuant to the Consent Order, I hereby release

and forever discharge Summerhill Place, LLC, GRAN, Inc, and Rita Lovejoy, and all related

entities, parents, successors, subsidiaries and affiliates, and all of their past and present directors,

officers, agents, managers, supervisors, shareholders and employees and their heirs, executors,

administrators, successors and assigns from any and all claims, demands, judgments, or liabilities

(1) that arise out of or relate to the facts at issue in the litigation referenced above, or in any way

related to that litigation; and (2) that were or could have been alleged in the litigation described

above (either by me or by the United States); and (3) any other claims arising from the housing

discrimination alleged in that litigation or in the HUD investigation.  **I understand that I may**

**later discover additional injuries or damages that are not know to me at this time.  This**

**release specifically applies to such later discovered injuries or damages and I specifically**

**accept the risk that I may later discover such injuries or damages.**  This Release does not

release claims that arise after signing of this Release.


Executed this ____ day of _____, 2011.



_____

[PRINT NAME]


_____

[SIGNATURE]

# **EXHIBIT G**

TO

DECLARATION OF JESSE WING

**UNITED STATES DISTRICT COURT**
**DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

      vs.               CASE NO.: 8:12-cv-2298-T-33TGW

TOWNHOMES OF KINGS LAKE
      HOA, INC., et al.,

      Defendants.

_____/

**CONSENT DECREE**

**I.  INTRODUCTION**

    1.    The United States initiated this action on October 9, 2012, against Defendants Townhomes of Kings Lake HOA, Inc. ("HOA") and Vanguard Management Group, Inc. ("Vanguard"), under 42 U.S.C. §§ 3612(o) and 3614(a).  It its complaint, the United States alleges that the Defendants violated the Fair Housing Act ("FHA"), as amended, 42 U.S.C. §§ 3601–3631, on the basis of familial status by adopting, maintaining, and enforcing unlawful occupancy limits for all townhomes in the Townhomes of Kings Lake ("Kings Lake") in Gibsonton, Florida.  Specifically, these occupancy limits ("the Kings Lake Occupancy Limits") permitted only three occupants in 2-bedroom townhomes, four occupants in 3-bedroom townhomes, and six occupants in 4-bedroom townhomes.  These occupancy limits were codified in Kings Lake's Declaration, Section 13.22.2, which was and is recorded with the Clerk of Court for Hillsborough County, and referenced by incorporation in Defendant HOA's Articles of Incorporation and By-Laws.

1

2.     The United States alleges that the Defendants, through their conduct between August 2006 through November 2007 described in the Complaint, violated the rights of Gregory Tracey, Kimberley Konash, and their six children, Tiffany Skizinski, Deanna Tracey, LT, RT, KT, and ST[1] (together, the "Tracey/Konash Family"), by discriminating against them in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of familial status, in violation of 42 U.S.C. § 3604(b); and coercing, intimidating, threatening, or interfering with them in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights granted or protected by Section 804 of the Fair Housing Act, in violation of 42 U.S.C. § 3617.

3.     The United States alleges that the Defendants have engaged in a pattern or practice of resistance to the full enjoyment of rights granted by the FHA, or a denial to a group of persons of the rights granted by the FHA, which denial raises an issue of general public importance, all in violation of 42 U.S.C. § 3614(a).

4.     The United States also alleges that, as a result of the Defendants' discriminatory conduct, the Tracey/Konash Family, who are "aggrieved person[s]" under 42 U.S.C. § 3602(i), have suffered injuries, and that other individuals – which include past, current, and prospective tenants with families, past, current and prospective owners with families, and persons associated with them, all of whom are "aggrieved" person under 42 U.S.C. §§ 3602(i) and 3614(d)(1)(B) – also may have suffered injuries.

---

[1] Initials are used in this Decree to identify minor children.

5.      Defendant HOA has represented to the United States that the Kings Lake Declaration, Section 13.22.2, was amended on January 10, 2013, after duly authorized votes of the HOA's Board of Directors and the HOA's members, and that this amendment was recorded with the Clerk of Court for Hillsborough County on January 16, 2013.  Defendant HOA hereby reaffirms that the Kings Lake Occupancy Limits that are the subject of this litigation have been superseded by the new occupancy limits recorded with Hillsborough County on January 16, 2013 ("Amended Occupancy Limits").  Kings Lake's Amended Occupancy Limits permit four occupants in 2-bedroom townhomes, six occupants in 3-bedroom townhomes, and eight occupants in 4-bedroom townhomes, and provide that "[n]otwithstanding the foregoing restrictions on the maximum number of occupants in any Home permitted, the provisions of this Section 13.22.2 shall not be enforceable when the enforcement of the foregoing restrictions would be contrary to applicable law."

