HON. THOMAS S. ZILLY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| FAIR HOUSING CENTER OF WASHINGTON,<br>       Plaintiff,<br><br>v.<br><br>BREIR-SCHEETZ PROPERTIES, LLC, a Washington corporation; and FREDERICK BREIER-SCHEETZ, an individual,<br><br>       Defendants. | NO: 2:16-cv-00922 TSZ<br><br>**DEFENDANTS' RESPONSE REGARDING INJUNCTIVE RELIEF** |

**INTRODUCTION**

Defendants are aware that 42 U.S.C. §3613(c)(1) authorizes a trial court to award injunctive relief if that court determines a defendant has violated the Fair Housing Act. Defendants are further aware that the typical relief for a violation of the Fair Housing Act takes two forms: an injunction proscribing the conduct that constitutes the violation and affirmative steps to prevent a recurrence of the violation. Consequently, if, after the parties exhaust litigation regarding the above-captioned

DEFENDANTS' SUPPLEMENTAL BRIEF
(2:16-cv-00922 TSZ)                     - Page 1 of 9

GEORGE T. HUNTER ATTORNEY AT LAW
5900 48th Ave. South
Seattle, WA 98118
206.851.7700

lawsuit, there is a final determination that Defendants violated the Fair Housing Act by having a maximum occupancy policy of one person per studio apartment at the Granada Apartments, 42 U.S.C. §3613(c)(1) will authorize an award of injunctive relief.

## ARGUMENT

**1. Principles of equity afford the Court broad, but constrained, discretion in crafting injunctive relief.**

In *Lemon v. Kurtzman*, 411 U.S. 192, 200, 93 S. Ct. 1463, 36 L. Ed. 2d 151 (1973), the U. S. Supreme Court described the contours around equitable relief:

> [E]quitable remedies are a special blend of what is necessary, what is fair, and what is workable. "Traditionally, equity has been characterize by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs." *Brown v. Board of Education*, 349 U.S. 294, 300 (1955).

The "practical flexibility" to which the Supreme Court referred translates into broad discretion for trial courts in fashioning what is necessary, what is fair, and what is reasonable. *See, e.g., Forest Grove Sch. Dist. v. T.A.*, 523 F.3d 1078, 1084 (9th Cir. 2008). A trial court's broad discretion in fashioning, for example, a permanent injunction, is not, however, unlimited:

> The Supreme Court has cautioned that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979). Injunctive relief is an "extraordinary remedy," *Winter*, 555 U.S. at 24, and "must be tailored to remedy the specific harm alleged." *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011).

*McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012). That is, an injunction must be "narrowly tailored" to remedy the "range of proscribed activity" determined by the trial court. *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016). Such "proscribed activity" can be no broader

DEFENDANTS' SUPPLEMENTAL BRIEF
(2:16-cv-00922 TSZ)                - Page 2 of 9

GEORGE T. HUNTER ATTORNEY AT LAW
5900 48th Ave. South
Seattle, WA 98118
206.851.7700

than what the plaintiff has put before the trial court.  *See, e.g., Doe v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004).

**2.  If after the litigation in the above-referenced case ends, Defendants have been determined to have violated the Fair Housing Act, a resulting injunction should permit them to develop and implement a maximum occupancy that is reasonable, as HUD policy construes that term.**

FHCW alleged, and the Court determined, that Defendants violated the Fair Housing Act by establishing and enforcing a maximum occupancy policy for 425 square feet studio apartments at the Granada Apartments in Seattle, WA.  According to the facially neutral occupancy policy, Defendants limited occupancy of those apartments to one person.  FHCW employed testers to confirm Defendants' enforcement of the policy.  Specifically, each FHCW tester posed as a renter who wished to rent a subject studio for the tester and one child under the age of eighteen years.  Defendants do not deny that in response to the inquiries by the testers, Defendants advised the potential renters of the one person per studio policy and declined to rent to the testers.  Accordingly, the specific violation at issue is Defendants' maximum occupancy policy that resulted in decisions not to rent the subject studio apartments to two-person tester "families."