6.      The parties desire to avoid costly and protracted litigation and agree that the claims against the Defendants should be settled and resolved without the necessity of a trial. Defendants deny liability or engaging in any wrongdoing.

7.      By their signatures below, the parties hereby consent to the entry of this Consent Decree and the attached Judgment.

Therefore, it is **ADJUDGED, ORDERED and DECREED** as follows:

## II. GENERAL INJUNCTION

8.      The Defendants, their officers, directors, agents, employees, and all persons in active concert or participation with them are enjoined, with respect to the sale or rental of

dwellings as defined by 42 U.S.C. § 3602(b), whether such dwellings are in Kings Lake or at other locations where either Defendant is involved in the sale or rental of dwellings, from:

    a. Refusing to sell or rent, or to negotiate for the sale or rental of, or otherwise making unavailable or denying, a dwelling to any person because of familial status;

    b. Discriminating against any person in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of familial status;

    c. Making, printing, publishing, or causing to be made any notice, statement or advertisement with respect to the sale or rental of a dwelling that states any preference, limitation or discrimination based on familial status; or

    d. Coercing, intimidating, threatening or interfering with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided and encouraged any other person in the exercise or enjoyment of, any right granted by the Fair Housing Act.

### III. INJUNCTIVE RELIEF WITH RESPECT TO DEFENDANT HOA

9.      Defendant HOA, its officers, directors, agents, and all persons in active concert or participation with them, are enjoined, with respect to the sale or rental of townhomes in Kings Lake, from imposing, maintaining, ratifying, implementing, or enforcing a policy or practice limiting the number of occupants in a townhome that is inconsistent with the requirements of the Fair Housing Act or applicable occupancy codes or standards of Hillsborough County or the State of Florida.

10.     Defendant HOA shall, within forty-five (45) days of entry of this Consent

Decree:

    a.   Take all necessary actions to amend its Articles of Incorporation, By-Laws, and

community rules, regulations, and standards, and to rescind all past resolutions,

documents, or other official statements approving of, endorsing, adopting, or

otherwise citing the validity of the Kings Lake Occupancy Limits, and ensure that

those documents are consistent with the Amended Occupancy Limits.

    b.   Provide written notice(s) to all owners and tenants of all townhomes in Kings

Lake explaining the change in the Kings Lake Occupancy Limits.  All such

notice(s) shall be provided in a manner(s) designed to reach every townhome

owner and tenant in a prompt manner, including, if appropriate, through electronic

mail.  The notice(s) to owners shall include a copy of the amendment to the Kings

Lake Declaration recorded on January 16, 2013, and a copy of this Consent

Decree.  Defendant HOA shall secure, promptly after providing this notice(s) to

owners, written acknowledgement from owners that they received the notice(s).

Such acknowledgement shall be in the form of **Attachment A** to this Consent

Decree.  If, despite its best efforts, Defendant HOA cannot obtain such

acknowledgement from one or more owners, Defendant HOA shall provide to the

United States a list of each such owner.

    c.   Post a notice on the bulletin board at the Kings Lake community pool explaining

with specificity the changes in the Kings Lake Occupancy Limits.  This notice

shall remain posted for a minimum of ninety (90) consecutive days.

d.  Provide written notice to, and meet with the firm currently under contract with
Defendant HOA to provide residential property management services at Kings
Lake, including all employees or agents assigned to Kings Lake, explaining the
changes in the Kings Lake Occupancy Limits.  The notice shall include a copy of
the amendment to the Kings Lake Declaration recorded on January 16, 2013, and
a copy of this Consent Decree.

e.  Amend its standard rental application form, including associated documents (e.g.,
screening form), (i) to delete all references to the superseded Kings Lake
Occupancy Limits; (ii) to include the fair housing logo or the words "Equal
Housing Opportunity"; (iii) to include the following statement in English and
Spanish: "The Townhomes of Kings Lake welcomes families with children."; and
(iv) to include the following:  "If you believe you have been discriminated against
during the rental process on the basis of your familial status (having a child under
18 years old), you may contact the U.S. Department of Housing and Urban
Development at 1-800-669-9777 or the U.S. Department of Justice at 1-800-896-
7743."  All these words and/or logo shall be prominently placed and easily
legible.