The first element of FHCW's proposed injunctive relief would require Defendants

> to permanently cease enforcing the occupancy restriction that this court has already held violates the law and not to impose any restriction that is more restrictive than SMC 22.206.020[.]

ECF 43-1 at 2, l. 1-3.  SMC 22.206.020 provides, in pertinent parts:

> C.  Every room used for sleeping purposes, including an SRO unit, shall have not less than seventy (70) square feet of floor area. Every room, except an SRO unit, which is used for both cooking and living or both living and sleeping quarters shall have a floor area of not less than one hundred thirty (130) square feet if used or intended to be used by only one (1) occupant, or of not less than one hundred fifty (150) square feet if used or intended to be used by two (2) occupants. Where more than two (2) persons occupy a room used for sleeping

DEFENDANTS' SUPPLEMENTAL BRIEF
(2:16-cv-00922 TSZ)                            - Page 3 of 9

GEORGE T. HUNTER ATTORNEY AT LAW
5900 48th Ave. South
Seattle, WA 98118
206.851.7700

>purposes, the required floor area shall be increased at the rate of fifty (50) square feet for each occupant in excess of two (2).
>. . .
>E.  The required floor area square footage of all dwelling units, dormitories, and SRO units shall not include built-in equipment which extends from the floor to thirty inches (30") above the floor, including but not limited to wardrobes, cabinets, and kitchen sinks or appliances.

42 U.S.C. §3607(b)(1) sets forth a pertinent exemption from the Fair Housing Act's proscription against discrimination in housing:

>Nothing in this title limits the applicability of any reasonable local, State, or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling.

FHCW has proposed that any injunction that the Court issues should be consistent with the occupancy limitations set forth in SMC 22.206.020.  Unless the Court were to determine that those occupancy limitations are unreasonable, they would necessarily help guide the Court in fashioning an injunction in the above-captioned lawsuit.  Defendants submit that under the facts of this case, application of SMC 22.206.020C and E would unfold as follows.

The subject studio apartments contain 425 square feet of space. Thus, in the absence of the limitations set forth in SMC 22.206.020E, under FHCW's proposed injunction, Defendants could not implement and enforce a maximum occupancy policy more restrictive than seven persons per subject studio. In his declaration submitted in support of Defendants' Supplemental Response to Plaintiff's Counter Motion for Summary Judgment, Frederick Scheetz stated, in part:

>6. The studio apartments have no separate closets for clothing or other personal items.  However there is some space in the area where a full sized Murphy bed is stored.  The livable space in the apartment[s] is approximately 11 feet wide and 15 feet long when the bed is stored.  When deployed the bed occupies space equal to a full size bed with the practical effect being insufficient space for another bed.

ECF 39 at 3, l. 4-8.  Consequently, according to Mr. Scheetz, the livable space in the subject studios is 165 square feet.  FHCW has introduced no evidence to the contrary, despite the fact

DEFENDANTS' SUPPLEMENTAL BRIEF  
(2:16-cv-00922 TSZ)                     - Page 4 of 9

GEORGE T. HUNTER ATTORNEY AT LAW  
5900 48th Ave. South  
Seattle, WA 98118  
206.851.7700

1  that on April 19, 2017, counsel for FHCW and two associates inspected one of the subject

2  apartments and took measurements of the interior of that apartment. Hunter Dec. ¶2.

3  Accordingly, at most, SMC 22.206.020C and E would permit two persons in the subject studio

4  apartments. As a result, an injunction would not bar Defendants from developing and

5  implementing an occupancy policy that limited occupancy of the subject studio apartments to

6  two persons.