f.  Establish and begin maintaining a log of all its (i) rejections of applications to rent
or own a townhome, and (ii) adverse actions, whether threatened or actual, taken
with respect to any owner, tenant or other occupant (e.g., eviction, fine, warning
letter).  This requirement shall not apply to adverse actions taken for non-payment
or late payment of homeowners association fees or assessments that are generally

applicable to owners at Kings Lake.  The log shall be in the form of **Attachment B** to this Consent Decree, or in a similar form(s) utilized by Defendant HOA or its agent(s) that captures all the information requested in Attachment B.

11.     Defendant HOA shall, within five (5) days after it learns, directly or through its agents including its then-current property management firm, of the sale of any residential property at Kings Lake, provide a copy of this Consent Decree to the new owner(s) and promptly secure their written acknowledgement of receipt (Attachment A).

12.     Defendant HOA shall notify counsel for the United States in writing within fifteen (15) days of receipt of any written or oral complaint against Defendant HOA, or against its officers, directors, or other agents with respect to the Townhomes of Kings Lake and regarding familial status discrimination in housing.  If the complaint is written, Defendant HOA shall provide a copy of it with the notification.  The notification shall include the full details of the complaint, including the complainant's name, address, and telephone number.  Defendant HOA shall also promptly provide to the United States all non-privileged information it may request concerning any such complaint and shall inform the United States within fifteen (15) days of any resolution of such complaint.

### IV. INJUNCTIVE RELIEF WITH RESPECT TO DEFENDANT VANGUARD

13.     Defendant Vanguard shall inform the boards of directors of the community associations it manages that they should consult with their attorneys with respect to: (a) the enforceability of any occupancy restrictions in their government documents; (b) any attempt by the community association to establish or enforce any occupancy restrictions; and (c) the

publication of any document, such as a lease, tenancy application, or newsletter, that

Vanguard knows references occupancy restrictions.

## V. TRAINING

14.     Within forty-five (45) days of the entry of this Consent Decree, Defendants

HOA (all directors and officers) and Vanguard (at a minimum, all those listed in "Our Team"

on Vanguard's website) shall attend a program of educational training concerning the

substantive provisions of federal, state and local fair housing laws, including the prohibitions

against discrimination based on familial status, and the Defendants' responsibilities under

such laws.  Defendant HOA shall also require attendance at such training by the contractor

responsible for providing residential property management services at Kings Lake, including,

at a minimum, the property manager and all other employees and agents who serve as back-

up property manager at Kings Lake or who directly supervise the property manager in that

capacity.  As of the date of signing this Consent Decree, Defendant HOA and the United

States have agreed upon two employees of the current residential property management

contractor required to take this training.  The training shall be conducted by a qualified third

party, approved in advance by the United States and independent of the Defendants or their

employees, agents, or counsel.  The United States will not unreasonably withhold its

approval.  All costs of this program shall be borne by the Defendants.  All persons attending

such a program shall have their attendance certified in writing by the person conducting the

program, using the Certification of Completion of Training attached as **Attachment C**.

15.     Any HOA director or officer appointed or elected, and any Vanguard "Our

Team" member so designated, after the entry of this Consent Decree, if unable to attend the

8

training required under the previous paragraph, shall attend a training program as described in the previous paragraph within sixty (60) days of the date of being so appointed, selected or designated.  The requirement in the previous sentence shall also apply to any employees or agents of any property management firm that Defendant HOA retains who have, at any time during the duration of this Consent Decree, any of the responsibilities at Kings Lake described in the previous paragraph, and shall be satisfied within sixty (60) days of assumption of those responsibilities or execution of a new property management contract.

## VI.  RECORD-KEEPING AND REPORTING

16.     Defendant HOA shall retain all records maintained in the normal course of their business, including, but not limited to, those relating to review of rental applications and sales contracts, enforcement of Kings Lake rules and regulations, and complaints by tenants or owners, whether actual or prospective.  Representatives of the United States shall be permitted, during the duration of this Consent Decree and upon reasonable notice to Defendant HOA, to inspect and copy at reasonable times any such non-privileged records, including for the purpose of making its preliminary determinations and final recommendations under Paragraphs 25 and 26, below.