7  Further, Defendants re-state the argument that they developed in Defendants'

8  Supplemental Response to Plaintiff's Counter Motion for Summary Judgment. ECF 38, at 2-9.

9  In *Crossroads Residents Organized for Stable & Secure ResiDencieS (CROSSRDS) v. MSP

10  Crossroads Apts. LLC*, No. 16-233 ADM/KMM, 2016 U.S. Dist. LEXIS 86965 (D. Minn. July 5,

11  2016), the trial court, in the context of ruling on a motion to dismiss, addressed a plaintiff's claim

12  that the enforcement of an occupancy policy by a private owner resulted in proscribed disparate

13  impact discrimination. After noting that the Fair Housing Act, specifically, 42 U.S.C. §3607(b)(1),

14  exempts "reasonable local, State, and Federal" occupancy limits, the court cited *United States v.

15  Badgett*, 976 F.2d 1176 (8th Cir. 1992), for the fact that the Fair Housing Act is silent as to

16  whether "reasonable" occupancy limitations enforced by private owners fall within the exemption

17  in 42 U.S.C. §3607(b)(1). Regardless, the court turned to HUD policy on the issue, as articulated

18  in the Keating Memorandum, 63 Fed. Reg. 70256 (Dec. 18, 1998). Subsequently, the court

19  evaluated the plaintiff's complaint consistent with the contents of that policy. *Id.* at *25-*26.

20  Similarly, *Reeves v. Rose*, 108 F. Supp.2d 720, 724 (E.D. Mich. 2000), involved, among

21  other things, a claim of family status discrimination resulting from a private owner's

22  development and implementation of an occupancy policy, specifically no more than three

23  persons in a two-bedroom apartment. The court noted that "HUD's position regarding occupancy

DEFENDANTS' SUPPLEMENTAL BRIEF  
(2:16-cv-00922 TSZ)                               - Page 5 of 9

GEORGE T. HUNTER ATTORNEY AT LAW  
5900 48th Ave. South  
Seattle, WA 98118  
206.851.7700

standards is also set forth in a March 20, 1991 memo (the Keating memo), specifically adopted by HUD in late 1998." In pertinent part, the Keating memo provides:

> In order to assure that the Department's position in the area of occupancy policies is fully understood, I believe that it is imperative to articulate more fully the Department's position on reasonable occupancy policies and to describe the approach that the Department takes in its review of cases. Specifically, the Department believes that an occupancy policy of two persons in a bedroom, as a general rule is reasonable under the Fair Housing Act. The Department of Justice has advised us that this is the general policy it has incorporated in consent decrees and proposed orders, and such a general policy is also consistent with the guidance provided to housing providers in the HUD handbook referenced above. However, the reasonableness of any occupancy policy is rebuttable . . . [nothing] implies that the Department will determine compliance with the Fair Housing Act based *solely* on the number of people permitted in each bedroom. . . .
> . . ..
> On the other hand, there is no basis to conclude that Congress intended that an owner or manager of dwellings would be unable to restrict the number of occupants who could reside in a dwelling. Thus, the Department believes that in appropriate circumstances, owners and managers may develop and implement reasonable requirements based on factors such as the number and size of sleeping areas or bedrooms and the overall size of the dwelling unit. In this regard, it must be noted that, in connection with a complaint alleging discrimination on the basis of familial status, the Department will carefully examine any such nongovernmental restriction to determine whether it operates unreasonably to limit or exclude families with children.
> 24 C.F.R. Chapter I, Subchapter A. Appendix I at 566-67 (1990).
> Thus, in reviewing occupancy cases, HUD will consider the size and number of bedrooms and other special circumstances.

The "other special circumstances" include, for example, what the Keating Memorandum designates Age of Children and Other Relevant Factors. As to the first of those, HUD policy provides illustrative guidance:

> Age of Children
> The following hypotheticals involving housing providers who refused to permit three people to share a bedroom illustrate this principle. In the first, the complainants are two adult parents who applied to rent a one-bedroom apartment with their infant child, and both the bedroom and the apartment were large. In the second, the complainants are a family of two adult parents and one teenager who applied to rent a one-bedroom apartment. Depending on other facts, issuance of a charge of might be warranted in the first hypothetical, but not in the second.