17.     Within sixty (60) days of the entry of this Consent Decree, Defendant HOA and, with respect to training, Defendant Vanguard, shall provide counsel for the United States with written notice of compliance with Paragraphs 10 and 14 of this Decree, including all sub-paragraphs.[2]  Six (6) months after the due date for the written notices of compliance

---

[2]  All notices and reports that one or both Defendants are required to send to counsel for the United States under this Consent Decree, as well as all checks required under Section VII, shall be sent by overnight mail to:  United States Department of Justice, Civil Rights Division, Housing and Civil Enforcement Section, 1800 G Street,

described in the previous sentence, every six (6) months thereafter, and one final time thirty (30) days prior to the expiration of this Consent Decree, Defendants shall each provide counsel for the United States with written notice of compliance with Paragraphs 11, 12, 13, and 15 of this Decree to the extent the Consent Decree's requirements apply to them. With respect to Paragraph 12, the notice from Defendant HOA shall state either that no complaints have been received during the reporting period or that the provisions of Paragraph 12 have been complied with.

18.    All reporting by Defendants to the United States under this Section VI shall include therein the supporting documentation that is required of them in carrying out the provisions in this Consent Decree.

## VII. MONETARY DAMAGES FOR AGGRIEVED PERSONS

### A. The Tracey/Konash Family

19.    Within thirty (30) days after the entry of this Consent Decree, each Defendant shall send to counsel for the United States, via overnight delivery, a check made payable to the "United States Treasury," said checks being in the combined amount of forty-five thousand dollars ($45,000.00), and representing damages for the benefit of individual members of the Tracey/Konash Family. Defendant HOA shall pay thirty-five thousand dollars ($35,000) toward this amount and Defendant Vanguard shall pay ten thousand dollars ($10,000) toward this amount. The $45,000.00 will subsequently be divided as follows: $33,500.00 to Kimberley Konash; $8,000.00 to Gregory Tracey; $2,500.00 to Tiffany Skizinski; and $1,000.00 to Deanna Tracey.

---

N.W., Suite 7002, Washington, D.C. 20006, Attn. D.J. # 175-17M-499 and by email to jeff.knishkowy@usdoj.gov  and neta.borshansky@usdoj.gov.

20.     When counsel for the United States has received the checks payable as set forth in the previous paragraph from Defendants and a release in the form of **Attachment D** signed by a Tracey/Konash Family member entitled to a payment, counsel for the United States shall deliver to each such member entitled to a payment his or her respective share of the amount set forth in the previous paragraph and to counsel for Defendants HOA and Vanguard each original, signed release.

### B. Settlement Fund for Other Aggrieved Persons

21.     Within thirty (30) days after the entry of this Consent Decree, Defendants shall deposit the combined amount of eighty-five thousand dollars ($85,000.00) into an interest-bearing escrow account for the purpose of compensating other persons who are deemed aggrieved persons ("aggrieved persons") as set forth below.  Defendant HOA shall pay seventy thousand dollars ($70,000) toward this amount and Defendant Vanguard shall pay fifteen thousand dollars ($15,000) toward this amount. This money shall be referred to as the "Settlement Fund."  Title to this account shall specify that it is "for the benefit of aggrieved persons pursuant to the Order of the Court in United States v. Townhomes of Kings Lake HOA, Inc., et al."  Within fifteen (15) days of the establishment of this Fund, Defendant HOA shall submit proof to the United States that this account has been established and the funds deposited.  Any interest accruing to the Settlement Fund shall become a part of the Fund and shall be utilized as set forth herein.  All costs or fees charged by the bank relating to the maintenance of the account shall be paid from the Settlement Fund.

22.     Within forty-five (45) days of the entry of this Consent Decree, Defendant HOA shall publish a Notice to Potential Claimants of Housing Discrimination ("Notice")

11

(**Attachment E-1**) of at least three columns by six inches in the Main B Section of the

*Tampa Bay Times* (Full Run) and the Metro Section of the *Tampa Tribune* (Full Run).