DEFENDANTS' SUPPLEMENTAL BRIEF
(2:16-cv-00922 TSZ)                    - Page 6 of 9

GEORGE T. HUNTER ATTORNEY AT LAW
5900 48th Ave. South
Seattle, WA 98118
206.851.7700

63 Fed. Reg. at 70257.

In his declaration referenced above Mr. Scheetz stated, among other things, "When deployed the bed occupies space equal to a full size bed with the practical effect being insufficient space for another bed."  The practical effect of this reality is that persons who might occupy one of the subject studio apartments would have to share one bed.  Such circumstance might be appropriate for an adult parent and a small child but not for an adult parent and a teenage child.

Under the heading Other Relevant Factors, HUD policy reads, in part, as follows:

> Other factors supporting a reasonable cause recommendation based on the conclusion that the occupancy policies are pretextual would include evidence that the housing provider has: (1) made discriminatory statements; (2) adopted discriminatory rules governing the use of common facilities; (3) taken other steps to discourage families with children from living in its housing: or (4) enforced its occupancy policies only against families with children.  For example, the fact that a development was previously marketed as an "adults only" development would militate in favor of issuing a charge.  This is an especially strong factor if there is other evidence suggesting that the occupancy policies are a pretext for excluding families with children.
> An occupancy policy which limits the number of children per unit is less likely to be reasonable than one which limits the number of people per unit.

*Id.*

There is no evidence that at any time Defendants engaged in any of the conduct identified above.  In fact, in his declaration referenced above Mr. Scheetz stated:

> 3. The apartments have never had an occupancy policy that bars families with children from renting one bedroom units. Nor have I ever made discriminatory statements about children or families with children; adopted rules governing the use of common facilities that discriminate against children or families with children, or discouraged families with children from living in the Grenada Apartments or enforced the occupancy policy only against families with children.

ECF 39 at 2, l. 3-7.

DEFENDANTS' SUPPLEMENTAL BRIEF
(2:16-cv-00922 TSZ)                    - Page 7 of 9

GEORGE T. HUNTER ATTORNEY AT LAW
5900 48th Ave. South
Seattle, WA 98118
206.851.7700

## CONCLUSION

Defendants acknowledge that if at the conclusion of litigation as to liability in the above-captioned lawsuit, they are found to have violated the Fair Housing Act, 42 U.S.C. §3613(c)(1) will authorize the Court to award injunctive relief.  For the reasons set forth above, they submit that any ensuing injunction should allow them to develop and implement an occupancy policy that is reasonable, as HUD policy construes that term.

Dated this 16th day of June 2017.

GEORGE T. HUNTER ATTORNEY AT LAW

By: s/*George T. Hunter*
George T. Hunter
WSBA No. 14388
5900 48th Ave. South
Seattle, WA 98118
Phone:  206.851.7700
Email:  gthunter7700@gmail.com

DEFENDANTS' SUPPLEMENTAL BRIEF
(2:16-cv-00922 TSZ)         - Page 8 of 9

GEORGE T. HUNTER ATTORNEY AT LAW
5900 48th Ave. South
Seattle, WA 98118
206.851.7700

# CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jesse Wing
WSBA No. 27751
701 Second Avenue, Suite 1500
Seattle, WA 98104
Phone:  206.622.1604
FAX:  206.343.3961
Email:  JesseW@MHB.com

Angela Galloway
WSBA No. 45330
701 Second Avenue, Suite 1500
Seattle, WA 98104
Phone:  206.622.1604
FAX:  206.343.3961
Email:  AngelaG@MHB.com

By: s/*George T. Hunter*
     George T. Hunter
     WSBA No. 14388
     5900 48th Ave. South
     Seattle, WA 98118
     Phone:  206.851.7700
     Email:  gthunter7700@gmail.com

DEFENDANTS' SUPPLEMENTAL BRIEF
(2:16-cv-00922 TSZ)                       - Page 9 of 9

GEORGE T. HUNTER ATTORNEY AT LAW
5900 48th Ave. South
Seattle, WA 98118
206.851.7700