Within that time, the Notice shall be published in each publication on three (3) separate

dates, and the publication dates in each journal shall be separated by at least seven (7) days

and include at least two (2) Sundays.  Also during this 45-day period, Defendant HOA shall

post a Notice of the same size in two (2) electronic journals, http://www.tampabay.com and

http://www2.tbo.com.  The Notice shall be published in each journal on three (3) separate

dates, and the publication dates in each journal shall be separated by at least seven (7) days

and include at least two (2) Sundays.  Also during this 45-day period, Defendant HOA shall

publish Spanish translations of the Notice (**Attachment E-2**), of at least three columns by six

inches, on two (2) separate dates separated by at least fourteen (14) days in a Spanish print

newspaper in the Tampa area to be identified by the United States, and on two (2) separate

dates separated by at least fourteen (14) days in a Spanish electronic journal in the Tampa

area to be identified by the United States.  Defendant HOA shall provide to counsel for the

United States a copy of each print newspaper containing such Notice, and a screen shot of

each electronic journal containing such Notice, within three (3) days after the last

publication. The Notice shall not be published on a Saturday or on a holiday.  All the costs

associated with the Notice, its publication, and distribution shall be borne by Defendant

HOA.

     23.    As set out in Attachments E-1 and E-2, the Notice shall set forth a summary of

the legal and evidentiary contentions of the United States; and a statement that the United

States seeks information from any persons who claim to have been subjected to familial

status discrimination, or who know of others who may have been subjected to such

discrimination, by the Defendants or either of them in connection with Kings Lake.

24.     Nothing in this Decree shall preclude the United States from making its own

efforts to locate and provide notice to potential aggrieved persons (such as conducting door-

to-door interviews of current tenants).

25.     The United States shall make a preliminary determination of which persons

are aggrieved and an appropriate amount of damages that should be paid to each such person.

The United States will inform Defendants in writing of its preliminary determinations,

together with a copy of a sworn declaration from each allegedly aggrieved person setting

forth the factual basis of the claim.  Defendants shall have fourteen (14) days to review this

information and provide to the United States any documents or information that they believe

may refute the claim.

26.     Within sixty (60) days of receiving Defendants' comments pursuant to the

previous paragraph, the United States shall submit its final recommendations to the Court for

its approval, identifying the aggrieved persons and an appropriate amount of damages that

should be paid to each such person from the Settlement Fund, together with a copy of

documentation supporting these recommendations.  Within ten (10) days of a Court order

providing for the distribution of funds from the Settlement Fund to aggrieved persons,

Defendant HOA shall deliver to the United States checks payable to the aggrieved persons in

the amounts approved by the Court.  Only Defendant HOA's President and/or Treasurer may

sign checks from the Settlement Fund, and only for the purpose set forth in this paragraph.

The United States shall require all claimants to sign the release (Attachment D) releasing

Defendants from further liability regarding the allegations relating to this lawsuit before distributing funds to any aggrieved person.

27.     After the satisfaction of paragraphs 21 - 26, above, and the expiration of the corresponding time periods, any money remaining in the Settlement Fund, including interest, shall be distributed to a qualified organization(s) for the purpose of conducting enforcement or educational activities related to the Fair Housing Act in Gibsonton, FL, and/or the surrounding metropolitan area, with an emphasis on the protection of the rights of families with children under 18 years of age.  Before selecting the qualified organization(s), Defendants will obtain a proposal from the organization(s) on how the funds will be used consistent with the above-stated purpose, submit such proposal to the United States, and consult with and obtain the non-objection of the United States, which the United States will not unreasonably withhold.  The United States and Defendants may request modification of the proposal before approving the organization(s).  The parties shall thereafter seek approval from the Court to distribute the remaining funds to the qualified organization(s).  Defendants shall also require that the qualified organization(s) receiving funds submit to Defendants and the United States a detailed report on how the funds are utilized within one year of receipt of funds, and every year thereafter until the funds are exhausted.

## VIII. CIVIL PENALTY

28.     Within thirty (30) days after the entry of this Consent Decree, Defendant HOA shall pay a total of fifteen thousand dollars ($15,000.00) to the United States as a civil penalty, and Defendant Vanguard shall pay a total of five thousand dollars ($5,000.00) to the United States as a civil penalty, pursuant to 42 U.S.C. § 3614(d)(1)(C).  Each of these payments shall be in the form of a check sent by overnight delivery to counsel for the United States at the address in footnote 2, and made payable to "United States Treasury."

14

### IX. SCOPE AND DURATION OF CONSENT DECREE

29.     The provisions of this Consent Decree shall apply to Defendants HOA and

Vanguard, their employees, agents, directors, officers, successors, and assigns.

30.     This Consent Decree is effective immediately upon its entry by the Court and

shall remain in effect for thirty (30) months.

31.     The Court shall retain jurisdiction for the duration of this Consent Decree to

enforce the terms of the Decree, after which time the case shall be dismissed with prejudice

as to Defendants HOA and Vanguard.

32.     All parties shall be responsible for their own attorney's fees and court costs,

except as provided for in Section X, below.

### X. REMEDIES FOR NON-COMPLIANCE, TIME FOR PERFORMANCE, AND MODIFICATIONS

33.     The United States may move the Court to extend the period in which this

Consent Decree is in effect only if Defendant HOA or Vanguard violates one or more terms

of the Decree or if the interests of justice otherwise require an extension of the terms of the

Decree.  The United States may seek such extension as to one or both Defendants, as

applicable.

34.     Any time limits for performance imposed by this Consent Decree may be

extended by mutual written agreement of the Parties.

35.     The Parties to this Consent Decree shall endeavor in good faith to resolve

informally any differences regarding interpretation of and compliance with this Decree prior

to bringing such matters to the Court for resolution.  However, in the event the United States

contends that there has been a failure by Defendant HOA or Vanguard, where willful or

otherwise, to perform in a timely manner any act required by this Decree or otherwise to comply with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and attorney's fees which may have been occasioned by Defendant HOA's or Vanguard's violation or failure to perform.  Nothing contained in this paragraph or otherwise in this Decree shall be deemed to prevent Defendant HOA or Vanguard from responding to or otherwise contesting a motion made by the United States to this Court seeking the imposition of a remedy for an alleged failure of Defendant HOA or Vanguard to comply with this Decree.

36.    The parties agree that, as of the date of the entry of this Decree, litigation is not "reasonably foreseeable" concerning the matters described in Paragraphs 1-5.  To the extent that any of the parties previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in Paragraphs 1-5, they are no longer required to maintain such a litigation hold.  Nothing in this paragraph relieves any of the parties of any other obligations imposed by this Consent Decree.

37.    The parties agree that in the event that Defendant HOA or Vanguard engages in any future violation of the Fair Housing Act, such violation shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d).

## XI. DISMISSAL OF CROSS-CLAIM

38.    Defendants HOA and Vanguard agree and stipulate that within five (5) days of the Court's approval of this Consent Decree, the "Cross-Claim Against Co-Defendant

Townhomes of Kings Lake HOA, Inc. for Indemnity" brought by Defendant Vanguard against Defendant HOA [DE #28] will be dismissed with prejudice.

IT IS SO ORDERED, this 15th day of August, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Respectfully Submitted,

For Plaintiff United States of America:
Dated:  August 13, 2013

JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division

s/ Jeffrey Knishkowy
STEVEN H. ROSENBAUM
Chief
MICHAEL S. MAURER
Deputy Chief
JEFFREY KNISHKOWY
NETA BORSHANSKY
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Northwestern Building, 7th Floor

17

Washington, D.C. 20530
Phone:  (202) 353-6196
Fax:  (202) 514-1116
jeff.knishkowy@usdoj.gov

For Defendant Townhomes of Kings Lake HOA, Inc.:
Dated:  August 13, 2013

s/ Eric W. Dickey
Eric W. Dickey
Florida Bar No. 0500011
edickey@dickey-law.com
Dickey Law Firm, P.A.
410 S. Ware Blvd.
Suite 606
Tampa, FL  33619
Telephone: (813) 621-2200
Fax: (813) 793-4880
Attorney for Defendant
Townhomes of Kings Lake HOA, Inc.
Lead Trial Counsel

Douglas G. Christy
Florida Bar No. 13364
dgcpleadings@whhlaw.com
Wetherington Hamilton, P.A.
1010 N. Florida Avenue
Tampa, Florida  33602
Telephone:     813/225-1918
Facsimile:      813/225-2531
Attorney for Defendant,
Townhomes of Kings Lake HOA, Inc.

For Defendant Vanguard Management, Inc.:
Dated:  August 13, 2013

s/ Marielle E. Westerman
Marielle E. Westerman, Esquire
Florida Bar No. 13244
Mwesterman@wwz-law.com
Westerman White Zetrouer, P.A.
146 2nd St. N., Ste. 100
St. Petersburg, Florida   33701

Telephone:    727/329-8956
Facsimile:    727/329-8960
Attorney for Defendant
Vanguard Management Group, Inc.
Lead Trial Counsel

## ATTACHMENT A

### Owner Acknowledgment of Receiving Consent Decree

I have received a copy of the Consent Decree entered in *United States v. Townhomes of Kings Lake HOA, Inc., et al.,* Case No. 8:12-cv-2298-T-33TGW (M.D. Fla.), including a copy of the amendment to the Townhomes of Kings Lake Declaration, recorded with Hillsborough County, Florida, on January 16, 2013.  I have read these documents and understand the new occupancy policy at the Townhomes of Kings Lake.

_____

DATE


_____

OWNER NAME (PRINT)

_____

OWNER'S STREET ADDRESS AT TOWNHOMES OF KINGS LAKE


_____

OWNER SIGNATURE

**ATTACHMENT B**
**Log of Occupancy Rejections and Adverse Actions**

| Date of Action | Action Taken (with specifics if adverse action) | Who Took Action | Reason for rejection or adverse action | Name of individual(s) against whom action taken | Contact information of individual(s) in prior column | Status of individual |
|---|---|---|---|---|---|---|
| Example 1: 5/17/13 | TR | Property management firm X | | | | PT |
| Example 2: 6/3/13 | AA – fine | HOA fining committee | | | | O |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

TR = Tenancy Rejection   O = Owner   PT = Prospective Tenant   HOA = Townhomes of Kings Lake Homeowners Association
OR – Ownership Rejection   T = Tenant   PB = Prospective Buyer   (Board, Officer, or Committee)
AA – Adverse Action                   Ot = Other (specify)

## ATTACHMENT C

### Certification of Completion of Training

On _____, 20\_\_, _____ completed an in-person training, conducted by me, on the requirements of the federal Fair Housing Act, 42 U.S.C. §§ 3601-3631, as well as state and local fair housing laws, including the prohibition against discrimination based on familial status, in compliance with the Consent Decree entered by the United States District Court for the Middle District of Florida in *United States v. Townhomes of Kings Lake HOA, Inc., et al.*, Case No. 8:12-cv-2298-T-33TGW (M.D. Fla.).

This training included instruction on the responsibilities of homeowners associations and property management firms in ensuring compliance with the fair housing laws.

_____
(Signature)

_____
(Print name)

_____
(Date)

## ATTACHMENT D

### Release

In consideration for the parties' agreement to the terms of the Consent Decree entered in *United States v. Townhomes of Kings Lake HOA, Inc., et al.*, Case No. 8:12-cv-2298-T-33TGW (M.D. Fla.), I, _____ [**print name**], hereby agree, to remise, release, and forever discharge any and all claims of any kind, nature or description whatsoever, related to the facts at issue in the litigation referenced above, or in any way related to that litigation, up to and including the date of execution of this release, that I may have against Defendants Townhomes of King Lake HOA, Inc. and Vanguard Management Group, Inc. and their agents, employees, officers, members, heirs, executors, spouses, administrators, successors, insurers, and assigns.

      I acknowledge and understand that, by signing this Release, I am waiving any right to pursue my own legal action against Defendants Townhomes of Kings Lake HOA, Inc. and Vanguard Management Group, Inc. based on the discrimination alleged by the United States in this case.

      I also acknowledge that I have been informed that I may review the terms of this Release with an attorney of my choosing, and to the extent that I have not obtained legal advice, I voluntarily and knowingly waive my right to do so.

      This Release constitutes the entire agreement between Defendants Townhomes of Kings Lake HOA, Inc. and Vanguard Management Group, Inc. and me, without exception or exclusion.

I declare under penalty of perjury that the foregoing is true and correct.

      Executed this _____ day of, 2013.

                                       _____
                                          **Signature**

**ATTACHMENT E-1**

**NOTICE TO POTENTIAL VICTIMS OF HOUSING DISCRIMINATION BECAUSE OF FAMILIAL STATUS (HAVING CHILDREN UNDER AGE 18) AT THE TOWNHOMES OF KINGS LAKE, GIBSONTON, FLORIDA**

On _____, 2013, the United States District Court for the Middle District of Florida entered a consent decree resolving litigation brought by the United States Department of Justice involving the Townhomes of Kings Lake HOA, Inc. and Vanguard Management Group, Inc. (the "Defendants").  The United States alleged that the Defendants discriminated against tenants, prospective tenants, owners, and prospective owners on the basis of familial status by adopting, maintaining, and enforcing unlawful occupancy limits for all townhomes in the Townhomes of Kings Lake ("Kings Lake") in Gibsonton, Florida.  Specifically, townhomes in Kings Lake could have only three occupants in 2-bedroom townhomes, four occupants in 3-bedroom townhomes, and six occupants in 4-bedroom townhomes.  The United States alleged that these occupancy limits discriminated against families with at least one child under 18 years old.

Under the consent decree, you may be entitled to monetary relief if you:

- Were denied housing or discouraged from living at the Townhomes of Kings Lake because you had children or because of the number of children in your family;

- Were required to live in larger housing than you required at the Townhomes of Kings Lake because you had children or because of the number of children in your family; or

24

- Were harassed or otherwise discriminated against in the terms or conditions of renting or owning a residence at the Townhomes of Kings Lake because you had children or because of the number of children in your family.

If you believe you have been discriminated against in any of the ways described above, or if you have information about others who may have been discriminated against, please contact the United States Department of Justice at: 1-800-896-7743, mailbox number 9994, or write or send an email to:

United States Department of Justice
Attn:  DJ# 175-17M-499
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, NW  – G Street
Washington, DC 20530
Email address:  fairhousing@usdoj.gov

**You must call or write by _____, 2013** [FIVE MONTHS FROM THE DATE OF THE CONSENT DECREE]**, and your message or letter must include your name, address, and at least one telephone number where you may be reached.**

**ATTACHMENT E-2**

**ANUNCIO A VÍCTIMAS POTENCIALES DE DISCRIMNACIÓN EN VIVIENDA POR RAZÓN DE ESTADO FAMILIAR (FAMILIAS CON NIÑOS MENORES DE 18 AÑOS) EN TOWNHOMES OF KINGS LAKE, EN GIBSONTON, FLORIDA**

El [*day*] del [*month in lower case*] del 2013, el tribunal Federal de Distrito para el Distrito Medio de la Florida emitió una orden por consentimiento solucionando el litigio iniciado por el Departamento de Justicia de los Estados Unidos que involucra a Townhomes of King Townhomes of Kings Lake HOA, Inc. y Vanguard Management Group, Inc. (los "Demandados").  Los Estados Unidos alegó que los Demandados discriminaron contra inquilinos, inquilinos potenciales, dueños, y dueños potenciales por razón de su estado familiar al adoptar, mantener e imponer límites de ocupación ilegales para todas las casas adosadas en Townhomes of Kings Lake ("Kings Lake") en Gibsonton, Florida.  En específico, las casas adosadas en Kings Lake solamente podían tener tres ocupantes en casas adosadas de dos cuartos, cuatro ocupantes en casas adosadas de tres cuartos y seis ocupantes en casas adosadas de cuatro cuartos.  Bajo la orden por consentimiento, usted puede tener derecho a compensación económica si a usted:

- Le negaron vivienda o le trataron de disuadir de vivir en Townhomes of Kings Lake porque usted tenía niños o por el número de niños en su familia;

- Le requirieron vivir en una vivienda más grande que la que usted requería en Townhomes of Kings Lake porque usted tenía niños o por el número de niños en su familia;

- Fue hostigado(a) o discriminado(a) de otra forma en los términos y condiciones al alquilar o comprar una residencia en Townhomes of Kings Lake porque usted tenía niños o por el número de niños en su familia.

Si usted cree que usted ha sido discriminado en cualquiera de las formas descritas arriba, o si usted tiene información sobre otras personas que pudieron haber sido discriminadas, por favor comuníquese con el Departamento de Justicia de los Estados Unidos al: 1-800-896-7743, oprima el 2 para continuar en español y seleccione el buzón número 7, o escriba o envíe un email a:

United States Department of Justice
Attn:  DJ# 175-17M-499
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, NW  – G Street
Washington, DC 20530
Dirección de correo electrónico:  fairhousing@usdoj.gov

**Usted debe llamar o escribir en o antes del [*day*] de [*month in lower case*] del 2013** [FIVE MONTHS FROM THE DATE OF THE CONSENT DECREE], **y su mensaje o carta debe incluir su nombre, dirección y al menos un número de teléfono donde nos podamos comunicar con usted.**